# UNITED STATES COURT OF APPEALS
# FOR THE
# THIRD CIRCUIT

**Case Number:** 10-1619

**Case Name: Joseph O. Boggi v. Medical Review and Accrediting, et al**

## INFORMAL BRIEF

**DIRECTIONS:** *Answer the following questions about your appeal or petition for review to the best of your ability. Use additional sheets of paper if necessary. You need not limit your brief solely to this form, but you should be certain that any brief you file contains answers to the questions below. The Court prefers short and direct statements. ( I copied*
http://www.ca3.uscourts.gov/internet/Forms%20and%20Information%20Sheets/briefing/
informalbrief.pdf *into my word processor, and then answered the questions as best I could. The format is a tiny bit different due to computer processing.)*

**1. Jurisdiction:** What order(s) of the district court or agency are you appealing? The order of the US District Court for the Eastern District of Pa.

What is the date of the order(s)? The last defendant was dismissed in February 2010. The first set were dismissed on September 19, 2009.

When did you file your notice of appeal or petition for review? The notice of Appeal was filed on February 25th and amended on March first 2010

**2. Statement of the case:** Explain the proceedings in the district court or before the agency. (i.e. what the district court or the agency did in deciding your case).
The District Court noted that I did not state a claim under U.S.C. 1983 for several reasons. He noted that I also did not state a claim under the ADA. He noted that I was NOT a qualified individual under the ADA. He then dismissed the case.
I had submitted a request for a court ordered Psychiatric interview The Judge also disallowed this motion. I submitted this motion in order to do two things. First, to support my claim, and second, to make it apparent that the defendants ( who could be ruled immune ) were acting willfully and illegally in adding the notion that I have disordered thinking to my chart.

They also acted willfully,

Received and Filed

KEL  6/4/10

Marcia M. Waldron,
Clerk

and incorrectly in continuing to say that I have Narcissitic Personality disorder while dropping TWO other notions. I have ADHD, but I have criteria for NO other Neuropsychiatric illness. No one has asserted that I have those criteria. They HAVE made empty assertions. It takes criteria to make a medical diagnosis. Only ONE out of more than ten evaluators say that I have anything more than ADHD..

**3. Statement of facts**: Explain the facts and events that led to the complaint in the district court or the action before the agency.

In beginning my career, just out of internship, I became chief at my clinic in South Korea, the busiest in Korea. I then went to Walter Reed Army Medical Center for Residency. I am a D.O. I got trained in an M.D. institution, and then was accepted as staff there. Just after Residency, I went to the Emergency Department at Walter Reed Army Medical Center. During all of that time, I taught M.D. Students. I was an Instructor and then an Assistant Professor in the ER and beyond. That went on for a total of 8.5 years. It is still unusual for a D.O. to teach M.D.'s. After the ER, I went on to be chief of Internal Medicine at Fort Meade. ( That makes two out of three postings, at which I was chief ) Fort Meade is IN the Walter Reed System. Frankly, I have been in the same house in Silver Spring, Maryland for almost 25 years now.

While at Walter Reed I worked on a study published on Dec 1, 192 by the Annals of Internal Medicine. It is still quoted in reviews. I was working as the LEAD author on the follow up to that study when things in my career changed. During that time, TWO senior physicians, chose ME as their doctor out of literally Hundreds of other doctors in the system. I was NOT the best doctor by ANY means. I was and continue to be very good.

At Fort Meade I encountered routine malpractice, that included 6 deaths. As a young major, I was NOT qualified, in ANY way to handle the controversy that ensued. More than anything, this case is about the Peter Principle.

During that time, I witnessed at least TWO miracles. I maintained my professional demeanor, in the face of severe, career and mental health threatening stress for a year. After a year, I had an incident with the MPs. My career progress halted at that point, MORE because of my efforts to do the right thing, than the MP incident. (I've provided a lot of evidence about that, there is quite a bit more.)

Since, I have banged, and dented a wall, and taken a time card ( as evidence ) from a someone who would not pay me. Other than that, my memos ( if you read them ) while sometimes wordy, are always appropriate for the situation. They are also unrelenting, and born of a need to document things as they occur. In continued pursuit of a career, I applied to a Catholic Hospital for Hospital Privileges. The details of the declination letter were not supported in any way by any evidence presented by the Hospital.

Instead of being reprimanded by the state for not supporting their assertions, the state then sent me for a Psychiatric evaluation. There is a severe disconnect there. Most notably, the assertions by the hospital, while empty, also did NOT include any difficulties with my mental health.

That FIRST Psychiatric evaluation cleared me. It was then disallowed by the state. I was then sent to another psychiatrist. On the advice of my attorney, I did not go to that evaluation at first. I am still not sure of my legal responsibilities in regard to those events, but the state was none too happy.

In my memos to them at the time, I noted that I was also getting private forensic evaluations. One thing is true, I have a naive gene in my makeup. I told this to the state, and they were none too pleased, as well. So they scheduled an emergency suspension hearing. I had NOT even had my state ordered ( Second ) psychiatric evaluation yet. My last private evaluation occurred on the afternoon of my last private psychiatric evaluation. The report was not yet available and so they rushed their report through as the ONLY so called report available.

I attempted to get out the facts. When I presented myself to the investigators, one literally stood within half an inch of me, another yelled at me at the top of his lungs, gesturing, in an attempt to get a rise out of me. As it was, I presented myself to their offices on several occasions. I was trying to tell people that I am a whistleblower and they not only physically refused my documents, they deliberately tried to provoke you into emotion at every turn. They were somewhat successful in getting me upset. I see no defect in me on that score. I still tear up when I hear Kate Smith, sing God Bless America.  After-all I still root for the home team Flyers, and what not.

Later, I put the whistle blowing documents on a video and sent it to them. THEN, after I was suspended, the investigator said, OH MY, and then he blurted out the name of one of the doctors involved....You can see the actual EKGs, lab tests and what not. I am a "boy scout," and I diligently document, everything.

And so, after being treated disparately, primarily for my efforts to take care of the patients, I never worked for an Internist again. With one exception, I could only get work at walk in clinics. These places are notoriously known as Doc in the boxes. I would caution YOU to only go to Doc in the boxes owned by Hospitals. There is a BIG difference in quality. One doctor TOLD me to prescribe the expensive antibiotics that he was selling. Another told me to prescribe narcotics to a drug seeker. He also committed malpractice right in front of me, at least three times. In general, Doc in the boxes take advantage of physicians who cannot otherwise get work, for one reason or another, and pay them VERY low wages. Then they create an interesting work environment that MORE than encourages overcharging. They do this while maintaining a staff of part timers for the most part. I could NOT support myself in this environment and that in itself led to stress. This went on for four years, after I got out of the Army. In that time, I dented a wall, and took a time card. I am sorry that I did those things. During all of this time, the care of my patients remained excellent. In fact the owner of the doc in the box whose wall I dented sent his WIFE to ME for Medical Care.

There is ONE area of Medicine in which you could not possibly be better than me. That is my

rapport with my patients. When sending an evaluation to the hospital for me, one doc in the box owner said that I was average in social situations. I found out why later. When he was testifying for the state, also lying, according to the judge, he said that he had noted the social problem, and wished he had done something about it sooner. Indeed that was his attempt at defensive employment. He had rated me average as a marker for later when he could use it against me. Strangely, he chose my greatest strength, and it was immediately obvious that he was lying.

Otherwise, I worked for a doctor who DID have Psychotic breaks, and was NOT in ANY way able to discharge his duties.

In court, I went over these facts in detail. I brought in witnesses. The Judge believed me and the witnesses. Wrongfully, this demeanor evidence was completely overturned by the state, when they used NLRB v Universal Camera. That decision was supported by subsequent courts, who also added points not even considered by the state, with no basis at all, other than they have the authority to do so.

As a DIRECT result of these actions, the health of the people of the state of Maryland were put at risk. My suspension only served to cover over that risk. Four of the doctors in this case, should NOT be practicing Medicine. I am not one of the four.

The statement of facts, as outlined by Judge Anne Kehinde, is almost totally accurate, save two places ( I was not in the least loud when I took the time card ) ,and the omission of my efforts as a whistleblower. ( There was one other small error, and that is all. The Judge was THE most thorough officer of the Court I have witnessed. And that includes my representation. ) One thing does bear mentioning. Initially I was HORRIBLE at testifying. I had never done it before for any length, and I got better. The judge noted that. I was fine in relating medical information as she notes, and what not. Also, while accurate, I would have been more descriptive, in many areas, for effect.

Time passed, and after another evaluation by the state doctor, I was sent to the Physician Rehab people in Maryland. They sent me for an evaluation. They paid for it. It totally cleared me. It is the last evaluation in the record. They then recommended a Geriatric fellowship. I spent SOME time looking for one. There is a catch 22 there that is not worth noting. I wound up contacting THE National Board. They had just STOPPED doing testing and retraining. I was told that was to reduce their legal exposure. At that time ONLY the FSMB and the NBME were doing this. Then they developed collaborators. They being the FSMB AND THE NBME. They set up a JOINT program, which STILL exists according to their OWN web sites. (FSMB and NBME.) The MRAC is one of the Collaborators in the program. At least one letter was exchanged between the State of Maryland and MRAC. I believe that MRAC sent the state two letters. The second being a request for Psych reports, and the state sent back one letter with the reports and general information.

The MRAC et al.

Each of the parties was involved in the testing, in one way or the other each of them were

involved in NOT allowing me to know just what was on the test, and the nature of the testing, the evaluation of the testing and then a sham of an attempt to fashion a so called re training experience.

The notable findings. The interviewer said in writing that I took good care of the patients no less than 11 TIMES. I clearly passed the objective tests. ( Multiple choice questions and computer simulated cases ) They also did a mini IQ test. I passed that. It involved thinking and memory and the usual tests. It is called a Micro Cog ( The Cog being for Cognitive )

Despite that success, the interviewer also noted that I had disordered thinking. There is a severe disconnect between the 11 positive notations and the notion that I have disordered thinking. The two are truly mutually exclusive. There is also a severe disconnect between the findings on the Micro Cog and the notion that I have disordered thinking. I am STILL waiting to discuss the subtleties of the cases. We never did that. We just went on to the next case. I could NOT be more livid on that score.

The interview was the WORST expression of an ambush interview you could imagine. The interviewer yelled at me, told me that I did not know any medicine, walked about the small room, chortling, laughing, and otherwise having a fine time. He also refused to tell me his specialty. I wanted to know, so that I could direct my comments to him. He went to the extent of hiding his identification badge. Little did he remember that his fabric chain, around his neck said University of Pennsylvania. I contacted his boss to complain. Carefully, I only recorded MY side of the conversation. I had called from Maryland. Nevertheless, it is clear that the Chief of Pulmonary is VERY aware of this type of behavior. Just listen to the tape and you will hear what I said. That is the one and only time that a complaint to someone in this case met with a prompt response, " We have that problem with Scott."

Two notable events occurred. The examiner, AND the President of the MRAC Dr. Sokolowski DID agree to have me repeat the interview. No one else approved that, and so here we are.  In general, because of the history of abuse, I will ONLY submit to monitored evaluations. Showing my naive gene, I allowed the National Board to evaluate me without a recording of the event. I still cannot believe, I had gotten my wish, and the guy just laid into me. I am STILL waiting to wax eloquently on the subtleties of what I know about those cases. The interview was supposed to be about that.

The District Court said that I did not state a claim. By that I take it to mean that the defendants cannot be sued under the USC 1983. That is incorrect. He also said that I did not connect the property right attendant to my medical license to this case. Well, Ewing did NOT have a Medical License. Secondly, I believe that I did tie this case to my medical license.

The District Court also said that the I did not state a claim under the ADA but some of the people can be sued. I believe that I am a qualified individual, and the confabulation of disordered thinking amounts to discrimination against me. I noted that while  I actually do not need an accommodation to perform, I more readily accepted when I am permitted to do my write ups in a quiet room. I did not elaborate before the judge made his ruling on the first set of defendants,  and

frankly, I do not think he saw that part of my response to the last set of defendants because that part of it was ADDED to the electronic record AFTER his final report. ( I download the electronic record to make sure it matches what I sent them )

I went over how this case is also a contract case. That did not get any response from the District Court.

**4. Statement of related cases:** Have you filed an appeal or petition for review in this casebefore? If so, give title of case and docket number.  Not applicable

Do you have any cases related to this case pending in the district court, in the court of appeals or before the agency? If so give title of case and docket number.

I have no cases pending in the District Court, Court of Appeals or any agency.

**5.** Did the district court or the agency incorrectly decide the facts of your case? If so, what facts?

1. On this score, I would say that the Court, showing its bias, did not include my early Medical work experience, all of which I cover below. It is excellent.

2. The Court related the events surrounding the testing in some detail. The key parts left on the curve side there include the ELEVEN times that the interviewer said that I passed the tests.

3. The Court ignored the MANY psychiatric evaluations on my chart. TWO of them paid for by the Rehab people at the State of Maryland. Both of those affirm that I am fit for duty. Again, this shows the bias of the court.

4. The Court ignores the audio tapes, seemingly mocking the fact that I included them. I am not sure how one could listen to Dr. McDaniel say, "Mentally Incompetent?" and not be moved.

5. The Court apparently did not read the background memos. There I go into the details of my interactions with the defendants. This led to at least ONE critical action. The Court said they did not know the reason I sued Joseph Sokolowski, M.D. ( He is President of the MRAC ) He dismissed my complaint against Dr. Soklowski noting he did not know who he was. I DO realize that I did not always follow your format. I was exhaustive in my efforts to get out the salient facts, however.

6. The District Court notes ( page 2 at the bottom ) that I somehow lost Hospital Privileges at Holy Cross Hospital because of my ADHD and the incident in the US army. Supposedly these occurred in 1994. I did not apply for Hospital Privileges at Holy Cross Hospital until 1996. Initial Hospital Privileges were denied at that time. There were hearings, in 1997, and then a final letter in August of 1997. The letter mentioned NOTHING about my ADHD. Nevertheless, the State saw fit to send me to a Psychiatrist

in early 1998 ( possibly late 1997 )

7. The Court goes on to say that my many filings with the Court, the Exhibits are inappropriate. I submitted those over MANY months. NOT ONCE was I notified of this. ON many occasions, I relied on those documents when writing my pleading. Page 2 footnote 3. If I had an idea how to do this, all of that would have come in with the first pleading. Did not note that the UMDNJ was directly involved in the decision not to retrain me. Exhibit 1. The Court ignored My excellent letters that accurately document my military service. Exhibit 3 Cherry picked the ONE or two lines of the decision of Judge Kehinde that could be misconstrued as speaking against me. Exhibit 2. The MANY reports on my stable Psychiatric health were ignored. Exhibit 11. And made no comment whatsoever on the missing criteria for a Thought disorder ( Disordered thinking ) and Narcissitic Personality Disorder, and the dropping on the part of MRAC of Dangerous person and Mentally Incompetent person. Exhibit 13, 14. The Dropping of the last two diagnoses indicates that the MRAC et al actually involved themselves in the practice of Medicine. And they REJECTED the findings of the State of Maryland. The last is notable because the MRAC et al, did NOT simple take what was proffered by the State of Maryland. The wrote the story in such a way that they thought it would fly.

8. One more note about the facts, I CONTINUE to relate or phone calls and correspondence containing BIZARRE. The truth is always stranger than fiction. *Information*
These are the most notable issues.

**6.** Did the district court or the agency apply the wrong law (either cases or statutes)? If so, what law do you want applied?

There are four areas of the law that apply to me. U.S.C 1983. The ADA. Contract law, and the Constitution of the United States. None of these were applied properly, or at all in one case.

1. Mileikowsky v. Medical Board of California 12/21/2004  - Dr. M was wrongfully accused of having a psychiatric disorder. He, like me is a whistleblower. He had his license suspended. It was returned to him, and the Court ruled that the forced state Psychiatric evaluation was improper. There was no reason to send me for an evaluation. The referral from Holy Cross Hospital said NOTHING about my Psychiatric state. Then my case, a spurious psychiatric disorder ( s ) were manufactured. There were and are NO criteria for these diagnoses. It lead to my suspension, and is now helping to support this lack of re training. I was sent to one evaluation. It cleared me, then they sent me to another looking for the result they wanted. The judge appropriately noted that some of my conduct was unprofessional. She also noted that most of the prosecution witnesses lied or significantly embellished their accounts, for effect. The unprofessional conduct gives NO ONE a reason to send someone for a

Psychiatric evaluation. Whistleblowers across the country get treated this way. Www.allianceforpatientsafety.org **(200 cases are noted )**

2. Ewing v Board of Regents. Student Doctor Ewing failed step one of the boards. He did not just fail it, he hit an all time low, apparently. On notice of that event, the Medical School expelled Student Doctor Ewing. The Court held that Student Doctor Ewing could retake the test, upholding his civil right to property and liberty interests in his medical training. This was upheld on appeal.

While, all of these folks are state actors. The UMDNJ is actually owned by the state. They ARE the state. The declination letter clearly states that the UNDNJ consultants could not think of a re training program for me. That says that THE decision was made by the UMDNJ in concert with others, of course. I single out the UMDNJ because you could insert them as Board of Regents, in this case. That was the University of Michigan, as you know.

3. NCAA v Thomas Cohane. In this case, the Circuit Court held that the NCAA **IS** a state actor and the Supreme Court denied petition for Certiorari, 07-107. In the case, Cohane had been fired by his University after an NCAA investigation. The relationships between the parties are at LEAST as close as the NCAA to the University. It will be apparent to the court that the relationship between the parties is intertwined, interdependent, and furthermore, fashioned in such a way in order to try and circumvent the law. ( Details on that elsewhere)

4. Youngberg V Romeo 457 U.S. 307

"Respondent [Romeo] has constitutionally protected liberty interests under the Due Process Clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as reasonably may be required by these interests. Whether [his] constitutional rights have been violated must be de-termined by balancing these liberty interests against the relevant state interests. The proper standard for determining whether the State has adequately protected such rights is whether profes-sional judgment, in fact, was exercised. And in determining what is 'reasonable,' courts must show deference to the judgment exercised by a qualified professional, whose decision is pre-sumptively valid."

This is a key case. Was professional judgment exercised in my case. ONE out of more than 10 evaluations returned a slew of problems. Narcissism, dangerous person, AND Mentally incompetent person. ALL of those labels were put on me by ONE person. It is UNPROFESSIONAL to put labels where there are NO CRITERIA. There was a time, where criteria for these problems were much less defined. THAT IS NO LONGER THE CASE. It should be noted that the examiner could not even remember that she called me Mentally incompetent. ( listen to audio tape )

The last so called professional, a Pulmonologist noted that I have disordered thinking. He also stated no less than ELEVEN times that I took good care of the patients. The two notions are totally inconsistent. The first indicates someone who is not only seriously mentally ill, but also and most likely seriously physically ill. The notation that I have disordered thinking is totally unprofessional. It is a NEW finding, and it is not supported by anyone else, including the state of Maryland.

While I would disagree with the wording in Romeo that deference should be given to a qualified professional, whose decision is pre-sumptively valid, we do not even get that far in this case. ANY other so called professional would be reprimanded for giving me labels for which there are no criteria. ANY other professional would also be subject to suspension or some other discipline, including an adverse finding in a malpractice suit. Deference should only be given to those who can support their statements with criteria. Also, the criteria must clearly be present in the individual. While professionals are best at identifying the criteria. The Court is familiar with actually seeing the criteria for these disorders, and so the COURT CAN determine if the so called professional is telling the truth based on an examination of the person involved.

There are criteria for the Personality Disorder, for dangerous people and for Mentally Incompetent people. I have never had any of these. Frankly, my Father is 81 and he is still mentally competent.

5. NLRB V Universal Camera was incorrectly applied in this case, or needs to be updated. In my case, the state made assertions. We went to the judge and she recommended reversal, and on page 57 of her decision noted that I am mentally competent to practice medicine. In other words the Judge disagreed with every single one of the assertions of the state. Nevertheless, ALL of the demeanor evidence was overturned, and labels for which there were no criteria were resurrected.

This notion supported by NLRB v Universal Camera is not consistent with ANY section of the US Constitution if it permits clearly established facts to be overturned at the whim of the state.

If this case permits these actions, then this landmark case needs to be amended. It was decided in a time where opinion in these matters was much more important, and criteria were shall we say, MUCH less defined. ( and often nonexistent )

If the court cannot address this issue, then the Circuit Court MUST address issue of my current competence. ( directly or through the District Court ) Especially in light of the notion that a NEW diagnosis was added, and several were dropped by the defendants.

6. "The Supreme Court misconstrued our intent," said Representative Steny H. Hoyer of Maryland, the House Democratic leader. "Our intent was to be inclusive."

Lawmakers said that people with epilepsy, diabetes, cancer, multiple sclerosis and other ailments had been improperly denied protection because their conditions could be controlled by medications or other measures. In a Texas case, for example, a federal judge said a worker with epilepsy was not disabled because he was taking medications that reduced his seizures.

New York Times Sept 18, 2008.  And so, the Court should interpret this case, in terms of the NEW ADA Law. After all, the intent of the *Congress* was always to be inclusive.

That is a separate issue from being a qualified individual. As you know, even qualified individuals were, more often than not, not covered by the old law. Regardless of a pronouncement from 1998, I am, and always have been a qualified individual under the ADA.

While I can perform without a consideration, I perform better, within the parameters others set for normal social behavior ( Not being distracted ) with a small accommodation. (Doing my writeups in a quiet room) While I do not like being distracted, I can certainly function at a VERY high level with it. It should go without saying that I like life MUCH more since getting treatment. The three events noted amount to 10 minutes of my life. That hardly represents someone who is out of control. It represents a frustrated individual, who was unprofessional on three occasions, over six years, for a brief time.

The issue : Am I currently a qualified individual under the ADA. If I was not a qualified individual in 1998, then, I most certainly could be now, and that should be examined, and not summarily discarded, as the judge did in this case.

I mentioned a number of cases in my filings. I attached those filings, for the convenience of the Court. I would note that I am NOT attaching ALL of the filings. I believe that my interpretation of the cases in my LATER filings is correct, where it was not in some cases initially.

Issues related to this case. If I did not properly state a claim, then the filings needed to

be returned to me so that I could do so. For instance, I do not know the law at your level. The judge claimed that I did not connect my Medical License to this case. I believe that I did. However, there is MUCH more information about that topic. The discussion about retraining and a search for an appropriate site lasted MUCH more than a year. Going back to my roots, frankly, I was not going to MRAC for my health. The State of Maryland was very aware I was doing that. This is NOT the correct place for going into all of the details.

In Summary.

The first two cases were mentioned from the START in this proceeding. Neither one drew a comment from the Court. This is further evidence of bias. My case is precisely this. It is a mixture of these TWO cases. Dr. M and Ewing. I believe that if you apply ALL law, they would include these two cases, and these two, make my case. NCAA v Cohane and some others make it clear that ALL of the people and organizations involved are state actors who WERE involved in the decisions and or make up the flawed testing.

Contract Law. I went over contracts in detail in the filings. This part of law was not addressed at all by the District Court. In short, I had a contract with all of these parties. They did not perform properly under that contract. They need to do so.

The US Constitution. The Defendants FORCEFULLY demanded their right to a jury trial under the US Constitution. The Court did not disagree. And so, the US Constitution applies to the Defendants. I agree. Well, then the Court must ALSO agree that the US Constitution applies to me and protect my liberty and property rights in my medical license and retraining.

Addressing Cases mentioned by the Court.

**7.** Are there any other reasons why the district court's judgment or the agency's decision was
wrong?
If so, briefly state these reasons.

**The FSMB AND the National Board of Medical Examiners jointly formed the IPE. It is STILL in existence. Exhibit 15. The FSMB is a state actor. It is the organization of ALL of the state boards. The UNDNJ was intimately involved with the decision NOT to retrain me. They are the state. The MRAC the primary agency does not do the retraining. That is done by the UMDNJ. The MRAC does All of the retraining for the State of New Jersey. The reason for MRAC to exist is apparently the need for the State of New Jersey to be met. All of the people involved in this case deliberately violated the law. An objective Neuropsychiatric evaluation will reveal**

that. That will be done either as a result of an appointment of an independent evaluator or during trial.

Agencies that are required for licensure, such as the bar, Are state actors. This includes the NBME.

The disconnect comes when you do two things. When you claim that MRAC is private, and when you claim that the UMDNJ had nothing to do with the decision not to retrain me.

I cannot argue that, I can only appeal that. It is clear by the close nexus test that MRAC is surrounded by FOUR state actors. The more direct connection to the State of Maryland would be through the FSMB, who set up this system for the states.

Hahnemann hospital is held up as a case that is pertinent here. Hahnemann is private. UMDNJ is NOT private.

In order to prove that I can safely take care of patients, order six in the list written by the state of Maryland, I need to be retrained.

There is a symbiotic relationship between all of the parties, and MRAC and its associates are performing a public function. It is precisely the function asked for in the order of the State of Maryland, number 6.

8. What action do you want the Court of Appeals to take in this case?

A. Firstly, if it is in the power of the Court of Appeals, I request the following. I would like the Court, under rule 706 to appoint an expert to carry out an objective Neuropsychiatric evaluation. After that, I would ask the Court to rule in this case. I am certain the Court will find in my favor summarily. A review of the test results, other than the narrative report shows that I passed these tests. Net, that is all that is required to disposition this case. As noted, this will do two things. It will PROVE that the defendants acted willfully, and illegally in this case. It will also leave me with the correct diagnosis. The first will be a MINIMAL amount of discovery that might be sought to make sure that a person who COULD be immune is NOT, since they knowingly violated the law. At that point, I would like to be retrained. I would like you to write an injunction so that future clients will not suffer as I did. I would like compensatory and punitive damages. Please keep in mind that ALL of this time, I have had a FIRM job waiting for me.

B. If you are not able to do that, then I want the court to direct the District Court to take

the case, and to also appoint an expert under Rule 706 in order to carry out an objective Neuropsychiatric evaluation. ( For the same reasons. ) I would think that it will be up to the judge in the District Court to then determine how to proceed. I would welcome a discovery in which I can get into the details of the formation of this group and the communications between these parties, but I do believe that this can be easy to fix.

C. If the Court feels that I DID not make the link between my medical license and this training, then the court should return this to me and give me leave to amend this case.

This was order six of the State of Maryland.  provide evidence satisfactory to the BPQA that he has become competent to safely practice medicine. (*Id.* at 34.)

It is clear to me, that I was attempting to satisfy this order. The exchanges between myself and Lisa Watts Esq from the state of Maryland on this topic are LONG, and beyond the scope of this document. I did NOT submit those initially. I did not foresee the Court having this difficulty with my pleading.

D. I have written a separate motion to facilitate the appointment of counsel to defend me.

E. I have written a separate motion to facilitate the appointment of a special master under rule 48 F.R.A.P.to look into the manslaughter, and its cover up. ( Sushama Sreekumar M.D.)  In addition, the court SHOULD be interested in looking into the dealing of drugs, selling of expensive antibiotics by David Halterman M.D., and the mental health of one Thomas Dooley M.D. I will only reveal the drug dealer in closed session. Things being what they are, that has to be approached carefully, or they will just stop doing it, leaving little trace in their path. The Special Master should also investigate the FAILURE to investigate these issues in the past. It should be noted that ALL of these people have a VESTED interest in propagating the lies that they did. And when he testified Thomas Dooley, M.D. WAS truly afraid of me, because he knew, and knows that I am actually a whistleblower. That was the one portion of his testimony that was true.

PLEASE do not continue this fiasco. Please end it.
Signature

**You may attach any documents filed in the district court or before the agency that you think the court of appeals must see in order to decide your appeal or your petition for review. For appeals from the district court, please keep in mind that the entire district court record is transmitted to the court of appeals and is available for the court's review. You must attach copies of the district court docket entries, the opinion and order appealed, and the notice of appeal. Documents not admitted in the district court may not be submitted to the court of appeals without permission of the court.**

**IMPORTANT: IF YOU ARE PROCEEDING PROCEEDING IN FORMA PAUPERIS, YOU MUST FILE AN ORIGINAL AND THREE (3) COPIES OF THIS BRIEF AND ANY ATTACHMENTS WITH THE CLERK. IF YOU HAVE PAID THE DOCKETING FEE, YOU MUST FILE AN ORIGINAL AND TEN (10) COPIES OF THIS BRIEF AND ANY ATTACHMENTS WITH THE CLERK. A COPY OF THIS BRIEF AND ANY ATTACHMENTS MUST ALSO BE SENT TO ALL OPPOSING PARTIES. YOU MUST CERTIFY ON THE ATTACHED PROOF OF SERVICE THAT A COPY OF THIS BRIEF AND ANYATTACHMENTS WERE SENT TO ALL OPPOSING PARTIES.**

These Exhibits ARE NOT copied here, since they are in the record.

List of Exhibits

1. Letter of declination from MRAC
2. Decision of Judge Kehinde
3. Letters of Recommendation and a Personal Statement
4. The results of the MRAC/IPE testing
5. Prelude to MRAC
6. MRAC/IPE details
7. IPE/NBME data provided
8. Post MRAC/IPE email
9 Cover letter and Voice Recordings
10 My Psychiatric Record
11 Psychiatric Reports
12 The Events from Fort Meade Maryland
13 The DSM Criteria for Narcissistic Personality Disorder
14. The list of things that can cause a Thought Disorder
15. Exhibit noting that FSMB and NBME have jointly founded the IPE and their collaborators
16. Dr. M case.

Attachments - included in this filing for the convenience of the Court.

1. Revised Pleading dated September 9

2. Motion for reconsideration

3. Answer to pleading dated January 14. 2010

# PROOF OF SERVICE

I certify that on (date) I mailed a copy of this Informal brief

http://www.ca3.uscourts.gov/internet/Forms%20and%20Information%20Sheets/briefing/informalbrief.pdf

and all attachments via first class mail to the following parties **at the addresses listed below**:

Signature

Dated:

*Rev. 09/05*

United States District Court

Eastern District of Pennsylvania


Joseph O. Boggi D.O.    Plaintiff                                    Case No. 08-4941

Internal Medicine                                                    Civil Action

1207 Ballard Street

Silver Spring, Maryland 20910

V.

Medical Review and Accrediting Council

Larry Downs Esq

Joe Sokolowski M.D.

Two Princess Road

Lawrenceville, NJ


National Board of Medical Examiners

Institute for Physician Education

Andrea Ciccone Director IPE

Scott Manneker M.D. consultant

Richard Hawkins M.D. VP NBME

Donald Melnick M.D. President

3750 Market Street

Philadelphia Pennsylvania, 19104      215-590-9772


UMDNJ

and the un-named "consultant"

65 Bergen Street, Newark, NJ 08854


October 16, 2008                        Revised Sept 9, 1009

All parties are sued both individually and as agents of their respective organizations.

1

Memorandum regarding Causes of Action in my Case, Connection to Section 1983, and all issues raised by the Defendants.  Essentially, this is a ***final revised pleading*** as permitted under the rules for Pro Se applicants      September 8, 2009

Introduction

1. Here is what happened.

2. Causes of Action ( ***the main reason for this revision*** )

3. Details of the Connection to U.S.C. 1983

4. Details of Why all of these folks are state actors.

5. Request for relief

Introduction

I am restating hopefully, in more legal terms, the events related to the filing of October 16, 2008. I am noting for the record, that I am not asking for anything new, and I am not making any new allegations. I am putting those allegations in terms that are hopefully even more acceptable to the court. This is primarily an action under U.S.C. Section 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. I had a contract with these state actors. The contract affects my liberty and property interests under the US Constitution. The most pertinent case is Ewing V Board of Regents. It is discussed within the body of this document. The real differences between this filing and the first is this. I buried the lead at first. The lead is Ewing. I mentioned Ewing in the first

2

filing, and it remains the cornerstone of my case. Second, I needed to put things in certain formats. I am sure that I have that now. *I will NOT prevail upon the court to accept any more revisions to the pleading.* As a pro se litigant, I would ask for the opportunity to revise my submission. The court is in possession of a memo on this. There is precedent for my request. Finally, I cannot let my response to this case appear to be disjointed. It must be presented in one place, succinctly. I would note to the court that opposing counsel was more than 30 days late with a submission for one of the defendants.

*There are a Lot of words below. The bottom line is this, there was a contract, I passed these tests, I need to be retrained. Violating due process, MRAC added two things, a personality disorder and disordered thinking. These violations adversely affected my liberty and property interests adversely affecting my ability to ply my trade, medicine. Other serious due process irregularities occurred during the administration of what are excellent tests.* The events shock the conscience.

Due to the subjective nature of the cause for declination, any attempt at a move for dismissal by the defendant must proceed *after* the matter of credibility is determined. Material facts are in dispute and must be settled by the court.

1. Here is what happened in brief. Circumstances dictated that I be retrained in Medicine. No state in the Union retrains doctors on their own. They develop associations with organizations, as follows. The Federation of State Medical Boards and National Board Medical Examiners formed the Post Licensure Assessment System (PLAS). The PLAS formed the SPEX ( covered later ) and the Institute for Physician Evaluation(IPE). Essentially an arm of the National Board of Medical Examiners, the IPE located at the NBME headquarters in Philadelphia, writes the tests and establishes standards. The IPE is associated with several centers around the country who do the testing and retraining. One of those centers is the MRAC. I tested in Philadelphia at

3

the IPE and at MRAC.

The primary defendants in this case MRAC, do all of the evaluations and retraining for the State of NJ. MRAC does that through the UMDNJ a state school. As you can see from exhibit one MRAC is associated with UMDNJ, a state sponsored Medical School. A government entity acts only through it's agents or employees hence the agents, MRAC et al are state actors as agents of the state. ( details in a separate memo already filed ) Someone is doing the work of the state in this nation, in regards to retraining of doctors. Some of these state actors, the folks in NJ are named in this complaint.

I contracted with MRAC et. al. for testing and retraining in Medicine. At the time, I was told that the testing was diagnostic. I was told that after the testing I would be presented with a plan. The size of the plan would depend on how well I did in testing. If I did not do well, the plan could be very expensive. The expensive nature of the plan was stressed *many* times. This began on or about November of 2005. They required a LARGE retainer, $5000. I inquired about the nature of the testing, and refer the reader to the pertinent exhibit for the blow by blow description of the next things that happened. ( Exhibit 6 )

Briefly, I had been studying for boards, reviewing the MKSAP and related materials as if this were purely an Internal Medicine test. As I started on my own to browse through the Internet, I began to have doubts about that. Essentially, again please refer to the exhibit for the precise details. Bottom line, the MRAC would not tell me about the type of tests. It went on for a long time. Some information finally became available in March, just a few days before I was supposed to test. However, it was not until April, five months after initiating contact in November, that I began to get what seemed to be a reasonable idea about the nature of the tests, and the exact tests to be given. Again, the exhibit gives the exact details, but these are the broad strokes. Even then, the information given in April was not correct. The information given, in fact, was never correct.

4

Next comes the testing. For this I would refer you to the exhibit (4) on the testing for the precise blow by blow of the details. On the first day of testing I was presented with a 60 question per hour test. NO one had told me I would take such a demanding test. I had inquired many times about the number of questions per hour. Now, as you know, I have ADHD. (Exhibit 11) I am not supposed to be able to do tests like that.

I finished the test before the proctor called time. Folks with ADHD can go into what they call hyperfocus and do things like that. Notwithstanding that, I should have been practicing at that speed. I was practicing at 50 questions per hour of Internal Medicine questions.

The proctor, Larry Downs, came in at the end of the test, and immediately started to console me. He was totally shocked, I had finished the test. As noted in the blow by blow exhibit, I did note to him that the test had Peds and OB and Surgery, I did not raise the note to the level of a complaint because I knew how I did on the test. However, as noted above, they stress many times, the results are directly related to the intensity of the retraining. In short, those Peds, Ob and Surg questions should not have been there. Or a corrected score subtracting whatever I answered on those questions, should have been reported. Two other tests were given that day. I would describe the tests as Step 3 tests, based on my experience. No one ever told me that. There is an entire industry dedicated to providing study materials for these tests. I want to note the following. I passed the tests, however, this is part of a pattern of obfuscation that should alarm the court.

A couple of days later, I took the Computer simulated cases and some other tests. The computer used that day was ancient. You can remember back to the day when you saved a word processing file, and the computer moaned for a **long** time before it finished saving the file. This computer not only worked like those computers it looked like those computers. Moreover it was in a separate room from the MODERN computers ( about 50 ) a few feet away, and finally, I was told by Ms. Ciccone that the computer would be the slowest I had used in a long time. She said that everyone used the same computer. Nevertheless, all of that was too much for me, and I wrote down a complaint.

5

Later when asked by the interviewer how I did, on the Computer Simulated Cases, I told him overall, my performance was adequate. That proved to be the case, later when I reviewed the actual narrative of the report. It should be noted that there are sites on the Internet that go over how you should answer these Computer Simulated Cases. I took that information to heart and did not try to get fancy.

Several hours after the two hours of computer simulations I was told that I would have to recite IN ORDER all of the things that I did and that happened in the simulations. Now, challenged, because, I know that I can do that sort of thing, I methodically, sometimes painfully slowly for the examiner tastes, went ahead and did that. I told him what I did, what transpired and what I was thinking while I was doing it. Now, very few can recite all of that perfectly in order. I did a very good job of that. And strangely, in the report, the examiner noted that eventually I did tell him about all of the details. That statement refers to this recitation ordered by Dr. Manaker. However, I cannot recite all of the details in order perfectly, when asked to do so with no preparation. Negligently, the examiner said that my thinking was disordered. That is absurd. The objective results of the testing refute that. Nevertheless, that became a major reason MRAC declined to retrain me.

I can tell you for each patient, that I was complete, and accurately treated the patients. Now, I was not perfect, nor was I trying to be artistic in my treatment. In general, I preferred confirmation was preferred over empiric therapy. I would say that in general terms, that statement would apply.

This part is background. My experience with live interviews is not good. Before I found out that a certain testing site did NOT do retraining, I was going to get all of this done in Colorado. In preparation for that evaluation and what not, I contacted a firm that would videotape the session. Since I was going to THE Mecca, the National Board, I did not think twice about getting this done. I was going to be evaluated by AN Examiner. I was pumped to say the least.

6

The treatment given to me by Scott Manaker M.D. was totally unprofessional. I can tell you that within a few minutes of complaining to his boss at the University of Pennsylvania Hospital, the Chief of Pulmonary Medicine, offered that he had similar problems with Dr. Manaker. (Exhibit 9) Of note, I had not asked for confirmation. I was only complaining. I was totally surprised by that event. It is notable. Using the most available source, his immediate supervisor *anyone* vetting Dr. Manaker would have told the IPE/NBME that this doctor had problems with abusing his interviewees. The details of our encounter are in the exhibit on the testing.

Before the actual results came out, I knew that I was being played, and so I complained to all available senior personnel. My complaints fell on deaf ears. They MRAC made up some excuses. Then they issued me the results of the testing, without a recommendation, thinking that I would just go away.

At that point, I pretty much expected what came next, and on October 16, 2006, they declined to retrain me for inappropriate reasons. See Exhibit 1. Negligently, the MRAC et al added Narcissistic Personality Disorder and disordered thinking to their report.

This part is also background. Why do I need to get retrained? After I told everyone about my past as a patient advocate (Exhibit 12 ) who was treated disparately after a traffic incident, *I blackballed myself.* I did not have to disclose. The folks who employed me after that had no interest in my career. One, had NEVER been able to keep an associate in 20 years. During the

A review of your case showed that you performed well on some of the standardized testing, however problems were revealed on the Transaction Stimulated Recall (TSR) portion of your testing. The results of the TSR indicate disordered thinking which is consistent with some of the findings reported in the Maryland Board summary. The underlying dual problems of adult variant ADD and narcissistic personality disorder present real problems for any remediation plan MRAC could provide.

time in question, I am responsible for the MP incident, denting a wall, and taking a time card.

That amounts to about ten minutes of my life. Folks seem to forget that I always admitted responsibility for those things. Judge Kehinde got things almost exactly correct in her decision. ( Exhibit 3 ) Before the time in question, I had taught medicine as DO at an MD hospital for more than 8 years. It is still a rare event for that to happen today.

For years now, I have had a standing job offer, and I need to get to it. When the court requests it, I can provide the name and details of that job offer. Given the history of retaliation against folks who choose to speak the truth, waiver from the party line, or otherwise seek to help me, I think the court will agree that is the best course of action.

2. . This is my understanding of a cause of action. http://en.wikipedia.org/wiki/Cause_of_action

"In the law, a cause of action (sometimes called a claim) is a set of facts sufficient to justify a right to sue. The phrase may refer to the legal theory upon which a plaintiff brings suit (such as breach of contract, battery, or false imprisonment).

To pursue a cause of action, a plaintiff pleads or alleges facts in a complaint, the pleading that initiates a lawsuit. A cause of action generally encompasses both the legal theory (the legal wrong the plaintiff claims to have suffered) and the remedy (the relief a court is asked to grant). Often the facts or circumstances that entitle a person to seek judicial relief may create multiple causes of action.

There are a number of specific causes of action, including: contract-based actions; statutory causes of action; torts such as assault, battery, invasion of privacy, fraud, slander, negligence, intentional infliction of emotional distress; and suits in equity such as unjust enrichment and quantum meruit."

So what are those set of facts. I am going to go back to regular speak and stay there, as much as possible. I noted in a memorandum cases and laws, that allowed the connection of Section 1983,

8

with contract, property and liberty. What follows, tries to go through this in civilian speak.

What follows are causes of action against ALL of the defendants. Some speak to individual defendants, all speak to the supervising defendants since they are ultimately the responsible parties. I consulted with the supervising personnel when needed in this case. The primary contacts were Andrea Ciccone and Larry Downs. The Supervisory contacts were Richard Hawkins M.D., Donald Melnick M.D., and Joe Sokolowski M.D. The interview consultant was Scott Manaker M.D. The UMDNJ preceptor/consultant remains unknown, despite numerous inquiries, most recently in writing to counsel for the defense.

I am asserting that in all cases, these arbitrary, capricious and unreasonable actions, also meet the following standard. The actions of the defendants shock the conscience.

### As and for a First Cause of Action

1. That plaintiff resides in Montgomery County Maryland and contracted with MRAC et al for testing and retraining.
2. That upon information and belief, defendant MRAC et al are public institutions under the jurisdiction of the District Court for the Eastern District of Pennsylvania.
3. That, upon information and belief, defendants were at all times relevantly employed as noted for the institutions listed on the complaint.
4. That this is a civil action brought for retraining in medicine, and money damages to redress the injuries defendants have caused to plaintiff by the deprivation under color of state law of the right to due process secured to plaintiff by the fourteenth amendment of the Constitution of the United States.

9

A. There was a contract. Under that contract one can expect certain things. The biggest thing one should expect out of this contract is retraining if you pass the tests. Most assuredly, I am asserting that I should be retrained since I passed the testing. A review of the test results are clear. At first, Larry Downs when speaking with me, asked me how long I studied for the tests, I told him. He was amazed by my performance. He should not have been amazed given my superior performance on IQ testing , but well, my performance did NOT fit his plan. Also, I am confident that a comparison of my performance with others who took the testing and were retrained,  will show that I compare favorably to them. On that basis, I should be retrained as well. Although, come to think of it, given my treatment at the hands of MRAC, they may have made excuses in the past and successfully avoided retraining others, in the face of a good test. We may find that, also suffered mistreatment later on.

5. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000.  There was an intent to form a relationship, and of course, legal capacity.  The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

6. *All* of the defendants were consulted regarding this matter. The main points of contact were Andrea Ciccone and Larry Downs. However, when things clearly needed to be escalated, I consulted with Drs. Sokolowski, Hawkins and Melnick. Dr. Hawkins spoke for Dr. Melnick in declining my requests.  All were working in their official capacities as noted in the header of the complaint. One defendant was never contacted. The   unnamed consultant apparently played a large part in this decision. Per the protocol of the MRAC et al, I was supposed to meet that consultant on the first day of the evaluation, or thereabouts.

10

7. There are no criteria for disordered thinking met in this case. There are no criteria met for Narcissistic Personality Disorder in this case. The level of performance on the testing says that a MRAC et al should re train the plaintiff. A review of Exhibit 4 shows that I should be retrained.

8. The plaintiff was further damaged by mental and emotional distress suffered by defendant's illegal refusal to retrain and subsequent relegation to menial duties in violation of my constitutional rights. It is most important that I be readmitted to the program and retrained.

9. The Plaintiff also prays for Compensatory and punitive damages. The details of the information provided to me, leading up to the testing, the testing itself, and the long delay in determining what to do with me are detailed in the following exhibits. Each of these events, resulted in an extraordinary amount of stress.

10. The Defendants rely on medical information that is not determined according to the standard of care. To wit, I am mentally competent. I have normal thinking. I have ADHD, and that is all.

## As and for a Second Cause of Action

11. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 10 as if the same were fully set forth herein at length.

12. The defendants mentioned were supposed to clearly delineate the topics tested.

13. The exhibits detail how several months of obfuscation occurred, instead of an upfront, detailed list of topics to study, number of questions per hour, and other details as noted on the Exhibit 12 .

14. While I did well in the testing, the uncertainty associated with the actual testing procedures led to severe anxiety. The delay since then, has led to a lack of income down the line.

15. I have never dealt with a more difficult group of people. The details of this episode were sent to the parties, in real time, and ignored.

B. As part of the contract, they are supposed to transparently reveal the details of the testing. This lack of performance under this contract can effect the cost of the retraining. If the terms of the testing are not disclosed, then the retraining gets more expensive, and perhaps prohibitively expensive. There was a large effort on the part of MRAC et al at obfuscation in this regard. (Exhibit 6 ) This is a violation of the contract and due process. The details of any major test you have ever taken your honor, were entirely clear to you, well before the testing date. That was not the case here. The breach of the contract was deliberate, extended and severe, in it's extent.

16. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000.        There was an intent to form a relationship, and of course, legal capacity.   That contract was breached by the details noted above. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

17. I ask for an order directing the MRAC/IPE/BNBME regarding this issue. They need to tell all prospective clients that these are step three level tests. They also need to tell all clients that Peds, OB, and surgery topics are on these tests.

18. Compensatory, and Punitive damages are sought along the lines of action number one.

### As and for a third Cause of Action

**19.** Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 18 as if the same were fully set forth herein at length.

12

20. Scott Mannaker, M.D. conducted what can only be described as an ambush interview. On hearing about these events, all parties signed off on this abuse.

21. When I contacted John Hansen Flashen about the conduct of his employee who was acting as a consultant to the board, Dr. Hansen - Flachen told me " We have that problem with Scott." The details of this conversation can be determined from a voice recording I made of my side of the conversation.

C. Under the contract I am to expect a professional examiner. That was not the case here. That particular examiner has a history of these type of unprofessional interviews. ANY serious vetting of this examiner would have revealed this fact. This is also shows negligence on the part of each one of the defendants. This type of examiner should be marked and shunned, not employed as a consultant, by the National Board.

22. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

23. Furthermore, that examiner was negligent in his duties. This defendant is a licensed medical practitioner. There are standards to meet, when one claims that a person has disordered thinking. Those standards were not considered here. This examiner violated his duty of care. This is a most serious violation of due process by all concerned. Youngberg V Romeo applies here and thank God that it does. No standards were used to assert this diagnosis.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a

13

substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized, also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

24. Without a doubt, if Dr. Manaker had not added disordered thinking to his report, the MRAC would not have had enough ammunition to decline my retraining. Folks who had ADHD and Personality disorders can certainly practice medicine, or even be President of the United States. If you have disordered thinking, there is not much at all that you can do.

25. By extension the other defendants are negligent. Furthermore, they should have given at least some thought to vetting their examiner. Going to his immediate supervisor would have revealed a big problem.

26. Furthermore this defendant acted intentionally to illicit emotional distress. The defendant acted ***intentionally.*** One does not grunt in polite society. He or she does not start prancing around the room yelling that I know no medicine. These acts were intentional, and part of a pattern of previous behavior on the part of this defendant.

2. Defendant's conduct was extreme and outrageous; As outrageous as it may seem, the decibel level of the defendant's grunts and what not, were MUCH louder than those of Dr. McDaniel, who grunted several times during the last evaluation she did of me.

3. Defendant's act is the cause of the distress; and

4. Plaintiff suffers severe emotional distress as a result of defendant's conduct. Rarely a day

14

goes by where I do not grind my teeth over this incident. It remains the worst treatment, the very worst in any hour in my life.

27. **This means that the defendants did not do any due diligence. Dr. Mannaker should not be employed in interviews of this nature, and I have reason to believe that his treatment of me was deliberate and sanctioned from the outset.**

## As and for a Fourth Cause of Action

**28.** Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 27 as if the same were fully set forth herein at length.

29. Under that contract, I am to expect that folks perform in a manner that precludes the development of severe emotional distress. That did not happen here. The defendants acted in a manner, by ignoring me, and not telling me the details of the testing, and treating me in a severely unprofessional manner that caused me to seek medical care between appointments and an increased dosage of my medication. That said, when such a level of emotional distress is intentionally inflicted, there is no medication that can return you to normal, or even near normal. Agitation, lack of concentration, anxiety, and depression ensue. Your honor, I have never been more upset, not once, over an extended period as I was during in the run up to this set of testing.

30. I am good at a few things, one of them is test taking. More than anything I was looking forward to acing this set of tests. As it is, I more than passed them. By no means should it have been as hard as it was to find out as much as I did about the testing.

A. Defendant acted ***intentionally. I want to stress this point. For weeks, I could not get ahold of the MRAC.*** The details of this are noted in the pre testing packet of emails. Later the IPE director did the same thing, in a different way. The IPE director acted intentionally to misrepresent the nature of the testing. I cannot begin to describe in words how torn I felt at this action. I was being thrust in different directions of study, frozen at times, with anxiety.

15

B. Defendant's conduct was extreme and outrageous; and

C. Defendant's act is the cause of the distress; and

D. Plaintiff suffers severe emotional distress as a result of defendant's conduct.

http://en.wikipedia.org/wiki/Intentional_infliction_of_emotional_distress

31. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

## As and for a Fifth Cause of Action

32. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 31 as if the same were fully set forth herein at length

33. The first step in this process was supposed to be a meeting with my preceptor. This person is referred to in this action as the consultant with the UMDNJ. I never met with this person. Given the lack of response from the defendants, I am beginning to wonder if this person ever existed.

36. Of all of the many difficulties I have had with MRAC et al, this problem, the cause of the fifth cause of action against the defendants is the most egregious and speaks to one thing. MRAC et al never intended to retrain me. They planned on taking my money, and causing me pain in the process.

37. Under the contract, I was supposed to meet with a preceptor as the very first step. The circumstances involved in this step approach those of fraud, and when all of the facts come out, may well amount to fraud on the part of MRAC et al. Most certainly, first of all, not meeting with the preceptor was a breech of contract. This meeting was supposed to set the parameters for

16

further meetings and the subsequent retraining experience. As noted in Exhibit 6, I asked many times to see the preceptor. That request was never answered. It was always ignored totally.

38. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

39. The same prayers for damages are made for this **cause of action.**

## As and for a Sixth Cause of Action

40.. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 39 as if the same were fully set forth herein at length

41. In Medicine, all qualification tests can be retaken. The Legal Bar can be retaken, the SATs, MCATs, all steps of the National Boards, ( Step 1, 2, and 3 ) may be taken over again. All may be retaken up to THREE times.

42.  For doctors seeking reinstatement, just like me, there is a test called the SPEX. The SPEX can be taken three times. This test is probably very similar to the step 3 of the boards based on the practice questions. In my case, the IPE ( now NBME ) states that the testing given can only be administered one time, because they only have one set of Multiple Choice Questions. ( Exhibit 8) This violates an implied contract that these tests can be retaken, and may VERY likely amount to fraud, since the questions I answered were clearly at a step 3 level. The notion that the NBME, only has one set of Step 3 Questions is absurd. It is more absurd, because I clearly passed the

17

multiple choice question tests. There can be no doubt that I passed these tests, there is objective evidence of that. ( Exhibit 4 )

43. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

As and for a Seventh Cause of Action

44. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 43 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

45. As part of the contract to evaluate me and then retrain me if I passed, the MRAC requested all of my Psychiatric reports. They received, ALL of the reports that were sent to the court, along with the decision of Judge Kehinde. It should have been clear to the MRAC, based on two facts, that I do not have Narcissitic Personality Disorder.  The MRAC incorrectly agreed after review of the documents, that I have Narcissitic Personality Disorder. It is clear, after review of the documents that even Dr. McDaniel, the lone physician to proffer such as diagnosis, refused to say under examination that I had ANY of the features of that disorder. In learning what I do know about pleading a complaint, I found that I have to note the elements of the claim. Stating the elements of Narcissistic Personality disorder are central to making that diagnosis. Judge Kehinde NOTES that fact in her report. Indeed, that disorder was added out of expediency, and was not accepted by the Court. It should not have been accepted by MRAC. The other reason is that Dr. McDaniel is contradicted by about 10 other physicians on this matter.

18

**46. MRAC was negligent in accepting that diagnosis**. MRAC had a duty to properly assess my abilities. They breached that duty. The proximate cause of that breach was their reliance on the ONE report that gives me a diagnosis of Narcissitic Personality Disorder.

47. While the preponderance of the evidence, supports my assertion. That is not enough, in my opinion. Given the seriousness of my allegations, I have petitioned the court under the rules of evidence ( rule 706 ) to order a court Psychiatric evaluation of me prior to any determination in this case. Under that rule, both parties pay for the assessment. In my memorandum on this, I note the case Youngberg v Romeo which insists that standards be utilized at all times in these matters. MRAC was negligent in assuming that I had Narcissitic Personality Disorder for the reasons noted.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized, also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

48. My Psychiatric diagnosis is not a matter of judicial decision. It is a matter of medicine. As such, Harig 462 US at 313 - 314 applies. In that case, " special circumstances warrant an exception to the normal rules of preclusion."

19

49. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

## As and for a Eighth Cause of Action

50. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 49 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

51. MRAC was also negligent in assuming that I had disordered thinking. That notion was never offered by anyone besides Dr. Manaker. MRAC et al had a duty to properly assess my abilities.  A thought disorder is a severe illness. Any reviewer seeing my performance on the rest of the testing would have wondered aloud if this assertion was correct. As you can see, I had months of communications with MRAC, and it never came up or was asserted. I have ADHD, and only ADHD. MRAC et al, did not properly vet the examiner, or sent him in there to purposely make a mockery of the proceeding. Either way, MRAC et al were negligent in putting the notion that I have disordered thinking on the chart.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized, also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

20

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

Those folks with disordered thinking are not able to work. This is a severe diagnosis, and the data in (Exhibit 14) clearly show  why I do not have disordered thinking. There is absolutely no doubt. I do not have this problem. This label subjects me to a substantial loss. The act of declaring this problem most certainly caused the loss.

This notion is so bizarre one is left thinking, can they be serious? This shocks the conscience.

52. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

As and for a Ninth Cause of Action

53. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 52 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

54. To review, All of the supervisors were made aware of this situation and refused to review, revise, or for the most part, consider my requests at remediation in this case. I should note, as I did previously, that Scott Manaker M.D.,  did acquiesce to another interview if the NBME OK'd

21

it. He admitted on the phone to me that he had been hard on me. ( The words I used at the time ) Also, when he first heard of the interview, Dr. Sokolowski initially agreed to have it redone. However, he was overruled by someone, or changed his mind. I am not sure which. Richard Hawkins M.D., speaking for himself and Donald Melnick M.D. dismissed me entirely, and was unprofessional in doing so. EVEN before the final results were known to me, or him, Dr. Hawkins told me that I would NEVER set foot in the National Board building again. Dr. Hawkins and Dr. Melnick were extremely unprofessional in this regard. As noted, ALL other NBME tests are given three times. This is the only test that is supposedly given just once. I thought that I was asking for something that can happen. They said that it never happens. I had just never heard of that. I find that notion incomprehensible in it's own right.

55. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

Request for Relief

1. Per the contract, retraining in Medicine
2. Compensatory and Punitive Damages

### As and for a Tenth Cause of Action

56. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 55 as if the same were fully set forth herein at length
57. EACH cause of action under the 14th Amendment is ALSO a cause of action under the ADA. The plaintiff wishes to make a claim for each of the first five causes of action under the ADA. The statute for this set of complaints is the same. It begins to accrue on the first day the cause of

22

action accrues.

58. All of the actions of the defendants revolve around my psychiatric diagnosis. The details of the shenanigans in this area are shown above and in the many psychiatric reports. This is discriminatory in nature and violates the American's with Disability's act of 1990 ( the ADA) 42 U.S.C.A. §§ 12101 et seq, as amended in 2008. This action was filed prior to the enforcement date of the updated ADA. As the discrimination is ongoing, the plaintiff makes a claim under the NEW act.

59. As the Court is aware, the rulings subsequent to the 1990 act, essentially set up a catch 22. Congress restored it's original intent in the updated law. It is incumbent upon the court to enforce the law as Congress intended all along, especially since the discrimination in this case is ongoing.

60. Plaintiff seeks an order granting injunctive relief against the wrongful acts of the defendants.

Claims

61. Plaintiff is a person with a disability as defined by the ADA and it's implementing regulations.

62. Defendant, through its policies and conduct has violated the ADA by discriminating against persons on the basis of their disabilities.

63. The violation here under the ADA is frank discrimination. I do not need an accommodation, never asked for an accommodation and under the new law, I believe that I remain covered. Frankly, the diagnosis of ADHD was the worst thing that ever happened to me. I got to age 32 without it thank you very much. While treatment helps me, the discrimination is MUCH worse. Hence my comment regarding this regrettable set of circumstances.

64. Plaintiff has no adequate remedy of law, or otherwise, for the harm done by defendant. Plaintiff has suffered, and continues to suffer great and irreparable loss, damage and injury as a proximate result of the above mentioned acts of conduct of the defendants for which the plaintiff has no adequate remedy at law. Plaintiff will continue to suffer unless such acts and conduct of defendant is enjoined.

23

Request for Relief

1. Assume jurisdiction

2. Retraining in medicine or retesting and then retraining.

3. Issue an injunction enjoining the defendants from continuing these practices noted in each count.

4. Grant such other and additional relief as the court deems just and proper. Some details of these categories were discussed in the original pleading.

Respectfully submitted

_____

September 9, 2009

Statute of limitations is per 42 USC § 1988 and so it runs two years. That takes it to Oct 16th 2008. The letter of declination took some time to produce. As noted on that letter, exhibit one, consultation with an official at UMDNJ took place. I assume that was the reason the declination letter arrived a couple of months after the testing ended.

Venue per 28 USC § 1391 makes it appropriate to file in Pa Eastern District

24

### Memorandum concerning issues for my 1983 case against the defendants.

I realize this information is known by the court. I am also aware that if certain information is not

stated it is not used. This information is pertinent to my case.

1. As previously stated, person or persons acting under color of state law are depriving me of a federally protected right.

2. I must show that the preponderance of the evidence is in my favor to prevail.

3. I do not even need to prove that a defendant acted with a particular state of mind. They did, it seems to me, but I do not need to prove that to prevail.

4. Under the 14th amendment, I do need to prove that this act was intentional and that it caused a deprivation of property, ( my medical license ) and liberty.

5. Section 1983 created a cause of action for plaintiffs to enforce federal rights created elsewhere.

6. Keeping in mind that no one has called me paranoid, there is a conspiracy here. If you repeat something often enough, soon, someone may say that it is true. Claiming a conspiracy apparently enhances my chances of receiving damages and can broaden the scope of admissible evidence. So, while using the C word is fairly inflammatory. MRAC could have picked from 8 other psych reports ( more or less,) but they chose the negative report. MRAC et al, sent in a known interview abuser to yell at me, and then lie on the report. Like they say, if you repeat a lie often enough, soon it may be seen as the truth.

7. Bell Atlantic v Trombley

In this case, we are told that one must provide factual allegations, and the grounds on which the claim rests. The plaintiff must plead more than labels and conclusions. Here, it seems to me that

25

the defendants are doing that, pleading labels and conclusions that are based on nothing that is dispositive. For my part, I am making valid claims, based on the preponderance of the medical evidence presented to the court.

In my case, no one claimed a significant communication problem until Dr. McDaniel. The preponderance of medical evidence says that I do not have that. The same is true for everything, short of my ADHD. I will detail what problems I do have in a separate memo.

***Importantly, for a claim to be heard, after noting this case, a complaint does not need detailed factual allegations. It does not require "heightened facts, and a pleading of specifics, but only enough facts to state a claim that is plausible on it's face.***

Here I do both. I provide enough facts to actually have the court find in my favor, without further evidence, and I have certainly stated enough facts to state a plausible claim.

8. Iqbal v Hasty

This case required the plaintiff to amplify a claim with some factual allegations so that the claim is plausible. I most certainly proffer enough facts to do that.

9. Is there actual or threatened injury? Well, here again, the injury is current and ongoing. Without retraining in medicine, I cannot make any money. Because I am listed as having disordered thinking and narcissitic, there is no work that I can do. That is the same as being mentally incompetent. I am most certainly mentally competent.

10. There is a sufficient likelihood that a favorable decision on the merits will redress the injury. I was trained very well at Walter Reed Army Medical Center. I taught medicine to doctors in training taught for more than 8 years. There is sufficient likelihood.

11. Board of Regents v Roth

I believe this expands on previous comments on this case. " to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it." that notion applies to medical training and these defendants.

Property interests are not created by the Federal Constitution, rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. Property interests are bound by rules and understandings that secure certain benefits and that support certain claims of entitlement to those benefits.

An individual has a legitimate claim of an entitlement "to a government dispensed commodity when the state establishes fairly effective standards of eligibility for receiving the commodity.

There is a case (Mathews v Eldridge ) that sets out a formula for weighing the strength of private interests together with the procedures necessary to protect property against the pertinent state interest. I am aware of this case. I am not yet familiar with the formula. However we have a case where the preponderance of the evidence is already in my favor, and frankly, folks are making things up. Further research is needed if this formula comes into play. That would not take more than a day to do, I am certain, as long as I can access the Library of Congress Law Library.

Collin v. Harker Heights

In this case, the court notes it is reluctant to expand the concept of substantive due process because guideposts for reasonable decision making in this area are scarce and open ended. It is noted, that substantive due process claims are reserved not merely for unwise or erroneous government act, but for egregious abuses that shock the judicial conscience. I have

27

delineated how the actions in this case do that. This case is not close. It should be noted that the case that is closest to MY case is Ewing v Board of Regents. In that case, the court did not mention shock the conscience in it's determination that the treatment of Ewing was arbitrary, unreasonable and capricious.

Let's go a quick list about that issue. I was never given a preceptor. That was supposed to be the first step. Despite months of trying, they never told me the details of the testing. They sent in an interviewer who is known to abuse his subjects. He proceeded to abuse me. Then he lied on his report about it. The final report, which was months in coming, does not make sense, and contains erroneous information. All of that shocks the conscience. There are more facts that meet that standard, including the details of my conversations with pertinent people. All of that occurred in the setting where my performance on the objective testing supports my retraining.

    This regards how my case will affect future cases. Frankly, as a patient advocate, I do not want to make it easier for folks who hurt patients to get back into medicine. I want the court to note that when it finds in my favor. A fair, and open, but strict and safe process must be established for folks wanting to return to medicine. It should be priced no higher than that of a medical student and loans should be available to folks going through the process. Right now, they have established the reinstatement process as an extremely difficult hurdle, insurmountable to many because of cost. I have been wanting to say that for awhile. I could not find a place for it to fit, so there it is.

Esmail v Macrane 57Fd.76 179-80 7th Cir 1995

Essentially in this case, one state official harbored a particular amount of animosity against the individual. The Court found that the Equal protection clause is not limited to protecting members of identifiable groups. A class of one is likely to be the most vulnerable of all. It is not every day that you meet a perfectly normal person ( with ADHD ) who is also listed as mentally incompetent, dangerous, narcissistic, and with communication difficulties. Such a person is not

28

employable. Such a designation, on very little evidence, shocks the conscience in and of itself. Especially since the one objective trier of truth found exactly the opposite.

The court comments on the shocking the conscience standard in County of Sacramento v. Lewis. In that case, the official had time to deliberate. Well, here they officials have had well, let's just say enough time to deliberate. Here the officials remain deliberately indifferent and continue to shock the conscience. This meets the court requirements.

It should be noted that the case that is closest to MY case is Ewing v Board of Regents. In that case, the court did not mention shock the conscience in it's determination that the treatment of Ewing was arbitrary, unreasonable and capricious.

Pratt - Hudson Doctrine

Once a protected interest is identified, the court must examine the process and decide whether the procedural safeguards built into the process are constitutionally adequate. Generally due process claims require some notice of an opportunity to be heard. In certain cases a post deprivation remedy is adequate. Here no such remedy was offered. MRAC randomly decided my fate.

Youngberg v Romeo

This case speaks to professional judgement and standards. Your honor, you must stress the importance of this case in weighing the evidence from so called experts in cases such as mine.

I can tell you that folks like Drs. McDaniel and Dr. Mannaker leer at you, laugh at you, yell at you, and generally have a good time at your expense. I could go on, and will do so, in court, if the need arises.

29

Frankly, when they are evaluating you, these folks should be video taped. At the very least, they should be audio taped. I realize that you cannot make that mandatory for future evaluations. I also realize that you can strongly recommend it, and also require that folks be told that making a permanent record is in the interest of all parties. With technology being what it is, this should be standard. If ONE thing comes from this case, it should be that notion. Please.

Getting back to this case.

The official's decision must represent " a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not base the decision on such a judgement."

First of all, I am very glad to have found that case. I am thankful to the Court for using that wording. In Medicine, we call that using the standard of care. In my case, the standard of care was not used at all in creating the labels being used against me. That will be stressed in the memo on Psychiatry and cognitive disorders. As I learned more about the procedures of the Court, this approach in Medicine is IDENTICAL to stating the elements of a contract, or negligence claim when making it.

Also, the preponderance of evidence speaks to this issue. Most of the doctors involved have integrity, and self respect, unlike Dr. McDaniel and Dr. Mannaker. The preponderance of evidence says that I have only ADHD, and that I am ready to resume my duties as a Physician.

30

This is also a claim enforceable under the substantive component of the due process clause. This bars arbitrary, wrongful government actions Zinermon v Burch 494 US 113, 124 1990 Burch is particularly pertinent since listing someone as mentally incompetent, dangerous, narcissistic, with communication difficulties amounts to ten years ( so far ) of incarceration.

Quoting from the case, " He seeks to hold state officials accountable, for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue."

Make no mistake. My situation is severe, and directly analogous to incarceration. It truly does shock the conscience that all of these labels appear on my chart. There is a lot written about Burch, who as you know was a mental patient. In my case, state officials have essentially the same "broadly delegated, uncircumscribed power to effect the deprivation at issue."

Harig 462 US at 313-314 applies here. "Special circumstances warrant an exception to the normal rules of preclusion." I do not believe that a diagnosis, even if it is determined by the state, and affirmed can be precluded from scrutiny by other courts. Especially when the state offers no criteria for the diagnoses it wishes to pin on me. Moreover, my Psychiatric diagnosis is in flux even based on the reports of the state, and the state actors. In itself, that is a sign of the arbitrary nature of these diagnoses.

Wood v. Strickland, 420 U.S. 308 (1975) Officials " are not immune from such liability if they knew or reasonably should have known that the action they took within their sphere of official responsibility would violate the constitutional rights of the student affected, or if they took the action with the malicious intention to cause a deprivation of such rights or other injury to the student. But a compensatory award will be appropriate only if the school officials acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that their action cannot reasonably be characterized as being in good faith. Pp. 420 U. S. 313-322."

In this section 1983 case, the senior school officials were found to be liable for damages. I am citing this case as pertinent. The narrative supports the notion that there was malicious intention.

There is one NON Section 1983 case that needs to be considered here.

Mileikowsky v. Medical Board of California In Mileikowsky the court found that they failed to present good cause for Dr. Meleikowsky to submit to a Psychiatric examination. As you can see from his web site. Dr. Meleikowsky is a patient advocate. http://www.allianceforpatientsafety.org/ His efforts as a patient advocate led to his troubles.
Http://www.allianceforpatientsafety.org/gm-mandamus.pdf
*"The 805 report" on which the order was based does not, by itself, lead to the conclusion that the petitioner suffers from mental illness that renders him unable to practice medicine safely." That is a key finding by the Supreme Court of California in 2004. In my case, I had already been cleared by a board certified Psychiatrist, approved by the state Medical Society.* Nevertheless, l was sent to a sham interview, and summarily dismissed.

This cases allows this court  this court to find that psychiatric evaluations made without proper authority or ***basis*** can be struck down. In my case, the preponderance of the evidence supports only a diagnosis of ADHD. As the first step in discovery, and noting this case, l offered a motion ( still pending ) to have the court appoint an expert in Psychiatry to advise the court. Due process was ignored in the state psychiatric interview. It was then copied by MRAC, continuing to ignore due process.

*Ewing V Board of Regents of Univ Of Mich seems to be the best case to quote, and so I have copied the entire Court of Appeals opinion.*

There was a contract. The officials acted under the color of state law. They treated Ewing arbitrarily. Ewing prevailed. The only significant difference between his case and mine are these. I passed the tests. Spurious psychiatric and neurologic diagnoses were added to my case in order to make it appear that MRAC et all had done the correct thing. Instead they violated due process.

742 F.2d 913

19 Ed. Law Rep. 948

Scott E. EWING, Plaintiff-Appellant,

v.

BOARD OF REGENTS OF the UNIVERSITY OF MICHIGAN, Defendant-Appellee.

No. 83-1333.

United States Court of Appeals,

Sixth Circuit.

Argued July 18, 1984.

Decided Sept. 6, 1984.

Michael M. Conway, argued, Mary K. Butler, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellant.

Peter Davis, argued, Davis & Fajen, Ann Arbor, Mich., for defendant-appellee.

Before KEITH, Circuit Judge, PECK, Senior Circuit Judge, and NEESE, Senior District Judge.*

KEITH, Circuit Judge.

1

This is an appeal by the plaintiff, Scott E. Ewing, from a reported decision of the United States District Court for the Eastern District of Michigan finding in favor of the defendant, the Board of Regents of the University of Michigan, 559 F.Supp. 791 (E.D.Mich.1983). In the district court

34

the plaintiff had sought an order to compel the defendant to allow him to retake the National
Board of Medical Examiners' Part I Examination. For the reasons stated below, the decision of
the district court is reversed and remanded with instructions that an appropriate order be entered
consistent with this opinion.

2

In 1981, Ewing was enrolled as a student in the University of Michigan's six-year program of
combined undergraduate and medical education, known as the Inteflex Program. Ewing sat for
and failed the National Board of Medical Examiners' Part I Examination (NBME Part I) in June
1981. Because of his failure of the NBME Part I, Ewing was dismissed from the Inteflex
Program. Ewing prosecuted two administrative appeals of the decision to dismiss him. Both
appeals were denied as the Inteflex Phase II Promotions and Review Board and the Executive
Committee of the Medical School determined to affirm the decision to terminate his registration.

3

Ewing filed suit in the United States District Court for the Eastern District of Michigan, seeking
an injunction that would require the Board to permit him to take the NBME Part I again and, if he
passed, to reinstate him with the same status as if he had passed on the first occasion. Ewing's
amended complaint asserted claims based upon: (1) the violation under color of state law of his
substantive due process rights, which is actionable under 42 U.S.C. Sec. 1983 (Count I); (2)
breach of contract (Count II) and (3) the principles of promissory estoppel (Count IV).1 A
nonjury trial of Counts I, II and IV was held in the district court in Ann Arbor, Michigan, with the
Honorable Chief Judge John Feikens presiding, on January 10-12 and 14, 1983. The district court
filed an opinion on March 22, 1983, denying each of Ewing's claims and directing that an
appropriate order be submitted. 559 F.Supp. 791 (E.D.Mich.1983). Based upon that opinion, the
district court entered judgment in favor of the Board on April 11, 1983, and this appeal
followed.2

4

35

It is well settled that in order to prevail in a Section 1983 action, the plaintiff has the burden of showing that he was deprived of a constitutional right and that the deprivation occurred under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978). It is not disputed that the defendants were acting under color of state law. Ewing v. Board of Regents of the University of Michigan, 552 F.Supp. 881, 883 (E.D.Mich.1982). The issue then, with respect to the Section 1983 claim, is whether Ewing was deprived of a constitutionally cognizable right.

5

The United States Supreme Court has held that property interests, which may give rise to constitutional protections, are created and defined by existing rules or understandings which stem from independent sources, such as state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Court has also held that these property interests can arise from explicit contractual provisions or "other agreements implied from the promissor's words or conduct in light of the surrounding circumstances." Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699-700, 33 L.Ed.2d 570 (1972).

6

In an old racial discrimination case, Booker v. Grand Rapids Medical College, 156 Mich. 95, 120 N.W. 589 (1909), the Michigan Supreme Court discussed the contractual aspects of the relationship between a medical student and his institution. Although, the explicit holding of Booker has since been discredited, the view of the Michigan High Court on the contractual relationship issue is instructive:

7

In fact, when one is admitted to a college, there is an implied understanding that he shall not be arbitrarily dismissed therefrom. The required fees may be paid annually, and may be no more than fair fees for the advantages received by the student during the year, and yet it is clear that the fees for the first year are, in fact, paid and received with the understanding that the work of the year

will not be made fruitless, a graduation and a degree made impossible, by an arbitrary refusal to permit further attendance.... There is no good reason why the law should not recognize, as growing out of these relations, a right of realtors resting in contract to be continued as students by the respondent.

8

156 Mich. at 99-100, 120 N.W. 589.

9

Other circuit courts have also agreed in the contractual nature of the relationship between a student and his university. See, e.g., Corso v. Creighton University, 731 F.2d 529, 531 (8th Cir.1984); Williams v. Howard University, 528 F.2d 658, 660 (D.C.Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976). Thus, we hold that an implied understanding that a student shall not be arbitrarily dismissed from his university is a property interest, resting in the contractual relationship between the parties, which can give rise to constitutional protections.

10

In Stevens v. Hunt, 646 F.2d 1168 (6th Cir.1981), this Court discussed the possibility that a university student may have a cause of action for the violation of substantive due process rights arising out of an academic dismissal from a university. In Stevens, this Court referred to the United States Supreme Court's decision in Board of Curators v. Horowitz, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and said:

11

The Horowitz decision still leaves open the question as to whether such a cause of action exists. Even if a cause of action does exist, it is clear, however, that arbitrary and capricious action on the part of the University officials would be a necessary element in order for plaintiffs to prevail.

12

37

In order to establish such arbitrary and capricious action, the plaintiffs must show that there is no rational basis for the University's decision, or that the decision to dismiss was motivated by bad faith or ill will unrelated to academic performance.

13

646 F.2d at 1170 (citations omitted). Pursuant to the guidance provided by Stevens, we hold that the arbitrary and capricious deprivation of a constitutionally cognizable right does state a valid cause of action.

14

In the case at bar, the University of Michigan argues, in essence, that even if there were a contractual relationship between the parties, their action in dismissing Ewing is not arbitrary and capricious because the terms of any such contract would be defined solely by the University of Michigan Medical School Bulletin. This bulletin notes the broad discretionary power of the Promotion and Review Board. See Appellee's Brief at 25-27 (quoting from the University of Michigan Medical School Bulletin, 1975-77 ed. at 34; 1977-79 ed. at 36). This limited view of the terms of the contractual relationship between the parties ignores, however, substantial and uncontroverted evidence in the trial record that at the time Ewing took the NBME Part I, medical students were routinely given a second opportunity to pass it. Joint Appendix at 157-58. In fact, the evidence is undisputed that between 1975 and 1982, of the forty medical students who failed the NBME Part I on the first attempt, every one of these student was allowed a reexamination except Ewing. Joint Appendix at 110-11.

15

In light of this undisputed evidence of a consistent pattern of conduct, the finding of the district court that there was not "sufficient evidence to conclude that the defendants bound themselves either expressly or by a course of conduct to give Ewing a second chance to take Part I of the NBME examination," 559 F.Supp. at 800, is clearly erroneous. A University promotional pamphlet entitled "On Becoming a Doctor", stated that a qualified student would be given a

second chance to take the NBME. This University publication is important because, irrespective of whether Ewing saw this pamphlet before taking the NBME Part I, this pamphlet memorialized the consistent practice of the medical school with respect to students who initially fail that examination.

16

There is substantial evidence in the record, and there is no district court finding to the contrary, that Ewing was a "qualified" student, as the University defined that term, at the time he sat for the NBME Part I. Joint Appendix at 298, 299. The evidence plainly demonstrates that the University treated Ewing in an arbitrary and capricious manner by not allowing him a second opportunity to take Part I of the NBME.

17

In sum, the evidence demonstrates that it was the consistent practice of the University of Michigan to allow a qualified medical student who initially failed the NBME Part I an opportunity for a retest. The evidence demonstrates that at the time Ewing sat for the NBME Part I he was a qualified student. The evidence also demonstrates that Ewing was the only University of Michigan medical student who initially failed the NBME Part I between 1975 and 1982, and was not allowed an opportunity for a retest. This action by the University of Michigan was arbitrary and capricious and must be reversed.

18

Accordingly, the decision of the district court is reversed and remanded with instructions that an order be issued compelling the University to allow Ewing to retake the NBME Part I. Further, should Ewing pass the NBME Part I, the district court is instructed to order that Ewing's registration in the Inteflex Program be reinstated.

*

Honorable C.G. Neese, Senior Judge, United States District Court for the Eastern District of

39

Tennessee, sitting by designation

1

Count III seeking monetary damages pursuant to 42 U.S.C. Sec. 1983 was dismissed by the district court, prior to trial, based upon immunity conveyed to the Board under the 11th amendment to the United States Constitution. 552 F.Supp. 881 (E.D.Mich.1982). Ewing did not appeal the dismissal of his claim for monetary damages

2

Because we believe this case can be disposed of on the Section 1983 claim, this Court does not expressly reach the breach of contract or promissory estoppel claims

CC? | Transformed by Public.Resource.Org

United States District Court

Eastern District of Pennsylvania


Joseph O. Boggi D.O.    Plaintiff                                    Case No. 08-

4941

Internal Medicine

                                                    Civil action

1207 Ballard Street

                    .

Silver Spring, Maryland 20910

V.

Medical Review and Accrediting Council

Larry Downs Esq

Joe Sokolowski M.D.


Two Princess Road

Lawrenceville, NJ


National Board of Medical Examiners

Institute for Physician Education

Andrea Ciccone Director IPE


Scott Manneker M.D. consultant

Richard Hawkins M.D. VP NBME

Donald Melnick M.D. President


3750 Market Street

Philadelphia Pennsylvania, 19104

41

215-590-9772

UMDNJ

and the un-named "consultant"

65 Bergen Street, Newark, NJ 08854

October 16, 2008  ( revised September 9, 2009 final)

All parties are sued both individually and as agents of their respective organizations.

## Memorandum in support of Amending the Initial Filing of a Pro Se Litigant

1. I am referencing Martin A Schwartz Section 1983 Litigation quite a bit here. I would like to

thank him, and the fine people at the Library of Congress Law Library, without whom, I would

not have the insights I currently have.

2. The US Supreme Court has established that pro se complaints are subject to a "less stringent

standard than formal proceedings drafted by lawyers." and should be liberally construed in the

plaintiff's favor. Hughes v Rowe 449 US 5 1980, Estelle v gamble 429 US 97, 106 ( 1976) reh'g

denied, 429 US 1066 (1977), Haines v Kerner 404 US 519 ( 1972). Accord Boag v MacDougall,

42

454 US 364, 365 (1982) While I believe that my case should move forward on the merits, the

Supreme Court is clear here.

3. I have raised a valid constitutional claim but may have inadvertently sued one wrong party.

Frankly, your honor, I am still not sure that the IPE was not separate, as it had it's own board at

the time, and President. However, the Fifth circuit and 7th Circuit, ruled that I may amend my suit
to sue the

appropriate parties, and I have done so. I added the National Board of Medical Examiners to the

complaint. Dayse v Schuldt, 894 F2d 170, 174 ( 5th Cir 1990 ), Billman v Indiana Dept of

Corrections, 56 F 3d 785 (7th Cir, 1995 )

4. While I believe that my initial pleading properly stated a claim, it was certainly not stated in the

normal format. I found a format, and followed that as noted in the original pleading. I try to

follow the traditional format for stating a claim in this amended pleading.

Respectfully Submitted

_____  _____  _____

43

United States District Court

Eastern District of Pennsylvania


Joseph O. Boggi D.O.                                        Case No. 08-4941

Internal Medicine                                          Civil Action

v

Medical Review and Accrediting Council, et al.

*Memorandum regarding agencies, non profits, and other organizations who act under color of state law.*

This information is available in text books on the subjects, indicating to me that while there are

controversies in this area, there is also a large body of settled law as well.

MRAC does all of the retraining for the state of New Jersey. Action under the color of state law

has been found in the activities of a public service commissioner, an insurance commissioner, a

labor commissioner, a park commissioner, a county commission, a transit authority, a housing

authority, a child welfare agency, a state cooperative education service, a publicly funded

counseling service, a state controlled utility, an accident compensation administration, an

exposition commission, a state fair board, and more. MRAC works for the state board of

medicine, a state actor. Ref page 7-89 Matthew Bender and Co. Loose leaf Text on Civil Matters.

44

Hospitals owned and operated by the state act under color of state law for purposes of section

1983. Meredith v Allen County War Mem Hosp Comm 397 F 2d 22 ( 6th Cir 1968 );Spence

v Staras, 507 F 2d 554 ( 7th Cir 1974); Downs v Sawtelle, 574 F 2d 1 ( !st Cir, 1978 ); Tarabisihi

v McAlister  Reg'l Hosp.,, 827 F. 2d 648 ( 10th Cir. 1987); Wofford v. Glynn Brunswick Mem

Hosp., 864 F.2d 117 (11th Cir. 1989)

Regarding the NBME, non profits whose "membership," are required for practice are found to be

acting under the color of the law. The model for this is the state bar.  Keeping in mind that I did

pass this test, if I did not pass this test, it would equivalent to failing the bar exam. It is notable

that the bar is given three times.

There are standards considered for non profits, which may or may not apply here given the

paragraph above, but are also dispositive in my favor.

Jackson v Stutes provides guidelines for tax exempt organizations. The NBME acts under

color of state law under this case. More importantly however, Hawkins v N Carolina Dental

Assoc, notes that one is acting under color of state law if being a member is required in order to

practice. This applies to the bar, and passing the bar. The analogous organization in medicine to

the bar, is the NBME.

We should examine Jackson v Stutes. The five criteria are as follows. 1. State aid

dependence. 2. Government approval of organizing activities, 3. Is the organization serving a

public function 4. The extent of government regulation of the entity 5. The extent to which the

organization could claim private status on the basis of constitutional right.

The NBME is essentially the government, as it pertains to testing of physicians for

licensure purposes. The NBME set the high standards in this regard. There is nothing private

about the process of getting your state license, you either have the board's approval or not. If you

do not pass the board's you do not practice.

46

Quoting from the Section 1983 monograph available on the Internet, written by Blum and Urbonya.

When the challenged action, is committed by a person who does not work for the government, the under color of the law inquiry focuses on the nature of the connections between the                                                                                                    privat

e          http://74.125.45.104/search?q=cache:NlW6 kd9iK0J:www.fjc.gov/public/pdf.nsf/lookup...   10/13/2008          perso

n and the state. Two common situations easily suggest actions under color of the law. First, a private, person who conspires with a state actor is a state actor for the purpose of the conspiracy. Dennis v Sparks 449 US 24, 28 1980 holding that private persons who conspired with a state judge acted under color of the law.  While I believe that all of these folks are state actors, this case covers those who the court might disagree with. The notion that I have disordered thinking is farcical, I have no criteria for Narcissitic Personality Disorder. These things were appended to my report for one reason, the MRAC et al does not want to retrain me, and they are seeking any means to avoid it. All of these folks are working together in this effort. I am sorry to say.

Second, a private person who acts as an agent of the state, acts under color of the law. I believe that this applies specifically to Scott Manaker M.D., who is a part time consultant for the IPE/NBME. In the latter situation, action under color of the law is present, even though the person is not a full time employee of the state. Adickes & Kress & Co. 398 US 144 152. This case states that a person acts under the color of the law, if the person is a "willful participant in joint activity with the state or it's agents.

2. When sifting through the facts, it is clear that private conduct is that of a state actor. Burton v Wilmington Parking Authority 386 US 715,722 1961 In this case, there is a symbiotic relationship between the state, the MRAC and the IPE. The link between the three is obvious.

MRAC would not exist were it not for the need of the state to have a retraining authority. IN reviewing exhibit one, it is clear that the state (UMDNJ and NBME) has a large amount of

47

control over the MRAC. While the link in Burton was physical, and financial. MRAC would not exist without the connection to the state on two fronts.

Harlow v Fitzgerald does not apply because a matter of clearly established law is the issue here. These officials may not seek immunity from suit.

48

List of Exhibits

1. Letter of declination from MRAC

2. Decision of Judge Kehinde

3. Letters of Recommendation and a Personal Statement

4. The results of the MRAC/IPE testing

5. Prelude to MRAC

6. MRAC/IPE details

7. IPE/NBME data provided

8. Post MRAC/IPE email

9 Cover letter and Voice Recordings

10 My Psychiatric Record

11 Psychiatric Reports

12 The Events from Fort Meade Maryland

13 The DSM Criteria for Narcissistic Personality Disorder

14. The list of things that can cause a Thought Disorder

United States District Court

Eastern District of Pennsylvania


Joseph O. Boggi D.O.                                    Case No. 08-4941

Internal Medicine                                        Civil Action


v


Medical Review and Accrediting Council, et al.


Motion for Reconsideration.


1. Firstly, the decision of the court was mailed to me on September 23, 2009. Under the Federal Rule of Civil Procedure, I believed that I had 30 days from that time to respond. That may not have been the case. I then asked for an extension of time to ask for a motion for reconsideration. Under rule 19 d, this time may be extended for good cause. What follows is most certainly good cause.

2. May it please the court. I find myself in the SAME situation that I did when I was dealing with the MRAC in the early stages. I found things that were wrong with the MRAC IPE test procedure, as documented. I kept talking to them about those issues. While I raised those issues, I did not complain about them because I had to also work with the MRAC. Some of the issues were more important than others. As an analogy, the computer was so slow that even though I knew made the correct diagnoses, ( as confirmed by the report ) I could not tell how I would score, so, I wrote up a complaint. The computer used was clearly slower then specified. That is a test violation. Then just after that, the evaluator yelled at me. He acted like a complete fool. While I know that I did well, and could convince you of that if you saw me, I also knew that the evaluation was a sham. So I complained in writing.

1

United States District Court

Eastern District of Pennsylvania

Joseph O. Boggi D.O.                                    Case No. 08-4941

Internal Medicine                                        Civil Action

v

Medical Review and Accrediting Council, et al.

Motion under Rule 706 of the Rules of Evidence. Court Appointed Expert

While the preponderance of the evidence about my psychiatric condition ( see exhibit 11)

shows that I have ADHD, and am qualified to practice medicine, I would not want the court to

chastise the minority reporters without a fair and independent evaluation of my condition. Hence,

I searched for a rule that pertained to this issue.

I propose, as the next step, the Court order the parties to select an psychiatric expert and

have me evaluated while being videotaped. I must insist on the latter given my experience. I

would like the court to instruct the expert that he or she must strictly adhere to the standard of

care as it exists today. While Psychiatric clinical acumen is a factor in making diagnoses in 2009,

as it was in 1998, there are clear standards to follow.

Respectfully Submitted

_____

49

3. While your evaluation your honor, is in good faith, it is incorrect in many areas. And so, I am forced to try and work out those issues with you. *I know that if permitted, I can convince you that I did exactly as requested during the interview. After reconsideration of the facts of the case, and the law, you will find in my favor. I read your report, many times. While it is extensive, which I truly appreciate, it omits many points made by the defendants that support my case.*

4. *Once again, and I am asking to see you before you make any determination in this case.* When I did that before, if I was a lawyer I would have made a motion for an oral argument. So, this motion for reconsideration is also a motion for an oral argument. I will write up a separate motion for that.

5. I buried the lead when talking about the test results. So, here I am going to skip to the hear of the matter, the interview by the IPE. The evaluator for that essentially said *in writing* that I passed the test, *in every way*. He also said that I had disordered thinking. *The two are not compatible by any means.*

 The interviewer did abuse me. It has happened four times before with Psychiatric interviews. . You have audio tapes of 2 interviews where there was some, but much less abuse. *When they do that they always give a negative report. That is why I complained immediately. Overall, the entire procedure was one big test violation. There is a catch 22 of sorts. If you do not bring up a test violation you are not able to claim one. If you do bring up a test violation they think you did not do well. The actual test results say I PASSED THE TESTS. These are from my Exhibit 4.*

*Here is what the examiner said about my performance.*

> *a.* Page 1 B. **"His patient evaluations were sufficiently detailed to achieve diagnostic accuracy."**

> b. Page 2 **Differential Diagnosis and Medical Knowledge**.
> " He provided reasonable differentials for all 8 cases, including many life threatening

2

possibilities and also uncommon conditions, and atypical presentations."

c.Page 2 of the report paragraph 4. . "**During the TSR interview, Dr. Boggi demonstrated fair medical knowledge that related to the cases that rate above the applicable standards of care.**"

d. Page 2 **Clinical Reasoning and Managing Therapy**
**Dr. Boggi demonstrated an appropriate and adequate ability to distinguish the severity of illness,"**

" **He usually responded to each patient presentation with appropriate supportive measures, paired with an early approach to logical and reasonable diagnostic algorithms.**"

*e.* "**His management strategies were successful and logical**." Fine. This is the best thing. It is **OBJECTIVE EDIVENCE** that my thinking was fine. I did not just cross over into another state of mind. Dr. Manaker states that my thinking was logical. An objective review of the test data, the scores on the CCS says the same thing. There was no disordered thinking.

*f.*End of page two of the report. " **In each case, he could discuss a reasonable differential diagnosis, and revealed understanding of the limitations and utility of the clinical data gathered during the simulation.**

*g.*Continuing on the top of page three. "But **could identify the primary disease process, the life threatening alternative diagnosis, pursue an appropriate diagnostic intervention, and provide alternative therapy.**

*h.*"**Dr. Boggi identified each life threatening complication, or condition, and appropriately instituted life saving therapies in a rapid and expeditious manner.**"
Fine. Just like in the movies on flight simulators, they throw you curves, that may lead to a crash of the plane. Essentially, I kept the plane flying despite the curves thrown at you by

3

the simulation.

i. Page 3 of the report, Patient Risk "**None of the patients were exposed to increased risk**." great. "**In no cases did he order dangerous, improper, or even inappropriate testing or therapy**."

*j.*Page 4 of the report TSR Summary "**Dr. Boggi demonstrated basic medical knowledge that was adequate**"

*k.* **In closing, this report proves that I took good care of the patients.** I could discuss the specifics of the cases upon request and after review of the details.

6. I did not just start practicing yesterday. When I made them, I knew that my actions were OK. Now, I would also admit that they were not perfect, nor were they designed to be artful, or state of the art. I found what I thought were standard answers for these tests on the Internet, and I used the standard answers. In general, I chose confirmation over empirical therapy. That can lead to slight delays in treatment, although, a prudent physician, given no apparent risk would say this is just practicing medicine correctly. Now, as a judge, I can understand why you thought what you thought. However, you MUST reconcile the words of the actual examiner in this case. When you do that, you MUST find for me in this case.

7. That is the bottom line about the interview. Dr. Manaker notes in ELEVEN places that I did OK. He also states that I had disordered thinking. The two are NOT compatible at all. *This is the central part of my case. Dr. Manaker said that I did OK. He had to somehow reconcile the objective results with what he was sent in there to do. Basically find a way to fail me.*

8. I want to get right into the state actor issue, then the claim issue, and then go over facts that are not correct.

9. The Federations of State Medical Boards AND the National Board of Medical Examiners collaborated to form the organizations as noted below. The bottom line is this, the defendants are playing fast and loose with the facts. The Nexus, around the MRAC is THREE FOLD. The IPE, which is a part of the FSMB, UMDNJ, and the Medical Board of NJ, for whom MRAC does

4

ALL evaluations and retraining. I checked with Larry Downs, Dr. Sokolowski, the assistant for Larry Downs, and the President of the NJ Medical Society on that issue. Why the MRAC would LEAVE THAT CRITICAL piece of information out of their statement is interesting. Also, I added the NBME to the list of defendants. I did not say that they owned the IPE. It was always my information that it is a joint effort. One of the first people I called in addition to the NBME people was Frances Cain at the PLAS. Frankly, she was the ONLY one who reacted in the correct manner. Hence I did not sue her. If I need to add the PLAS, or the FSMB, then I will certainly do that. Although I sued a lot of people, I purposely limited it to those who are clearly guilty.

Please see exhibit 15. It shows the association with the FSMB.

Federation of State Medical Boards Dallas Tx---------National Board Medical Ex  PhilaPa.
   1. PLAS - France Cain Director Dallas Texas
      a. SPEX
      b. IPE----------------------------------Tested at NBME offices. Employees of IPE
                                    are  also NBME Employees. ( Andrea Ciccone
                                         Director  )
        1.PACE
        2. CPEP
        3. THREE others sites in the US at the moment
        4.  MRAC -----------UMDNJ - retrains the doctors
             -----------Medical Board of NJ contracts with MRAC to do all
                        testing and retraining.

10. Now, your decision brings up another issue regarding state actors. Exhibit 15 page one paragraph four. The "collaborators," were formed to put a level of protection between the board and the doctors.  That also makes the "collaborators," state actors under one of your definitions. I learned that this was a possible criteria for a state actor from your decision. In other words, the

5

collaborators are NOW doing a function previously done by the state. Again, please see Exhibit 15 paragraph 4. The PLAS and IPE were the only ones doing these standardized evaluations until just before I had my evaluation.

11. Next, when I filled out the paper work, I believe it is called the cover sheet, I hand wrote, civil rights, and ADA complaint. I then quoted two cases, Meleikowsky in California, and Ewing that prevailed based on a civil rights complaint. Like me, the California case was sent for a psychiatric evaluation. I am not sure why my civil rights complaint was not affirmed, these folks are state actors as noted. Please consider this as a civil rights complain, in addition to an ADA complaint. I was able to download the original complaint against Meleikowsky. See Exhibit 16. These things read in a similar way.

I asked that the court conduct an exam. Sham exams have been done on me. While my conduct at times in the past was unprofessional, they did not add up to what was done to me. Judge Kehinde got everything right. All of her results were overturned. Judge Kehinde did not think I was mentally incompetent to practice medicine. ( *Page 57 of her report* ) Also, the nature of the behavior of the individual actors in this case will come to light if the court does an exam. The actions of the individual actors was deliberately illegal. When the actions of the individual actors is deliberate, they are also liable. The small amount of discovery will show this to be true.

I am not asking the MRAC to give my license back, only to retrain me in medicine. I do know that my performance in retraining, and what not, done by objective observers will go a long way to getting my license back.

12. I believe that the proper way to state a claim under the ADA requires that you note that you are a qualified individual with a disability. I am a qualified individual with a disability. I believe that takes care of the issue regarding stating a claim under the ADA. The precious few seconds where I was unprofessional do not amount to uncontrolled ADHD. When it became clear that I would no longer be able to pay my bills, I banged a wall. I did nothing worse than that. The MRAC, and IPE are using my disability as a reason NOT to retrain me. That is discrimination. It is true, I do not need an accommodation, I just need folks who do not discriminate. That includes setting up situations in which you could not possibly succeed. This is one of them.

In addition, without any evidence, the defendants wish to add a Narcissitic personality disorder to my case. That is discrimination. You cannot just make things up. There is only one of ten doctors who makes that assertion. That doctor did so without any evidence. The IPE consultant and the MRAC then add so called disordered thinking, a NEW and MOST serious diagnosis. All of that leverages the ADHD, and amounts to the least stable stack of facts I have ever seen.

If that is not discrimination, making up diagnoses, including lack of empathy and what not, in an attempt to skirt the law, then I do not understand the meaning of discrimination. The defendants continue to discriminate. The court, so far, thinks that I do have narcissism, lack of empathy, and disordered thinking. When the court ordered evaluation is done, we will see that is not the case. Indeed, the facts that are in dispute here, are THESE facts. The court so far has taken these facts to be true, when they are not. Also, the court has not acknowledged the many reports that say I have one thing, ADHD. That remains my only diagnosis.

13. I alluded to this earlier in my writing, but I did not want to invoke it. Congress passed a law in 1962, regarding pro se litigants. Case law in civil rights cases since supports that the court give the pro se litigant leave to amend the complaint so that he or she does state a claim. So please tell me how the claim is deficient so that I may amend it. ( If it is still deficient. )

14. There are a number of factual errors in the report. If the above are not accepted by the court, the factual errors could affect the disposition of the remaining two defendants. A summary of the actual facts follows.

15. Briefly, I would like to note for the record that I not only trained at Walter Reed, I taught in their system for more than 8 years. After Residency I worked in their ER for three years. A D.O. teaching in an M.D. system is still rare today. Then as chief at Fort Meade MD, I encountered a lethal doctor. Fort Meade is in the Walter Reed system. This started out as me just doing my job. After initial acceptance of my actions, I was warned too numerous times to count to stop documenting the harm to patients on my service. I could not do that. I became a whistleblower. I had an incident with the MPs a year after starting at Fort Meade. Eventually, the IG himself had me reinstated. I left the army honorably on Dec 30, 2003. You have those documents, they will be referenced, again in the motion. References for these facts are in Exhibit 12. The army NOW disavows that anything was ever done to my hospital privileges. That is in writing, in exhibit 12.

7

After you get labeled as a whistleblower it is extremely difficult to get employment. I actually told folks about the army. The folks with whom you can work do NOT have your interest at heart. In that period, I am sorry that I banged a wall and took a time card. Those things do not add up to a mentally incompetent person by any means.

I was denied *INITIAL* hospital privileges by Holy Cross Hospital in December 1996. A series of hearings went on in 1997. It was referred to the state board of Medicine in late 1997. A later review of the record by the judge noted Holy Cross supported *NO* reasons for the denial in the record. It was THAT denial that prompted an investigation. That investigation *STARTED* with a referral to Lee Haller M.D for a psychiatric evaluation. When I spoke with that psychiatrist, BEFORE the evaluation, he told me. "You do not understand, you are done." I then asked for a different evaluator. Exhibit 2, the decision of Judge Kehinde.

At Convenient Health Care, after a dispute over hours, ( not pay ) I banged a wall. A week later after consultation with my friend, a close friend of the co owner of the establishment, I returned to try to get my job back.

I obtained a summer job at 75th Medical. I went for a week of orientation around the Easter holiday. I only went after getting verbal approval for an amended contract. The original contract noted that it would pay me just ONCE 4 months after I started working. I could not live like that. When the owner refused to sign the amended contract, I asked to be paid. That did not happen, I took the time card. The owner grabbed me to get it back. The staff faked calling the police. I did not know what to do. I sat there, and called the police myself. The report notes that I called the police. 20 minutes later, 75th medical did call as well. As background, at 75th Medical, they have what is called the golden rule. If anyone asks, you must give them a 30 day refill of their medications. Under that so called rule, I was ordered to give out narcotics to a drug seeker. Your honor, I am sitting here shaking my head at the horrible working conditions under which I tried to continue my career after leaving the army. Also, the state was investigating me when this action occurred.

Without going over every detail, on page 57 of the decision of Judge Kehinde, she said that I am mentally competent to practice medicine. There are no criteria of Narcissitic Personality disorder in this case. None has ever been asserted. ALL of Judge Kehinde's findings, absolutely every one of those findings was overruled by the state of Maryland. All of this is in Exhibit 2 the decision of

Judge Kehinde. *The later courts were obliged to agree with the state because of NLRB V Universal Camera 1951. All of this was done to protect Holy Cross Hospital, it has nothing to do with protecting the patients.*

*16. Even if the decision is unclear to the court , or you think I did not pass the tests, then I should be given the tests again. If that is not an option then this would be the ONLY set of tests that cannot be repeated.*

17. Your honor, as a patient advocate, I put everything on the line.  I gave you the blow by blow description of those events in Exhibit 12. In the face of severe threats to my career, I kept telling the truth over a period of two and a half years at Fort Meade. *I call to you. Please put this in the record. No one else has done so.* Folks with that determination need to be taken seriously. I am truly sorry that I have to bring these horrific facts to you. Nevertheless, my assertions are *CORRECT.* The things that happened to me are NOT unique. That is part of the reason for the delay. Doctors USE Psychiatrists to take out other doctors whether they need it or not. I got angry for MUCH less than 10 minutes of my life. Even so, the worst I did was bang a wall, take a time card, and have an incident with the MPs.

18. I pray that you accept my motion to reconsider, along with my motion for oral argument of this case. This case is most closely a combination of Meleikowsky and Ewing. I expect to also prevail on the ADA claim. Sham peer review is at the heart of this issue. People are lying, it is part of a pattern of behavior, condoned by each of the defendants. Finally, there remain points of law, about which I am still not sure how to respond frankly. The deadline is today. I will continue to work on these points and be as ready as possible on the day of oral argument.

Respectfully Submitted

Joseph O. Boggi D.O.
Internal Medicine
1207 Ballard Street
Silver Spring, Maryland 20910

240-330-6837

9

October 19, 2009

United States District Court

Eastern District of Pennsylvania

Joseph O. Boggi D.O.                                    Case No. 08-4941

Internal Medicine                                       Civil Action

v

Medical Review and Accrediting Council, et al.

**Answer to the Defendant's answer dated January 4, 2010.**

1. As the court is aware, the final amended complaint is dated on or about September 2009. This document is not referenced at all in the brief of the attorneys for UMDNJ. In that document, I clearly stated a claim under civil rights law, quoting Ewing and noting that a contract was in effect with each of the parties. In total, this is a 50 page document, and the attorneys for the defense failed to note that document. This is a grievous error on their part. After this introduction, I will delineate the breaches of contract that occurred.

2. The court determined that I could not certain sue parties under civil rights law. However, the UMDNJ and the Still unnamed consultant do not claim that they are immune, as they are clearly state actors. The UNDNJ is a state school, just like the University of Michigan in the Ewing case. The STILL unnamed consultant, is a state actor, given that he or she is an employee of the University. I passed this test, and then was denied retraining by UNDNJ and the still unnamed preceptor/consultant because disorders not present were added. Ewing for a hearing, to determine his fate. In both cases a contract exists and here the UMDNJ and the preceptor are said to be primarily responsible for the declination letter. Exhihit ONE. The defendant claims that they did not have any contact with me. They did have a great deal of influence on the decision not to retrain, according to Exhibit One. They were supposed to have the FIRST contact with me, but continued to refuse to do so.

1

3. While this is a little out of order, I need to assert my seventh amendment right to a jury trial somewhere. I demand a jury trial. I want to examine parties involved. I demand that right.

4. Pursuant to rule 28a of the Federal Rules of Civil Procedure, I am requesting that support for my case be accompanied by an oral argument. I would like to point out that I am a seasoned teacher. Tell me the amount of time allowed for such argument, and all of the salient issues will be condensed into that time. I request this time in order to help make up for my lack of legal training. I will explain why I do not have the two disorders that are central to the refusal of the UMDNJ and the still unnamed consultant to refuse to retrain me as they should given my good performance in the tests. The court will be able to judge first hand, that I am clearly frankly, a smart kid from South Philly, the NE, and South Jersey until I went away to Medical School. I could NOT be more regular and still be a doctor.

"Oral argument should emphasize and clarify the written arguments in the briefs on the merits. Counsel should assume that all Justices have read the briefs before oral argument. Oral argument read from a prepared text is not favored."

5. While the court did not feel that I stated a claim under the ADA, I will attempt to do so again. I am a qualified individual. While I do not need a consideration to function, per se. The functioning of an adult with ADHD, at speeds similar to regular folks leads to the person's work place compatriots watching a hyperactive individual. That makes people uncomfortable.  To address that in the past, I have asked for a quiet area in which to do my write ups. That is a very simple thing to do. And it was always granted. When I have that, I am much less hyperactive, and even though my ADHD is never severe, the extent to which it is ever present, it a nuisance, to those who work around me. Frankly, no one likes to be around someone who is hyperactive. You get used to it, but it is always distracting to other people. Hence that small consideration. For years, untreated, I was permitted to teach, as a D.O. in an M.D. hospital. It was not just any hospital, it was Walter Reed Army Medical Center and the Uniformed Services University of Health Sciences. In total, that was 8.5 years. My ADHD is not severe. It was my pursuit of a lethal doctor that got me into trouble. From there, I told the truth about my life as a whistleblower, and blackballed myself. I had NO obligation to divulge what went on in the army. The army in it's

2

most recent letter about the matter disavows the notion that anything happened to my credentials while in the army. In truth, I was warned too numerous times to count to stop my activity, to the disgrace of the army. As one senior officer told me, " We do not make findings against the Army." Given my frankly, unexpected rise in Medicine, to one of a teacher of other doctor's and a doctor's doctor, I am most certainly a qualified individual with a disability. Frankly, my disability makes me a MUCH better doctor. I am MUCH more sensitive to the needs of others because of my ADHD. I have a number of strengths. My biggest strength is my ability to empathize and communicate with my patients. As you can see from my writing, it is regular speak. Patients like that.

6. Along the way, I am not proud of only 10 minutes. They are the MP incident, banging a wall, and taking a time card. That said, these shortcomings do not warrant the treatment I received.

7. In pursuit of a continued career, I applied for hospital privileges to Holy Cross. As affirmed by Judge Kehinde, the reasons for which Holy Cross declined my initial application for hospital privileges was not supported by anything they wrote. They made up the three reasons they wrote for denying my privileges. Again, this is affirmed by record, which is available, and memorialized by the decision of Judge Kehinde.

8. Just after that, I was sent to a Psychiatrist, one Lee Haller M.D. I chose to interview him on the phone before seeing him. Dr. Haller got upset, seemingly imperiously questioning my right to ask him questions. He then yelled out, over the phone, "You do not understand, you are done. The ONLY reason, I was sent to Dr. Haller was the Holy Cross action. The Holy Cross action did NOT allege any instability of any kind. ( I requested another evaluator, and that was permitted. I was VERY surprised when that occurred.  All of the details after this event are beyond the scope of this document.

9. I have ADHD and only ADHD. I have no criteria for any other disorder of a psychiatric or neurologic nature.  No one even claims that I have criteria for any other disorder, however, they make assertions about disorders. Moreover, those who have gone against the grain, declaring my fit, have suffered from retaliation.

3

10. I properly asserted many direct reasons that my property interest in my medical license was unlawfully attacked in that Sept 9 2009 revised pleading, if not before. I went over the elements of a contract and so on. There was a great deal of detail. I copied the detail here. As a member of MRAC et al, the UMDNJ and the STILL unnamed preceptor/ consultant are responsible for EACH count in this action, save the one aimed solely at the IPE/NBME for not allowing me to go to another affiliate. For instance, this entire case actually hangs on my interview with Dr. Manaker. A meeting with the preceptor would immediately reveal that I have normal thinking. The notion that I have disordered thinking is both a new charge, and absurd. It is the responsibility of UMDNJ to properly supervise it's employee's. In the end, the UMDNJ by the action of it's employee denied me retraining when they said that they could not devise a retraining plan. ( See Exhibit ONE )

The lawyers for the defense made a grievous error in not reviewing the entire file.

I am asserting that in all cases, these arbitrary, capricious and unreasonable actions, also meet the following standard. The actions of the defendants shock the conscience.

## As and for a First Cause of Action

1. That plaintiff resides in Montgomery County Maryland and contracted with MRAC et al for testing and retraining.
2. That upon information and belief, defendant MRAC et al are public institutions under the jurisdiction of the District Court for the Eastern District of Pennsylvania.
3. That, upon information and belief, defendants were at all times relevantly employed as noted for the institutions listed on the complaint.
4. That this is a civil action brought for retraining in medicine, and money damages to redress the injuries defendants have caused to plaintiff by the deprivation under color of state law of the right to due process secured to plaintiff by the fourteenth amendment of the Constitution of the United States.

4

A. There was a contract. Under that contract one can expect certain things. The biggest thing one should expect out of this contract is retraining if you pass the tests. Most assuredly, I am asserting that I should be retrained since I passed the testing. A review of the test results are clear. At first, Larry Downs when speaking with me, asked me how long I studied for the tests, I told him. He was amazed by my performance. He should not have been amazed given my superior performance on IQ testing , but well, my performance did NOT fit his plan. Also, I am confident that a comparison of my performance with others who took the testing and were retrained,  will show that I compare favorably to them. On that basis, I should be retrained as well. Although, come to think of it, given my treatment at the hands of MRAC, they may have made excuses in the past and successfully avoided retraining others, in the face of a good test. We may find that, also suffered mistreatment later on.

5. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000.  There was an intent to form a relationship, and of course, legal capacity.  The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

6. *All* of the defendants were consulted regarding this matter. The main points of contact were Andrea Ciccone and Larry Downs. However, when things clearly needed to be escalated, I consulted with Drs. Sokolowski, Hawkins and Melnick. Dr. Hawkins spoke for Dr. Melnick in declining my requests.  All were working in their official capacities as noted in the header of the complaint. One defendant was never contacted. The   unnamed consultant apparently played a large part in this decision. Per the protocol of the MRAC et al, I was supposed to meet that consultant on the first day of the evaluation, or thereabouts.

5

7. There are no criteria for disordered thinking met in this case. There are no criteria
met for Narcissistic Personality Disorder in this case. The level of performance on the testing says
that a MRAC et al should re train the plaintiff. A review of Exhibit 4 shows that I should be
retrained.

8. The plaintiff was further damaged by mental and emotional distress suffered by defendant's
illegal refusal to retrain and subsequent relegation to menial duties in violation of my
constitutional rights. It is most important that I be readmitted to the program and retrained.

9. The Plaintiff also prays for Compensatory and punitive damages. The details of the
information provided to me, leading up to the testing, the testing itself, and the long delay in
determining what to do with me are detailed in the following exhibits. Each of these events,
resulted in an extraordinary amount of stress.

10. The Defendants rely on medical information that is not determined according to the standard
of care. To wit, I am mentally competent. I have normal thinking. I have ADHD, and that is all.

## As and for a Second Cause of Action

11. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs
one through 10 as if the same were fully set forth herein at length.

12. The defendants mentioned were supposed to clearly delineate the topics tested.

13. The exhibits detail how several months of obfuscation occurred, instead of an upfront,
detailed list of topics to study, number of questions per hour, and other details as noted on the
Exhibit 12 .

14. While I did well in the testing, the uncertainty associated with the actual testing procedures
led to severe anxiety. The delay since then, has led to a lack of income down the line.

15. I have never dealt with a more difficult group of people. The details of this episode were sent
to the parties, in real time, and ignored.

B. As part of the contract, they are supposed to transparently reveal the details of the
testing. This lack of performance under this contract can effect the cost of the retraining. If the
terms of the testing are not disclosed, then the retraining gets more expensive, and perhaps
prohibitively expensive. There was a large effort on the part of MRAC et al at obfuscation in this

regard. (Exhibit 6 ) This is a violation of the contract and due process. The details of any major test you have ever taken your honor, were entirely clear to you, well before the testing date. That was not the case here. The breach of the contract was deliberate, extended and severe, in it's extent.

16. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000.        There was an intent to form a relationship, and of course, legal capacity.  That contract was breached by the details noted above. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

17. I ask for an order directing the MRAC/IPE/BNBME regarding this issue. They need to tell all prospective clients that these are step three level tests. They also need to tell all clients that Peds, OB, and surgery topics are on these tests.

18. Compensatory, and Punitive damages are sought along the lines of action number one.

### As and for a third Cause of Action

**19.** Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 18 as if the same were fully set forth herein at length.

20. Scott Mannaker, M.D. conducted what can only be described as an ambush interview. On hearing about these events, all parties signed off on this abuse.
21. When I contacted John Hansen Flashen about the conduct of his employee who was acting as a consultant to the board, Dr. Hansen - Flachen told me " We have that problem with Scott." The details of this conversation can be determined from a voice recording I made of my side of the conversation.

7

C. Under the contract I am to expect a professional examiner. That was not the case here. That particular examiner has a history of these type of unprofessional interviews. ANY serious vetting of this examiner would have revealed this fact. This is also shows negligence on the part of each one of the defendants. This type of examiner should be marked and shunned, not employed as a consultant, by the National Board.

22. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

23. Furthermore, that examiner was negligent in his duties. This defendant is a licensed medical practitioner. There are standards to meet, when one claims that a person has disordered thinking. Those standards were not considered here. This examiner violated his duty of care. This is a most serious violation of due process by all concerned. Youngberg V Romeo applies here and thank God that it does. No standards were used to assert this diagnosis.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized, also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

8

24. Without a doubt, if Dr. Manaker had not added disordered thinking to his report, the MRAC would not have had enough ammunition to decline my retraining. Folks who had ADHD and Personality disorders can certainly practice medicine, or even be President of the United States. If you have disordered thinking, there is not much at all that you can do.

25. By extension the other defendants are negligent. Furthermore, they should have given at least some thought to vetting their examiner. Going to his immediate supervisor would have revealed a big problem.

26. Furthermore this defendant acted intentionally to illicit emotional distress. The defendant acted ***intentionally.*** One does not grunt in polite society. He or she does not start prancing around the room yelling that I know no medicine. These acts were intentional, and part of a pattern of previous behavior on the part of this defendant.

2. Defendant's conduct was extreme and outrageous; As outrageous as it may seem, the decibel level of the defendant's grunts and what not, were MUCH louder than those of Dr. McDaniel, who grunted several times during the last evaluation she did of me.

3. Defendant's act is the cause of the distress; and

4. Plaintiff suffers severe emotional distress as a result of defendant's conduct. Rarely a day goes by where I do not grind my teeth over this incident. It remains the worst treatment, the very worst in any hour in my life.

27. **This means that the defendants did not do any due diligence. Dr. Mannaker should not be employed in interviews of this nature, and I have reason to believe that his treatment of me was deliberate and sanctioned from the outset.**

## As and for a Fourth Cause of Action

**28.** Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 27 as if the same were fully set forth herein at length.

29. Under that contract, I am to expect that folks perform in a manner that precludes the development of severe emotional distress. That did not happen here. The defendants acted in a

9

manner, by ignoring me, and not telling me the details of the testing, and treating me in a severely unprofessional manner that caused me to seek medical care between appointments and an increased dosage of my medication. That said, when such a level of emotional distress is intentionally inflicted, there is no medication that can return you to normal, or even near normal. Agitation, lack of concentration, anxiety, and depression ensue. Your honor, I have never been more upset, not once, over an extended period as I was during in the run up to this set of testing.

30. I am good at a few things, one of them is test taking. More than anything I was looking forward to acing this set of tests. As it is, I more than passed them. By no means should it have been as hard as it was to find out as much as I did about the testing.

A. Defendant acted *intentionally. I want to stress this point. For weeks, I could not get ahold of the MRAC.* The details of this are noted in the pre testing packet of emails. Later the IPE director did the same thing, in a different way. The IPE director acted intentionally to misrepresent the nature of the testing. I cannot begin to describe in words how torn I felt at this action. I was being thrust in different directions of study, frozen at times, with anxiety.

B. Defendant's conduct was extreme and outrageous; and
C. Defendant's act is the cause of the distress; and
D. Plaintiff suffers severe emotional distress as a result of defendant's conduct.
http://en.wikipedia.org/wiki/Intentional_infliction_of_emotional_distress

31. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

## As and for a Fifth Cause of Action

32. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 31 as if the same were fully set forth herein at length

33. The first step in this process was supposed to be a meeting with my preceptor. This person is referred to in this action as the consultant with the UMDNJ. I never met with this person. Given the lack of response from the defendants, I am beginning to wonder if this person ever existed.

36. Of all of the many difficulties I have had with MRAC et al, this problem, the cause of the fifth cause of action against the defendants is the most egregious and speaks to one thing. MRAC et al never intended to retrain me. They planned on taking my money, and causing me pain in the process.

37. Under the contract, I was supposed to meet with a preceptor as the very first step. The circumstances involved in this step approach those of fraud, and when all of the facts come out, may well amount to fraud on the part of MRAC et al. Most certainly, first of all, not meeting with the preceptor was a breech of contract. This meeting was supposed to set the parameters for further meetings and the subsequent retraining experience. As noted in Exhibit 6, I asked many times to see the preceptor. That request was never answered. It was always ignored totally.

38. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

39. The same prayers for damages are made for this **cause of action.**

## As and for a Sixth Cause of Action

40.. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 39 as if the same were fully set forth herein at length

11

41. In Medicine, all qualification tests can be retaken. The Legal Bar can be retaken, the SATs, MCATs, all steps of the National Boards, ( Step 1, 2, and 3 ) may be taken over again. All may be retaken up to THREE times.

42.  For doctors seeking reinstatement, just like me, there is a test called the SPEX. The SPEX can be taken three times. This test is probably very similar to the step 3 of the boards based on the practice questions. In my case, the IPE ( now NBME ) states that the testing given can only be administered one time, because they only have one set of Multiple Choice Questions. ( Exhibit 8) This violates an implied contract that these tests can be retaken, and may VERY likely amount to fraud, since the questions I answered were clearly at a step 3 level. The notion that the NBME, only has one set of Step 3 Questions is absurd. It is more absurd, because I clearly passed the multiple choice question tests. There can be no doubt that I passed these tests, there is objective evidence of that. ( Exhibit 4 )

43. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

As and for a Seventh Cause of Action

44. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 43 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

45. As part of the contract to evaluate me and then retrain me if I passed, the MRAC requested all of my Psychiatric reports. They received, ALL of the reports that were sent to the court, along with the decision of Judge Kehinde. It should have been clear to the MRAC, based on two facts, that I do not have Narcissitic Personality Disorder.  The MRAC incorrectly agreed after review of

12

the documents, that I have Narcissitic Personality Disorder. It is clear, after review of the documents that even Dr. McDaniel, the lone physician to proffer such as diagnosis, refused to say under examination that I had ANY of the features of that disorder. In learning what I do know about pleading a complaint, I found that I have to note the elements of the claim. Stating the elements of Narcissistic Personality disorder are central to making that diagnosis. Judge Kehinde NOTES that fact in her report. Indeed, that disorder was added out of expediency, and was not accepted by the Court. It should not have been accepted by MRAC. The other reason is that Dr. McDaniel is contradicted by about 10 other physicians on this matter.

**46. MRAC was negligent in accepting that diagnosis**. MRAC had a duty to properly assess my abilities. They breached that duty. The proximate cause of that breach was their reliance on the ONE report that gives me a diagnosis of Narcissitic Personality Disorder.

47. While the preponderance of the evidence, supports my assertion. That is not enough, in my opinion. Given the seriousness of my allegations, I have petitioned the court under the rules of evidence ( rule 706 ) to order a court Psychiatric evaluation of me prior to any determination in this case. Under that rule, both parties pay for the assessment. In my memorandum on this, I note the case Youngberg v Romeo which insists that standards be utilized at all times in these matters. MRAC was negligent in assuming that I had Narcissitic Personality Disorder for the reasons noted.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized, also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

48. My Psychiatric diagnosis is not a matter of judicial decision. It is a matter of medicine. As such, Harig 462 US at 313 - 314 applies. In that case, " special circumstances warrant an exception to the normal rules of preclusion."

49. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

As and for a Eighth Cause of Action

50. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 49 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

51. MRAC was also negligent in assuming that I had disordered thinking. That notion was never offered by anyone besides Dr. Manaker. MRAC et al had a duty to properly assess my abilities.  A thought disorder is a severe illness. Any reviewer seeing my performance on the rest of the testing would have wondered aloud if this assertion was correct. As you can see, I had months of communications with MRAC, and it never came up or was asserted. I have ADHD, and only ADHD. MRAC et al, did not properly vet the examiner, or sent him in there to purposely make a mockery of the proceeding. Either way, MRAC et al were negligent in putting the notion that I have disordered thinking on the chart.

"Once it is established that the defendant owed a duty to the plaintiff/claimant, the matter of whether or not that duty was breached must be settled. The test is both subjective and objective. The defendant who knowingly (subjective) exposes the plaintiff/claimant to a substantial risk of loss, breaches that duty. The defendant who fails to realize the substantial risk of loss to the plaintiff/claimant, which any reasonable person in the same situation would clearly have realized,

14

also breaches that duty."   http://en.wikipedia.org/wiki/Negligence

"For a defendant to be held liable, it must be shown that the particular acts or omissions were the cause of the loss or damage sustained. Although the notion sounds simple, the causation between one's breach of duty and the harm that results to another can at times be very complicated. The basic test is to ask whether the injury would have occurred but for, or without, my breach of duty."

Those folks with disordered thinking are not able to work. This is a severe diagnosis, and the data in (Exhibit 14) clearly show why I do not have disordered thinking. There is absolutely no doubt. I do not have this problem. This label subjects me to a substantial loss. The act of declaring this problem most certainly caused the loss.

This notion is so bizarre one is left thinking, can they be serious? This shocks the conscience.

52. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

As and for a Ninth Cause of Action

53. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 52 as if the same were fully set forth herein at length.  A note to the court, while there are no new allegations in this document, they are organized differently.

54. To review, All of the supervisors were made aware of this situation and refused to review, revise, or for the most part, consider my requests at remediation in this case. I should note, as I did previously, that Scott Manaker M.D.,  did acquiesce to another interview if the NBME OK'd it. He admitted on the phone to me that he had been hard on me. ( The words I used at the time )

15

Also, when he first heard of the interview, Dr. Sokolowski initially agreed to have it redone. However, he was overruled by someone, or changed his mind. I am not sure which. Richard Hawkins M.D., speaking for himself and Donald Melnick M.D. dismissed me entirely, and was unprofessional in doing so. EVEN before the final results were known to me, or him, Dr. Hawkins told me that I would NEVER set foot in the National Board building again. Dr. Hawkins and Dr. Melnick were extremely unprofessional in this regard. As noted, ALL other NBME tests are given three times. This is the only test that is supposedly given just once. I thought that I was asking for something that can happen. They said that it never happens. I had just never heard of that. I find that notion incomprehensible in it's own right.

55. In legal terms, there was an offer of testing to see where I was, retraining, acceptance of that agreement and an exchange of a sizable consideration. $5000. The breach of contract violated my civil rights, and hence the connection to U.S.C. 1983. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. All of the defendants acted under color of state law. This directly a affects my liberty and property interests to ply my trade, medicine. There was lack of due process in this matter that shocks the conscience.

    Request for Relief
1. Per the contract, retraining in Medicine
2. Compensatory and Punitive Damages

## As and for a Tenth Cause of Action

56. Plaintiff repeats, reiterates and realleges each and every allegation as contained in paragraphs one through 55 as if the same were fully set forth herein at length

57. EACH cause of action under the 14th Amendment is ALSO a cause of action under the ADA. The plaintiff wishes to make a claim for each of the first five causes of action under the ADA. The statute for this set of complaints is the same. It begins to accrue on the first day the cause of action accrues.

58. All of the actions of the defendants revolve around my psychiatric diagnosis. The details of the shenanigans in this area are shown above and in the many psychiatric reports. This is

16

discriminatory in nature and violates the American's with Disability's act of 1990 ( the ADA) 42 U.S.C.A. §§ 12101 et seq, as amended in 2008. This action was filed prior to the enforcement date of the updated ADA. As the discrimination is ongoing, the plaintiff makes a claim under the NEW act.

59. As the Court is aware, the rulings subsequent to the 1990 act, essentially set up a catch 22. Congress restored it's original intent in the updated law. It is incumbent upon the court to enforce the law as Congress intended all along, especially since the discrimination in this case is ongoing.

60. Plaintiff seeks an order granting injunctive relief against the wrongful acts of the defendants.

11. When the judge first read this he still said that I did not state an ADA claim. I submit that making up TWO diagnoses for which there are NO criteria is a direct attempt to get around accomodating me under the ADA. There was a contract. These folks are subject to the ADA law. I am a qualified individual. There was a contract for retesting and retraining. I was enrolled in the program and gave a sizable consideration.

12. In general, this process has been ***one big test violation***. I spent months trying to learn of the test parameters, and was never told them honestly. The VERY first step in evaluation was supposed to be a meeting with my still unnamed preceptor. I probably asked for this to happen 15 times. I was always simple not answered. ***When it became clear to me that this was a total sham of an evaluation, I demanded that it be repeated***. Two members of the team, the President of the MRAC, Joe Sokolowski, and the evaluator, Scott Manaker M.D. agreed to this. Dr. Sokolowski later reneged. I formally complained about the speed of the computer, and the treatment of Dr. Manaker. Dr. Manaker disgraced himself in that interview, and according to his boss, John Hansen Flachen " We have that problem with Scott." I have NEVER spent a more contentious hour. Never. I knew I had taken good care of the patients. 11 times, in his write up, Dr. Manaker said so. He also said that I had disordered thinking.

***The actual test results say I PASSED THE TESTS. These are from my Exhibit 4.***

***Here is what the examiner said about my performance.***

17

*a.* Page 1 B. **"His patient evaluations were sufficiently detailed to achieve diagnostic accuracy."**

b. Page 2 **Differential Diagnosis and Medical Knowledge.**
**" He provided reasonable differentials for all 8 cases, including many life threatening**
**possibilities and also uncommon conditions, and atypical presentations**."

c.Page 2 of the report paragraph 4. . **"During the TSR interview, Dr. Boggi**
**demonstrated fair medical knowledge that related to the cases that rate above**
**the applicable standards of care."**

d. Page 2 **Clinical Reasoning and Managing Therapy**
**Dr. Boggi demonstrated an appropriate and adequate ability to distinguish the**
**severity of illness,"**

" **He usually responded to each patient presentation with appropriate**
**supportive measures, paired with an early approach to logical and**
**reasonable diagnostic algorithms."**

*e.* **"His management strategies were successful and logical."** Fine. This is the best thing. It is **OBJECTIVE EDIVENCE** that my thinking was fine. I did not just cross over into another state of mind. Dr. Manaker states that my thinking was logical. An objective review of the test data, the scores on the CCS says the same thing. There was no disordered thinking.

*f.*End of page two of the report. " **In each case, he could discuss a reasonable**
**differential diagnosis, and revealed understanding of the limitations and utility of**
**the clinical data gathered during the**
**simulation.**

18

*g.*Continuing on the top of page three. "But **could identify the primary disease process, the life threatening alternative diagnosis, pursue an appropriate diagnostic intervention, and provide alternative therapy.**

*h.*"**Dr. Boggi identified each life threatening complication, or condition, and appropriately instituted life saving therapies in a rapid and expeditious manner.**" Fine. Just like in the movies on flight simulators, they throw you curves, that may lead to a crash of the plane. Essentially, I kept the plane flying despite the curves thrown at you by the simulation.

i. Page 3 of the report, Patient Risk "**None of the patients were exposed to increased risk.**" great. "**In no cases did he order dangerous, improper, or even inappropriate testing or therapy**."

*j.*Page 4 of the report TSR Summary "**Dr. Boggi demonstrated basic medical knowledge that was adequate**"

*k.* **In closing, this report proves that I took good care of the patients.** I could discuss the specifics of the cases upon request and after review of the details.

13.  Expansion of the thoughts in the September 9 revision of the initial pleading.

a. First of all, there is an incongruity between my performance and the notion that I cannot be retrained. At the very least, the MRAC et al, which includes the UMDNJ, and the STILL unnamed consultant, should have asked for a re test. One cannot have disordered thinking and do well on the testing. In saying this, the group violated their contract with me. In the case of Ewing, he miserably failed his Step one test. I did not. In the end, Ewing was permitted to take Step one over again. ALL tests of this sort can be repeated. I noted TWO major test violations formally. This should at the very least trigger a re test automatically. Here however, there is enough evidence to just retrain me.

19

b. Given that Dr. Manaker ( see motion for reconsideration ) noted that I passed the test, a total of 11 times in his evaluation, I should just be retrained. The group, that includes UMDNJ, and the STILL unnamed consultant should have noted that and after consultation offered me retraining in medicine. This is a violation of the contract.

c. Any board certified physician is qualified to evaluate the presence of Narcissitic Personality disorder and disordered thinking. In this case, there is NO mention of any criteria for these serious disorders, yet one follows me and another poorly worded assertion is now contrived as a reason to deny me retraining. The MRAC group, that includes UMDNJ and the STILL unnamed consultant failed their duty, to me when they agreed to the contract in this regard.

d. When one reads the declination letter of Oct 16th, 2006, one notes that there was NO testing deficiency that led to this letter. It was only ADHD, Narcisstic Personality Disorder and disordered thinking. This was the opportunity for the MRAC group, including the UMDNJ, and the STILL unnamed consultant to remark in writing about the actual results of the testing. For them to then assert that while I DID practice medicine WELL on the tests, but that I still could not be re trained is absurd. It also is a violation of the contract on the part of all of the parties involved. (Certain groups are immune from suit under the law. While that is unfortunate, an impartial evaluation would have uncovered that these people were deliberately violating the law. This deliberate violation of the law strips one of their immunity. In their recent pleading, the UMDNJ, and the STILL unnamed consultant do not plead that they are immune from suit.) The remaining defendants ARE deliberately violating the law by asserting that I have two disorders for which there are no criteria. A substitution of the legal term evidence is appropriate in this case.

e. As a qualified individual with a disability, the notion that the group is making up TWO diagnoses for which there are no criteria and adding them to my ADHD, which is only a nuisance, in that it distracts people, is a direct violation of my rights under the ADA. There was a contract. These people had a duty to properly evaluate me, and I NEVER even MET the STILL unnamed consultant who ultimately decided my fate. It was most certainly the duty of that consultant, as a member of the group, and an employee of the UMDNJ a state actor, to get up off his or her still unidentified chair and make an appointment to evaluate me. That was the very first step that I was

20

promised. It is also the only way to begin an evaluation.

f. In 1962, Congress passed a law. In the cases such as mine, if the judge is considering dismissal based on failure to state a claim, the judge must inform me of such and the details. He also should appoint someone to advise me. If the judge is still not satisfied with the wording of my claim, I would demand that he notify me and properly have me advised.

g. In their answer, the UMDNJ is claiming that they are somehow separate from the MRAC. All of these outfits are intertwined, one not capable of functioning without the other. UMDNJ by the actions of the preceptor/consultant made the critical decisions in this case.

h. Since the issue of state actor was addressed in the UMDNJ response, I am moved to note the intertwined nature of the relationships in this case.

The Federations of State Medical Boards AND the National Board of Medical Examiners collaborated to form the organizations as noted below. The bottom line is this, the defendants are playing fast and loose with the facts. The Nexus, around the MRAC is THREE FOLD. The IPE, which is a part of the FSMB, UMDNJ, and the Medical Board of NJ, for whom MRAC does ALL evaluations and retraining. I checked with Larry Downs, Dr. Sokolowski, the assistant for Larry Downs, and the President of the NJ Medical Society on that issue. Why the MRAC would LEAVE THAT CRITICAL piece of information out of their statement is interesting. Also, I added the NBME to the list of defendants. I did not say that they owned the IPE. It was always my information that it is a joint effort. One of the first people I called in addition to the NBME people was Frances Cain at the PLAS. Frankly, she was the ONLY one who reacted in the correct manner. Hence I did not sue her. If I need to add the PLAS, or the FSMB, then I will certainly do that. Although I sued a lot of people, I purposely limited it to those who are clearly guilty.

Please see exhibit 15. It shows the association with the FSMB. It ALSO shows that the IPE still exists.

21

Federation of State Medical Boards Dallas Tx---------National Board Medical Ex  PhilaPa.

    1. PLAS - France Cain Director Dallas Texas

        a. SPEX

        b. IPE----------------------------------Tested at NBME offices. Employees of IPE

                                  are  also NBME Employees. ( Andrea Ciccone

                                  Director  )

           1.PACE

           2. CPEP

           3. THREE others sites in the US at the moment

           4.  MRAC -----------UMDNJ - retrains the doctors

                   -----------Medical Board of NJ contracts with MRAC to do all

                    testing and retraining.

                                    Respectfully Submitted

                                    Joseph O. Boggi D.O.

                                    January 14, 2010

# PROOF OF SERVICE

I certify that on (date) I mailed a copy of this Informal brief

http://www.ca3.uscourts.gov/internet/Forms%20and%20Information%20Sheets/briefing/informalbrief.pdf

and all attachments via email to the following parties **at the addresses listed below**:

JOSEPH GOLDBERG (Terminated) jgoldberg@wglaw.com, sdalzell@wglaw.com

MICHAEL E. SACKS (Terminated) sacksme@hamburg-golden.com, vortersnd@hamburg-golden.com

NEIL J. HAMBURG (Terminated) hamburgnj@hamburg-golden.com, vortersnd@hamburg-golden.com

MAUREEN HOGAN KRUEGER (Terminated) kruegermh@hamburg-golden.com, greencm@hamburg-golden.com

KERRI E. CHEWNING kchewning@archerlaw.com, gmascio@archerlaw.com

JOSEPH O. BOGGI joboggi@pol.net


Joseph O. Boggi D.O.
Signature

Dated: June 3rd 2010

*Rev. 09/05*