**No. 10-1619**

In the
United States Court of Appeals
for the Third Circuit

Joseph O. Boggi, D.O., Plaintiff-Appellant

v.

Medical Review and Accrediting Council, Larry Downs, Esq., Joe Sokolowski,
M.D., Institute for Physical Education, Andrea Ciccone, Scott Manneker, M.D.,
National Board of Medical Examiners, Richard Hawkins, M.D., Donald Melnick,
M.D., UMDNJ, and Unnamed Consultant
Defendants-Appellees

On Appeal from the United States District Court
for the Eastern  District of Pennsylvania
of the District Court's Order Granting Motions to Dismiss
of Defendants-Appellees

**Brief of Appellees, Medical Review and Accrediting Council, Larry Downs,
and Joseph Sokolowski**

Joseph Goldberg, Esquire
Michael B. Pullano, Esquire
Weber Gallagher Simpson
Stapleton Fires & Newby, LLP
2000 Market Street, 13th Floor
Philadelphia, PA 19103
(215) 972-7900

Attorneys for Appellees,
Medical Review and
Accrediting Council,
Larry Downs, and
Joseph Sokolowski

Dated:      July 9, 2010

# **TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………...i

TABLE OF AUTHORITIES…………………………………….....iii

STATEMENT OF JURISDICTION……………………………………1

STATEMENT OF STANDARD OF REVIEW……………………………1

STATEMENT OF THE CASE…………………………………………3

STATEMENT OF THE FACTS………………………………………...5

SUMMARY OF THE ARGUMENT…………………………………6

ARGUMENT………………………………………………...10

    I.    The Trial Court Correctly Decided Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski's Motions to Dismiss Dr. Boggi's Complaint Pursuant to Rule 12(b)(6)………10

        A.    The Trial Court Did Not Err In Dismissing Dr. Boggi's Claims Under 42 U.S.C. § 1983………………………………………10

            1.    MRAC, Larry Downs, and Joseph Sokolowski were not Acting under the Color of State Law…………………..10

            2.    Dr. Boggi's Rights, Privileges or Immunities under the United States Constitution or Federal Law were Not Violated…………………………………………..15

        B.    Dr. Boggi Failed to State a Claim under Title II of the Americans with Disabilities Act……………………...……20

            1.    MRAC, Larry Downs, and Joseph Sokolowski are not State Entities as Defined by the ADA…………………20

            2.    Dr. Boggi is not Disabled Consistent with the Definition of the ADA…………………………………………..22

C.    Dr. Boggi did not File his Complaint Within the Applicable Statute of Limitations..................................................25

II.   The Cases Cited By Dr. Boggi Allegedly Supporting His Position Do Not Stand For the Proposition Cited...........................................28

A.    <u>Mileikowsky v. Medical Board of California</u> does not support the position asserted by Dr. Boggi...............................29

B.    Dr. Boggi's Position is not Supported by <u>Ewing v. Board of Regents</u>...........................................................31

C.    The Court's Decision in <u>Cohane v. NCAA</u> does not Support Dr. Boggi's Position..................................................32

D.    The Supreme Court's Opinion in <u>Youngberg v. Romeo</u>    does not Support Dr. Boggi's Position..............................33

E.    Dr. Boggi's Argument Regarding <u>NLRB v. Universal Camera</u> has no Bearing on the Instant Action    ...........................35

CONCLUSION.........................................................................36

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192 (1997)..................................................................26

Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir. 1990)....................................10

Blum v. Yaretsky, 457 U.S. 991 (1982)...................................................11

Board of Regents v. Roth, 408 U.S. 564 (1972)........................................ 18

Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961)...........................11

Chardon v. Fernandez, 454 U.S. 6 (1981)...............................................27

Cohane v. NCAA, 215 Fed. Appx. 13 (2d Cir. 2007)...........................32, 33

Daniels v. Williams, 474 U.S. 327 (1986).................................................10

Davis v. Grusemeyer, 996 F.2d 617 (3d Cir. 1993)....................................25

Delaware State College v. Ricks, 449 U.S. 250 (1980)................................27

Disabled In Action v. SEPTA, 539 F.3d 199 (3d Cir. 2008)....................26, 27

Emerson v. Thiel College, 296 F.3d 184 (3d Cir. 2002).............................21

Ewing v. Board of Regents, 742 F.2d 913 (6th Cir. 1984)...........................31

Gomez v. Toledo, 446 U.S. 635 (1980)...................................................11

Gonzalez v. National Board of Medical Examiners, 60 F. Supp. 2d 703 (E.D. Mich. 1999).................................................................................23, 24

Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995)...................11

Harris v. City of Philadelphia, 47 F.3d 1333 (3d Cir. 1995).........................16

Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981)...............................18

Kichline v. Consolidated Rail Corp., 800 F.2d 356 (3d Cir. 1987)..................27

Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).......................….....2

Krynicky v. University of Pittsburgh, 742 F.2d 94 (3d Cir. 1984)................…..12

Love v. Law Sch. Admission Council, Inc. 513 F.Supp.2d 206
(E.D.Pa. 2007)....................................................................….....23, 24

Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995)..................11, 13, 14

Matthews v. Eldridge, 424 U.S. 319 (1976)..........................................15, 16

McKeesport Hospital v. Accreditation Council for Graduate Medical Ed., 24 F.3d
519 (3d Cir. 1994).................................................…..........................11

Miller v. Fortis Benefits Ins. Co., 475 F.3d 516 (3d Cir. 2007).......................2

Regents of University of Michigan v. Ewing, 474 U.S. 214 (1985)...........…....31

Richardson v. McKnight, 521 U.S. 399 (1997)......................................…....11

Sullivan v. Pittsburgh, 811 F.2d 171 (3d Cir. 1987).......................…....25, 26

Universal Camera v. NLRB, 340 U.S. 474 (1951)............................9, 35, 36

TRW Inc. v. Andrews, 534 U.S. 19 (2001)..............................….................26

West v. Atkins, 487 U.S. 42 (1988)...........................................…..........10

Wilson v. Garcia, 471 U.S. 261 (1985)..............................................25

Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006)..........................2

Youngberg v. Romeo, 457 U.S. 307 (1982)...............................9, 33, 34, 35

Zinermon v. Burch, 494 U.S. 113 (1990)............................…................19

## STATE CASES

Mileikowsky v. Medical Board of California, Superior Court of California, Sacramento County, Case No. 04CS00969……………………………………...29, 30

## FEDERAL STATUTES

28 U.S.C. § 1291……………………………………………………………...1, 2

28 U.S.C. § 1331…………………………………………………………...1

42 U.S.C. § 1983…………………………………1, 3, 6, 7, 8, 10, 11, 14, 15, 26

42 U.S.C. §12101, et seq……………………………………………...22, 26

42 U.S.C. §12102…………………………………………………...…….22

42 U.S.C. §12131, et seq…………………………...…………1, 3, 6, 7, 8, 20, 21, 22, 25

F.R.C.P. 12(B)(6)………………………………………...…….1, 3, 4, 10

F.R.C.P. 56………………………………………………………………..2

F.R.A.P. 4(a)(1)(A)…………………………………………………………1

## STATE STATUTES

42 Pa.C.S. §5524……………………………………………………….26

## SECONDARY SOURCES

6 Moore's Federal Practice P 56.02[3] (1991)…………………………………2

## STATEMENT OF JURISDICTION

The District Court had original jurisdiction in this matter pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims arose under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. §12131, et seq.) The Third Circuit Court of Appeals has jurisdiction of this matter pursuant to 28 U.S.C. § 1291. The District Court's Final Order was issued on January 26, 2010. Appellant filed his Notice of Appeal on February 25, 2010. Therefore, the Appellant filed his Notice of Appeal within thirty (30) days as required by F.R.A.P. 4(a)(1)(A). The Order entered by the District Court on January 26, 2010 dismissed all remaining causes of action against the remaining Defendants and therefore constituted a final order.

## STATEMENT OF STANDARD OF REVIEW

Appellant, Dr. Boggi, has not directly stated what issues he is appealing in this matter. However, based on an interpretation of Dr. Boggi's Brief, it would appear that he is challenging the Court's dismissal both as to his 42 U.S.C. § 1983 claims as well as his claims brought under Title II of the Americans with Disabilities Act (42 U.S.C. §12131, et seq.)

The District Court had original jurisdiction in this matter pursuant to 28 U.S.C. § 1331 as the Plaintiff's claims arose under 42 U.S.C. § 1983 and 42 U.S.C. §12131, et seq. The Third Circuit Court of Appeals has jurisdiction of this matter

pursuant to 28 U.S.C. § 1291.  The Third Circuit is authorized to employ plenary review when considering an appeal from a Rule 12(b)(6) dismissal.  Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 519 (3d Cir. 2007).  The Court's review is limited to "the contents of the complaint and any attached exhibits."  Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir. 2006).  The Court should accept all well pled allegations in the Complaint and draw all reasonable inferences in favor of the non-moving party.  Miller, 475 F.3d at 519.

In the instant matter, additional documents were attached to Appellees' Motions to Dismiss therefore transforming them into Motions for Summary Judgment.  If matters outside of the pleadings are attached to Motions brought pursuant to Rule 12(b)(6), and the Court does not exclude them, the Motion must be considered as a Motion for Summary Judgment and under F.R.C.P. 56 and be determined in accordance with summary judgment principles.  Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); see also 6 Moore's Federal Practice P 56.02[3], at 56-27 (1991).  The Court of Appeals is confined to a consideration of only the Complaint and documents attached thereto where the District Court has specifically confined its ruling to the Complaint.  Kulwicki, 969 F.2d at 1462.  In the instant matter, the District Court did not specifically state that it was confining its decision only to the Complaint and therefore the Court of Appeals is free to consider documents outside of the Complaint.

## STATEMENT OF THE CASE

On or about October 16, 2008, Plaintiff, Joseph O. Boggi, D.O., filed a Motion to Proceed In Forma Pauperis with the Court. This served as his first filing with the Court in this matter. On October 22, 2008, the Court granted the Plaintiff's Motion to Proceed in Forma Pauperis. As a result, Plaintiff's Complaint was filed and Summons were issued to the various Defendants.

In his Complaint, Plaintiff asserted claims under 42 U.S.C. §1983, and Title II of the Americans with Disabilities Act (ADA) (42 U.S.C. §12131, et seq.) against Defendants, MRAC, the Institute for Physical Education, Larry, Downs, Joseph Sokolowski, Andrea Ciccone, Scott Manneker, Richard Hawkins, Donald Melnick, the University of Medicine & Dentistry New Jersey (UMDNJ), and an unnamed consultant at the UMDNJ. In the Complaint, Plaintiff alleged that he contacted Defendant MRAC in November, 2005 for testing and re-training so that he would be allowed to re-acquire his suspended medical license in the State of Maryland.

On or about July 1, 2009, Appellees Medical Review and Accrediting Council (MRAC) and Larry Downs filed their Motion to Dismiss Dr. Boggi's Complaint pursuant to F.R.C.P. 12(b)(6). On or about August 7, 2009, Appellee Joseph Sokolowski filed his Motion to Dismiss Dr. Boggi's Complaint pursuant to F.R.C.P. 12(b)(6).

On or about September 15, 2009, the Honorable Berle M. Schiller issued an Order granting the Motions to Dismiss filed by MRAC, Mr. Downs, and Dr. Sokolowski. In the Memorandum filed with the Order, Judge Schiller stated that:

> Dr. Boggi has not alleged fact sufficient to support the legal conclusion that NMBE and MRAC are state actors and his § 1983 claims against all Defendants must be dismissed. His ADA claim also fails to state a claim.

See S.A. at 65.

Judge Schiller also ordered that Dr. Boggi's Motion to Amend the Complaint was granted but only to the extent that the Court might consider all of the factual and legal averments made by Dr. Boggi in both Complaints before reaching a decision on the Appellees' Motions to Dismiss. S.A. at 45.

At the time the Court entered its September 15, 2009 Order, Appellee, University of Medicine and Dentistry of New Jersey (UMDNJ) had not yet been served a copy of the Complaint. On October 6, 2009, UMDNJ was properly served with a copy of Dr. Boggi's Complaint. Subsequently, on January 4, 2010, UMDNJ filed a Motion to Dismiss Dr. Boggi's Complaint pursuant to F.R.C.P. 12(b)(6). On January 26, 2010, Judge Schiller entered an Order granting UMDNJ's Motion to dismiss. At that point, all of the Defendants had been dismissed from this matter. On February 25, 2010, Dr. Boggi filed his Notice of Appeal with the Court.

4

## **STATEMENT OF THE FACTS**

On September 22, 1999, the Plaintiff's medical license was suspended pursuant to a Final Opinion issued by the Maryland Board of Physicians. In its order, the Maryland Board of Physicians set certain conditions that the Plaintiff was required to comply with before his license could be re-instated. One of the conditions was that Dr. Boggi "provides evidence satisfactory to the Board that he has become competent to practice medicine safely." S.A. at 122. The Plaintiff could not be reinstated until all of the conditions imposed by the Maryland Board of Physicians were met. S.A. at 122.

In November, 2005, the Plaintiff contacted Defendant, MRAC to inquire about receiving a medical competency evaluation and potential retraining necessary to satisfy the condition imposed by the Maryland Board of Physicians. S.A. at 23. At that time, MRAC agreed to perform an assessment with regard to Dr. Boggi's competency to practice medicine. S.A. at 23. In May, 2005, Plaintiff underwent two days of testing. S.A. at 23. The first day of testing consisted of multiple choice testing administered by MRAC. S.A. at 23. The second day of testing involved completing computer simulations and an interview administered by the Institute of Physical Evaluation. S.A. at 24 and 26.

During the course of the testing, the Plaintiff felt that certain aspects of the testing materials and equipment prevented him from performing as well as he

believed he was capable. Specifically, he complained that the computer he used for the computer simulation was not operating quickly enough and that he had not been properly advised as to the number of questions and the subject matter of the questions on the multiple choice portion of the testing. S.A. at 23-24. Further, the Plaintiff objected to the manner in which he perceived the interviewer was treating him during the interview portion of the testing. S.A. at 24-25. The Plaintiff voiced his objections and concerns to these conditions during and after the testing. S.A. at 23, 24, 26, and 27.

A few days after the completion of the testing, and prior to receiving his scores and evaluation, the Plaintiff began to call and email MRAC requesting a re-test. S.A. at 27-28. MRAC refused to re-test the Plaintiff. S.A. at 28. In July, 2006, the Plaintiff was supplied with the results of the testing. S.A. at 174. On October 16, 2006, the Plaintiff was advised that based on the deficits found in the Plaintiff's medical competency MRAC would be unable to remediate his case. S.A. at 22; see also S.A. at 183.

## **SUMMARY OF THE ARGUMENT**

The District Court correctly determined that Dr. Boggi failed to state a claim upon which relief could be granted. Dr. Boggi presented claims under both 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (42 U.S.C.

§12131, et seq.) Dr. Boggi failed to plead facts sufficient to support either claim and therefore his claims were properly dismissed pursuant to F.R.C.P. 12(b)(6).

To present a valid claim under 42 U.S.C. § 1983, a Plaintiff is required to show that the Defendant was acting under the color of state law and that the conduct of the Defendant deprived the Plaintiff of a right, privilege or immunity secured by the United States Constitution or federal law. Dr. Boggi failed to comply with either of these requirements in his pleading. Dr. Boggi did not plead facts sufficient to show that Appellees, MRAC, Larry Downs, and/or Joseph Sokolowski were state actors and therefore subject to liability pursuant to § 1983.

Additionally, Dr. Boggi failed to plead facts sufficient to show that his rights, privileges or immunities guaranteed by the Constitution or Federal Law were infringed. Dr. Boggi claims that both his procedural and substantive due process rights were violated. Dr. Boggi argues that he was deprived of his property right to his medical license. However, he fails to establish that he had a property right to his medical license.

In addition, the organization that suspended his medical license, the Maryland Board of Physicians, is not a party to this matter nor has Dr. Boggi pled any facts to suggest that the Maryland Board of Physicians is associated with any party to this matter. Finally, a deprivation of procedural due process requires

government action and Dr. Boggi has failed to plead facts sufficient to show that MRAC, Larry Downs, or Joseph Sokolowski were state actors.

Dr. Boggi also asserted claims against MRAC, Larry Downs, and Joseph Sokolowski under Title II of the Americans with Disabilities Act (ADA) (42 U.S.C. §12131, et seq.) This claim failed on the grounds that Dr. Boggi did not allege facts sufficient to support a finding that MRAC is an entity subject to Title II of the ADA. Further, as individuals, Mr. Downs and Dr. Sokolowski could not be subject to liability under the ADA.

Dr. Boggi also failed to plead facts necessary to show that he is a qualified individual with a disability. Such a showing was necessary to support a claim made under the ADA and therefore Dr. Boggi's claim must fail. He is not a qualified individual with a disability as he has failed to allege that his disability effects one of his major life functions.

Dr. Boggi also failed to file his action within the applicable Statute of Limitations. Both § 1983 actions and actions brought under the ADA are subject to a two-year statute of limitations. Dr. Boggi's first filing in this action occurred more than two years after the date by which he possessed sufficient facts to bring a cause of action. Because he failed to comply with the appropriate statutes of limitations it was appropriate for the District Court to dismiss his Complaint.

Finally, in his brief, Dr. Boggi cited to a number of cases in support of his position. However, a review of those cases shows that they do not stand for the proposition asserted by Dr. Boggi. Further, three of the five cases do not constitute precedential opinion binding on the Third Circuit Court of Appeals. The remaining two cases are United States Supreme Court opinions but neither is applicable to the present situation. The first, <u>Youngberg v. Romeo</u>, discusses the type of training a mentally challenged individual, who has been involuntarily committed, is entitled to. The second, <u>Universal Camera v. NLRB</u>, involves issues relating to the Administrative Procedure Act, the Taft-Hartley Act, and the National Labor Relations Board. Obviously, the issues addressed in those two matters are totally unrelated to the instant action.

# ARGUMENT

## I.    The Trial Court Correctly Decided Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski's Motions to Dismiss Dr. Boggi's Complaint Pursuant to Rule 12(b)(6)

### A.    The Trial Court Did Not Err In Dismissing Dr. Boggi's Claims Under 42 U.S.C. § 1983

In this action, Dr. Boggi asserted claims under 42 U.S.C. § 1983.  In order to demonstrate a claim under 42 U.S.C. §1983, a Plaintiff must be able to prove that (1) the challenged conduct was committed by a person acting under the color of state law; and (2) that the conduct deprived the Plaintiff of a right, privilege, or immunity secured by the United States Constitution or federal law.  West v. Atkins, 487 U.S. 42, 48 (1988).  To establish proximate causation for 42 U.S.C. §1983 claim, a Plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the Defendants conduct and a deprivation of rights.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Negligence is not sufficient to bring a claim pursuant to §1983.  Daniels v. Williams, 474 U.S. 327, 330 (1986).

### 1.    MRAC, Larry Downs, and Joseph Sokolowski were not Acting under the Color of State Law

Here, Dr. Boggi will be unable to show that the actions of Appellees, MRAC, Larry Downs, and/or Joseph Sokolowski were performed by a person acting under the color of state law.  The basic purpose of §1983 is to deter state actors from using their authority to deprive individuals of their federally

10

guaranteed rights and to provide related relief. Richardson v. McKnight, 521 U.S. 399, 402 (1997). To assert a prima facie case under §1983, the Plaintiff must demonstrate a violation of his federal rights under the color of state law. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995), citing Gomez v. Toledo, 446 U.S. 635, 640 (1980). To satisfy the "under the color of law" requirement, the Plaintiff must make a showing that the Defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West, 487 U.S. at 49.

The "under the color of law" inquiry is fact specific. Burton v. Wilmington Parking Auth., 365 U.S. 715, 725-26 (1961). In Mark v. Borough of Hatboro, the Third Circuit Court of Appeals identified three tests used by the United States Supreme Court to identify whether there has been state action. Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995). The first test examines whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state. Id., citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). The second test considers whether the private party has acted with the help or in concert with state officials. Id., citing McKeesport Hospital v. Accreditation Council for Graduate Medical Ed., 24 F.3d 519, 524 (3d Cir. 1994). The third test involves situations in which the state has so far insinuated itself into a position of interdependence with the private party that it must be recognized as a joint

11

participant in the challenged activity. Id., *citing* <u>Krynicky v. University of Pittsburgh</u>, 742 F.2d 94, 98 (3d Cir. 1984).

Dr. Boggi fails to allege facts sufficient to show that MRAC, Larry Downs, or Joseph Sokolowski are state actors. Although Dr. Boggi alleges that these Appellees are state actors he does not come forward with any evidence to support that assertion other than a brief mention in a letter sent to him by MRAC. This fact, without any other supporting evidence, is insufficient to make out a prima facie case that MRAC, Larry Downs, and Joseph Sokolowski are state actors.

Dr. Boggi also does not allege sufficient facts to show that the Moving Defendants are state actors under any of the three tests identified in <u>Mark</u>. Under the first test, the Plaintiff must be able to show that the Appellees exercised powers that are traditionally the exclusive prerogative of the state. Here, Dr. Boggi sought out and engaged MRAC to evaluate his competency to practice medicine and/or to re-train him so that he would be able to practice medicine. As stated in Dr. Boggi's Complaint "no state in the union retrains doctors on their own." S.A. at 14. This acknowledges that the retraining of a doctor should not be considered a traditional function of the state. Further, Dr. Boggi failed to allege facts to suggest that the re-training of a doctor is a traditional function of the state. Therefore, Dr. Boggi has failed to meet the first test.

Under the second test discussed in <u>Mark</u>, Dr. Boggi must show that MRAC acted with the help or in concert with state officials. Again, Dr. Boggi failed to make this showing in his Complaint. Dr. Boggi alleges that MRAC does evaluations and re-training through the UMDNJ. S.A. at 14. He then concludes that MRAC's activities are state action because of this alleged connection with UMDNJ. S.A. at 14 and 21. As evidence of this connection he points to a letter dated October 16, 2006 that he has attached to the Complaint. S.A. at 183.

However, an examination of this letter does not suggest that MRAC is working for or in conjunction with UMDNJ. Rather, the letter simply states that MRAC has consulted with UMDNJ to discuss a possible remediation program for Dr. Boggi. S.A. at 183. Further, the letter clearly states that if Dr. Boggi would like for his contacts at UMDNJ to assist him, he should inform MRAC in writing so that they may provide his documents to "a third party." S.A. at 183. Since or because MRAC considers UMDNJ to be a "third party" it is clear MRAC is not working for or with UMDNJ. Rather MRAC only consulted with them to best determine if, and how, MRAC could assist Dr. Boggi.

Pursuant to the third test discussed in <u>Mark</u>, Dr. Boggi must be able to show that the State of New Jersey has so far insinuated itself into a position of interdependence with MRAC that it must be recognized as a joint participant in the challenged activity. However, Dr. Boggi has not alleged that such a relationship

13

existed. Typically, where the Courts have found this sort of relationship to exist, there has existed some sort of financial relationship between the private entity and the state. See Mark, 51 F.3d at 1143. Here, Dr. Boggi did not plead facts sufficient to suggest that any sort of financial relationship existed between MRAC and the state. Instead, he attempted to assert that because a letter written by MRAC refers to a consultation with the UMDNJ, therefore MRAC is a state actor.

Further, Dr. Boggi asserts that the letter is evidence that the state exerts "a large amount of control over the MRAC." S.A. at 15. However, a plain reading of the letter shows that the State of New Jersey is not mentioned at all in the letter. S.A. at 183. Further, there is no mention in the letter of any control the state exerts over MRAC. S.A. at 183. Despite Dr. Boggi's assertion that the State of New Jersey exerts significant control over MRAC, the facts as pled, coupled with the evidence provided by Dr. Boggi, simply does not support his position. This is clearly not the sort of relationship contemplated by the Courts in establishing the third Mark test to determine if a private entity is a state actor.

Because Dr. Boggi failed to show that MRAC was a state actor pursuant to any of the tests discussed in Mark, MRAC is not exposed to liability under 42 U.S.C. §1983. Dr. Boggi also failed to allege that Larry Downs or Joseph Sokolowski are state actors. Although it is difficult to discern from the Complaint, it appears that Dr. Boggi is alleging that Larry Downs and Joseph

Sokolowski were state actors by virtue of their employment with MRAC. However, because MRAC is not a state actor it necessarily follows that Larry Downs and Joseph Sokolowski are also not state actors. Because none of these parties are state actors within the meaning of 42 U.S.C. §1983 the District Court was correct to dismiss Dr. Boggi's Complaint and this Court should affirm that decision.

> **2.    Dr. Boggi's Rights, Privileges or Immunities under the United States Constitution or Federal Law were Not Violated**

Even if the Court were to conclude that Appellees are state actors under 42 U.S.C. §1983, Dr. Boggi has not plead facts sufficient to show that his rights, privileges or immunities under the United States Constitution or Federal Law have been affected. In the Complaint, Dr. Boggi alleged violations of both his procedural and substantive due process rights.

Dr. Boggi alleged that by depriving him of his medical license, his property interest has been "attacked". Therefore, Dr. Boggi is attempting to state a procedural due process claim. Procedural due process claims require the consideration of three distinct factors. Matthews v. Eldridge, 424 U.S. 319 (1976). First, the Court must consider the private interest affected by the official actions. Matthews, 424 U.S. at 335. Second, the Court must consider the risk of erroneous deprivation through the procedures used and the probable value, if any, of

additional or substitute safeguards. Matthews, 424 U.S. at 335. Finally, the Court must consider the government's interest. Matthews, 424 U.S. at 335. The fundamental requirements of due process are notice and a meaningful opportunity to be heard. Harris v. City of Philadelphia, 47 F.3d 1333, 1338 (3d Cir. 1995).

In the instant case, the traditional procedural due process considerations are inapplicable. Here, Dr. Boggi's medical license was suspended on September 22, 1999, by the Maryland Board of Physicians. S.A. at 123. Dr. Boggi did not come into contact with MRAC until November, 2005. S.A. at 23. Therefore, any infringement of Dr. Boggi's property interest occurred in 1999 and the government actions allegedly involved were performed by the Maryland Board of Physicians. Any claim Dr. Boggi may have for a procedural due process violation should be directed at the Maryland Board of Physicians and not MRAC.

In addition, procedural due process violations inherently involve government action. As explained at length above, the Appellees were not state actors and therefore Dr. Boggi cannot properly make out a procedural due process claim against them.

Further, it should be noted that the Appellees will play no role in determining whether Dr. Boggi should have his medical license reinstated. Their sole responsibility was to evaluate Dr. Boggi and determine whether, in their opinion, he could be re-trained to safely and competently practice medicine.

16

Following that evaluation, if the Appellees determined that such re-training was possible and appropriate they would have endeavored to re-train Dr. Boggi. The results of their evaluation and any subsequent re-training would have then been forwarded tó the Maryland Board of Physicians who would have made the ultimate determination as to whether Dr. Boggi's medical license should be restored.

The need for re-training to prove that Dr. Boggi could safely and competently practice medicine was only one of the conditions imposed on Dr. Boggi by the Maryland Board of Physicians. Other conditions included neuropsychological testing and on-going psychiatric treatment. S.A. at 122. It was only after meeting all of these conditions that the Maryland Board of Physicians would consider re-instating Plaintiff's medical license. S.A. at 122. Therefore, the Appellees were not in any position to deprive Dr. Boggi of his alleged property right. Rather, their only responsibility was to provide evidence of testing and re-training that could be considered by the Maryland Board of Physicians in making its ultimate determination.

It should also be noted that Dr. Boggi sought out MRAC for testing and/or re-training and that the corporation in no way solicited his business. Further, Dr. Boggi was not required by either the State of Maryland or the State of New Jersey to pursue testing and/or re-training through MRAC. There are six other assessment and retraining organizations he could have contracted with to receive testing and

re-training. However, he chose to engage MRAC knowing full well that one potential outcome was that it might determine that he could not be re-trained. In addition, there are other companies similar to MRAC that also offer the testing and re-training sought by Dr. Boggi. If Dr. Boggi believes that MRAC made a mistake in their evaluation Dr. Boggi is free to pursue testing and re-training from another similar organization.

Dr. Boggi also has no property interest in his suspended medical license. The Courts have determined that a person can have a property interest in a medical license where that same person has completed all prerequisites upon which a license may automatically be granted in accordance with a statute or regulation. Herz v. Degnan, 648 F.2d 201, 208 (3d Cir. 1981). However, to have a property right a plaintiff must have more than an abstract need or desire… he must, instead, have a legitimate claim of entitlement to it. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Here, Dr. Boggi lost any legitimate claim of entitlement to his medical license as a property right at the time it was suspended in 1999 due to his dangerous conduct and behavior. Therefore, he had no property right in the license and therefore he cannot support a procedural due process claim.

Dr. Boggi also alleged in his Complaint that his liberty interest was affected by the actions of the Appellees. S.A. at 15. Specifically, he alleges that because he has been listed as mentally incompetent, dangerously narcissistic, and

18

possessing communication difficulties for the last ten years it has acted as a form of "incarceration." S.A. at 17. However, this shows a misunderstanding on the part of Dr. Boggi as to the meaning of incarceration. The term incarceration suggests imprisonment, not the deprivation of a professional license. Claims for the deprivation of a professional license are more appropriately framed as property interest and not a liberty interest. As a result, Dr. Boggi has not properly pled an infringement of his liberty interests.

Dr. Boggi has also alleged a violation of his substantive due process rights and based this claim on the holding in <u>Zinermon v. Burch</u>, 494 U.S. 113, 124 (1990) (misidentified in the Complaint as <u>Zimmerman v. Burch</u>). However, Dr. Boggi's characterization of <u>Zinermon</u> is erroneous. The Plaintiff in <u>Zinermon</u> was claiming a violation of his procedural due process rights. <u>Id</u>. at 126, 127. The Court in <u>Zinermon</u> did state that the Complaint could be read to assert a claim for substantive due process, however the petition for certiorari did not raise a substantive due process claim. <u>Id</u>. at 126. Therefore, the Court declined to render any opinion regarding substantive due process. <u>Id</u>.

What Dr. Boggi is truly seeking in this case is to have his medical license re-instated. However, his medical license was suspended by the Maryland Board of Physicians. Therefore, this Court lacks the authority and/or the jurisdiction to

return his medical license.  In essence, Dr. Boggi is asking for the Court to award relief that it is not in a position to grant.

Dr. Boggi has failed to properly plead facts necessary to state a claim that his federal or constitutional rights have been violated.  We understand that the Court is required to view a submission from a pro se litigant more liberally than that prepared by an attorney.  However, even if this more lenient standard is applied by the Court Dr. Boggi has still not stated a claim upon which relief can be granted. Therefore, the Court should determine that Dr. Boggi has failed to state a claim upon which relief can be granted and that his Complaint must be dismissed.

### B.    Dr. Boggi Failed to State a Claim under Title II of the Americans with Disabilities Act

#### 1.    MRAC, Larry Downs, and Joseph Sokolowski are not State Entities as Defined by the ADA

Dr. Boggi also asserted a claim under Title II of the American with Disabilities Act in his Complaint.  Title II of the Americans with Disabilities Act (codified as 42 U.S.C. §12131, et seq.) states:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

See 42 U.S.C. §12132.

Section §12131, et seq., specifically relates to the actions of a public entity. As defined in §12131(1), a public entity is:

(A)    any State or local government;
(B)    any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
(C)    the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 USCS § 24102(4)]).

See 42 U.S.C. §12131.

Clearly, MRAC does not fall under the definition of a public entity as defined by §12131. As discussed above, MRAC is a private entity and not affiliated with the State of New Jersey or any other state and it must not be considered a state actor. Therefore, it cannot be described as a public entity under either sub-section "A" or sub-section "B" of the Act. Additionally, MRAC is not in any way associated with commuter transportation and therefore does not fall under section C of the definition. For these reasons, MRAC is not subject to Title II of the Americans with Disabilities Act.

Further, Plaintiff cannot make out a claim against Larry Downs or Joseph Sokolowski under 42 U.S.C. §12131, et seq. An individual is not considered a public entity under the statute and is not exposed to liability under the ADA. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). Therefore, all claims made under the ADA against Larry Downs and Joseph Sokolowski as individuals must be dismissed.

### 2.    Dr. Boggi is not Disabled as Defined by the ADA

Even if the Court were to determine that MRAC is a public entity, which is denied, Dr. Boggi is unable to maintain a cause of action under 42 U.S.C. §12131, et seq., because he is not disabled pursuant to the definition found in the statute. Section 12131 defines a qualified individual with a disability as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

See 42 U.S.C. §12131.  An individual is described as having a disability under the ADA when they have:

> (A)    a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B)    a record of such an impairment; or
> (C)    being regarded as having such an impairment.

See 42 U.S.C. §12102.  Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. See 42 U.S.C. §12102.

Here, Dr. Boggi is unable to make out a claim that he is disabled consistent with the definition found in §12102.  Although Dr. Boggi has pled that he suffers from Attention Deficit Hyperactivity Disorder (ADHD) he has not pled facts

sufficient to show that his ADHD substantially limits one or more major life activities.

The District Court for the Eastern District of Pennsylvania faced a roughly analogous set of facts as those found in the present case in Love v. Law Sch. Admission Council, Inc. 513 F.Supp.2d 206, 224 (E.D.Pa. 2007). In Love, the Plaintiff brought suit under Title III of the ADA requesting that he be allowed extra time in which to take the Law School Admissions Test because he suffered from ADHD as well as learning disabilities affecting academic fluency and processing speed.    In Love, the Trial Court held that ADHD is a mental impairment under the ADA. Id. The Court also held that the functions required in taking the LSAT, specifically reading, processing information, and learning, are considered major life activity under the ADA. Id. at 224. However, the Court concluded that the Plaintiff was not entitled to an accommodation because his ADHD and learning disabilities did not substantially interfere with a major life activity. Id. at 228.

The Court in Love based its decision, in part, on the fact that the Plaintiff did not seek any reasonable accommodations throughout the course of his high school, undergraduate, or graduate studies. Love, 513 F.Supp.2d at 228. The Court cited with approval the holding in Gonzalez v. National Board of Medical Examiners, in which the District Court for the Eastern District of Michigan stated "the plaintiff

23

did not have a documented history of academic achievement below expectations that would support a diagnosis of a learning disability and noted that [a]verage, or even slightly below average, is not disabled for purposes of the ADA. Love, 513 F.Supp. 2d at 228, *quoting* Gonzalez v. National Board of Medical Examiners, 60 F. Supp. 2d 703 (E.D. Mich. 1999).

In the instant case, as best as can be discerned, Dr. Boggi has alleged that he is a qualified individual with a disability because he suffers from Attention Deficit Hyperactivity Disorder (ADHD). Specifically he alleges that he was discriminated against because, although he has ADHD, the multiple choice portion of the test required him to complete sixty questions per hour. However, Dr. Boggi's claim fails as he stated in reference to the number of questions on the multiple choice section of the testing that "I did not worry about that so much, since despite my ADHD, I can go that fast." S.A. at 23. Dr. Boggi himself makes clear that his alleged ADHD does not interfere with or substantially limit any of his major life activities.

Further, the Plaintiff has failed to plead how his ADHD has substantially limited a major life activity. Using the holding in Love as guidance, simply because a person suffers from ADHD does not mean that they are a qualified person with a disability as defined by the ADA. Further, the Court in Love makes clear that a person's past academic performance is relevant in determining whether

their ADHD substantially limits a major life activity. Based on the fact that Dr. Boggi graduated from an accredited medical school, and there being no suggestion that his ADHD inhibited his academic past success, it would seem clear from his academic achievements that his ADHD has not served to substantially limit the major life activity involved in test taking. Therefore, Dr. Boggi is not disabled under the ADA and cannot properly maintain a claim under 42 U.S.C. §12131, et seq.[1]

### C.   Dr. Boggi did not File his Complaint Within the Applicable Statute of Limitations

Dr. Boggi's Complaint should also be dismissed because he failed to comply with the applicable statute of limitations. While the expiration of the statute of limitations is an affirmative defense, when the expiration of the statute is apparent on the face of the Complaint it may be raised in a Rule 12(b)(6) motion to dismiss. Davis v. Grusemeyer, 996 F.2d 617, 623 (3d Cir. 1993).

In Wilson v. Garcia, the United States Supreme Court held that the statute of limitations for §1983 civil rights actions is the same as the statute of limitations for

---

[1] It is important to note that Dr. Boggi has not alleged any claims under Title III of the ADA requiring that he request a reasonable accommodation in testing. Even if such an allegation had been raised in the Complaint, Dr. Boggi has failed to plead facts upon which relief could be granted under Title III of the ADA. Specifically, Dr. Boggi never requested a reasonable accommodation for taking the test as is required under Title III. Additionally, Title III of the ADA adheres to the same definition of a "qualified person with a disability" as Title II of the ADA. As demonstrated above, Dr. Boggi is not disabled within the meaning of any title of the ADA.

the relevant state's personal injury statute. Sullivan v. Pittsburgh, 811 F.2d 171, 180 (3d Cir. 1987), *citing* Wilson v. Garcia, 471 U.S. 261 (1985). The appropriate limitations period for §1983 actions brought in Pennsylvania is two years pursuant to 42 Pa.C.S. § 5524. Sullivan, 811 F.2d at 180.

The Americans with Disabilities Act does not contain a Statute of Limitations. See generally 42 U.S.C. §12101, et seq. However, the Third Circuit held in Disabled in Action v. Septa that the two year statute of limitations for personal injury claims in Pennsylvania also governs claims under the ADA. Disabled In Action v. SEPTA, 539 F.3d 199, 208 (3d Cir. 2008), see also 42 Pa.C.S. Section 5524(2). Therefore, the Plaintiff's claims under both §1983 and the ADA are governed by the two year statute of limitations found in 42 Pa.C.S. §5524.

After determining the length of the relevant Statute of Limitations the Court must determine when the Statute of Limitations began to run. Ordinarily, the Statute of Limitations begins to run from the moment the potential Plaintiff has "a complete and present cause of action." Disabled in Action, 539 F.3d at 209; quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 195 (1997). For federal causes of action the accrual date is a matter of federal law. Disabled in Action, 539 F.3d at 209.

Where Congress has specified an accrual date by explicit command or by implication federal courts defer to that date. Disabled in Action, 539 F.3d at 209, citing TRW Inc. v. Andrews, 534 U.S. 19, 27-28 (2001). In the absence of a contrary directive from Congress the Courts are to apply the federal rule and determine that an action accrues when the Plaintiff discovers, or with due diligence should have discovered, the injury which forms the basis of their claim. Disabled in Action, 539 F.3d at 209. Under federal common law, the statute of limitations begins to run on the first date that the injured party possesses significant critical facts to put him on notice that a wrong has been committed. Kichline v. Consolidated Rail Corp., 800 F.2d 356, 359 (3d Cir. 1987). In determining the accrual date of a cause of action it is appropriate to focus on when the complained of act occurred, not when the effect of the act became painful. Chardon v. Fernandez, 454 U.S. 6, 8 (1981); see also Delaware State College v. Ricks, 449 U.S. 250, 258 (1980). Therefore, Dr. Boggi was required to file this case within two years of the date that the complained of acts occurred. In the instant case Dr. Boggi failed to do so.

Dr. Boggi alleged that he first contacted Defendant, MRAC in mid-November, 2005. S.A. at 23. He further alleged that he was tested by MRAC in May, 2006. S.A. at 23. As evidenced by his Complaint, Dr. Boggi complained about the testing conditions both during and immediately after the testing was

conducted. S.A. at 23, 24, 26, and 27. Following the testing, Dr. Boggi demanded that MRAC re-test him because of the alleged problems with the initial test but MRAC refused. All of this preceded the letter Dr. Boggi received on October 16, 2006 from MRAC indicating that they could not re-train Dr. Boggi and notifying him that his case was considered closed. S.A. at 22.

Dr. Boggi filed his Motion to proceed In Forma Pauperis on October 16, 2008. This was his first filing in this matter. However, the testing and subsequent refusal to re-test Dr. Boggi occurred in May and July, 2006, more than two years before this action was filed. In addition, Dr. Boggi was on notice of significant critical facts prior to October 16, 2006. In particular, he was on notice that the perceived problems with the testing took place in May, 2006. Further, Dr. Boggi was on notice that MRAC refused to re-test him. As Dr. Boggi is requesting injunctive relief in the form of ordered re-testing by MRAC, it is clear that its refusal to re-test him is a significant critical fact in this case. Therefore, Dr. Boggi's Complaint was not filed within the applicable statute of limitations as he has alleged and could be dismissed on those grounds as well.

## II.    The Cases Cited By Dr. Boggi which Allegedly Support His Position Do Not Stand For the Proposition Cited by Appellant

In his brief, Dr. Boggi cited to a number of cases that he asserts supports his position in this matter. An examination of those cases shows that they do not stand for the proposition proposed by Dr. Boggi.

### A.    <u>Mileikowsky v. Medical Board of California</u> does not support the position asserted by Dr. Boggi

The first case cited by Dr. Boggi is <u>Mileikowsky v. Medical Board of California</u>.    A search performed on Lexis/Nexis does not produce any case identified by that name.    There are thirty-four (34) separate decisions listed relating to a Dr. Gil Mileikowsky in Courts ranging from the United States Supreme Court to the California Court of Appeals.    However, a review of the webpage cited in Dr. Boggi's Brief revealed a Superior Court of California opinion that corresponds to the date identified by Dr. Boggi.[2]

The <u>Mileikowsky</u> matter referred to by Dr. Boggi involves a challenge by Dr. Mileikowsky to an Order by the California State Medical Board that he undergo an examination under section 820 of the California Business and Professions Code.    The Court stated that such an order requires good cause and that due to certain irregularities in the process that resulted in the order good cause did not exist.    Specifically, the Court identified a possible conflict of interest, the failure to consider materials supplied by Dr. Mileikowsky, and the consideration of events that occurred more than two years prior to the issuance of the order as irregularities.

_____

[2] Lexis/Nexis does not contain any reference to this opinion.    Rather, Appellees were able to find a copy of the opinion on the webpage, www.allianceforpatientsafety.org, as referenced in Dr. Boggi's Brief.    Counsel for Appellees were unable to find any citation to this matter in any official and/or unofficial reporter.

Dr. Boggi has cited this opinion to support his position that it was improper for the State of Maryland to force him to undergo a forced psychiatric evaluation prior to the suspension of his medical license. The Court in Mileikowsky held that irregularities existed in the process of ordering a psychiatric evaluation and that there was no good cause to have ordered Dr. Mileikowsky's psychiatric evaluation. The Mileikowsky Court did not hold that all state ordered psychiatric evaluations are improper. Therefore, the holding in Mileikowsky does not support Dr. Boggi's position that his state ordered psychiatric evaluation was not proper.

Additionally, as mentioned above, the decision rendered in Mileikowsky was by the California Superior Court and therefore does not act as precedent in this matter. Also, the decision specifically related to an action taken under section 820 of the California Business and Professional Code which is not implicated in this matter. Finally, and most importantly, Dr. Boggi appears to cite this case to support his argument that the State of Maryland Board of Physicians improperly had him undergo a psychiatric evaluation. Whether that contention is true is before this Court. The Maryland Board of Physicians is not a party to this action and Appellees, MRAC, Mr. Downs, and Dr. Sokolowksi are in no way affiliated with the Maryland Board of Physicians. The actions of the Maryland Board of Medical Examiners are not at issue in this matter and therefore Dr. Boggi cannot seek

recovery against the Appellees for the actions of the Maryland Board of Physicians.

**B.    Dr. Boggi's Position is not Supported by <u>Ewing v. Board of Regents</u>**

The second case that Dr. Boggi relies on is <u>Ewing v. Board of Regents</u>, 742 F.2d 913 (6th Cir. 1984).  It should be noted from the outset the Sixth Circuit's decision in this case was overturned by the United States Supreme Court in <u>Regents of University of Michigan v. Ewing</u>, 474 U.S. 214 (1985). Therefore, the lower court opinion is not of any value in evaluating Dr. Boggi's claims. Therefore, Dr. Boggi's position that he has property and liberty interests in his medical license is not supported by the case law.

Additionally, even if <u>Ewing</u> had not been overturned the case does not support Dr. Boggi's situation.    The Sixth Circuit held that an implied understanding existed between the parties that the Plaintiff could not be arbitrarily dismissed from the university.    The Court went on to hold that the implied understanding represented a property interest resting in the contractual relationship between the parties. <u>Ewing</u>, 742 F.2d at 915.  However, the holding in <u>Ewing</u> does not suggest that a doctor holds a similar property interest in his medical license. Further, Dr. Boggi has not pled any evidence to suggest that his medical license was arbitrarily suspended by the Maryland Board of Physicians.  In fact, it is clear that Dr. Boggi was provided with significant due process before his medical

license was suspended and therefore the decision was anything but arbitrary. Finally, it should again be noted that this Court is not charged with examining the decision of the Maryland Board of Physicians and does not have the authority to overturn its decision made in 1999.

### C.    The Court's Decision in <u>Cohane v. NCAA</u> does not Support Dr. Boggi's Position

Dr. Boggi also cited to the Second Circuit decision in <u>Cohane v. NCAA</u> to support his position. <u>See</u> Dr. Boggi's Brief at p. 8.  In <u>Cohane</u> the Court held that the District Court for the Western District of New York erred in holding that the National Collegiate Athletic Association (NCAA) could never be a state actor. <u>Cohane v. NCAA</u>, 215 Fed. Appx. 13, 16 (2d Cir. 2007).  Dr. Boggi now asserts that the relationships between the parties in the instant matter are similar to the relationship between the NCAA and the state university that employed the Plaintiff in <u>Cohane</u>.  From that, Dr. Boggi appears to extrapolate that MRAC must be a state actor.

It is important to note that in <u>Cohane</u> the Court did not hold that the NCAA was a state actor.  Rather, the Court held that the District Court erred in finding that the NCAA was never a state actor when conducting an investigation of a school.  <u>Cohane</u>, 215 Fed. Appx. at 16.  The Second Circuit also stated that the NCAA could still show that it did not engage in concerted action with the university.  <u>Cohane</u>, 215 Fed. Appx. at 16.

32

It should also be noted that the decision in <u>Cohane</u> is not a published opinion and therefore holds no precedential value in this matter. Even if the matter stood for the proposition suggested by Dr. Boggi, which it does not, the Court need not follow this unpublished opinion in deciding this matter.

### D.    The Supreme Court's Opinion in <u>Youngberg v. Romeo</u> does not Support Dr. Boggi's Position

Dr. Boggi asserts that the holding in <u>Youngberg v. Romeo</u> supports his position in this case. <u>See</u> Dr. Boggi's Brief at p. 8. Specifically, Dr. Boggi argues that it is necessary to reach a determination as to whether professional judgment was exercised in determining that he could not be re-trained in medicine. <u>See</u> Dr. Boggi's Brief at p. 8.

The factual scenario presented in <u>Youngberg</u> could not be more different than the instant situation. <u>Youngberg</u> involved a determination as to the liberty interests maintained by a mentally handicapped individual after that individual had been involuntarily committed to a state run institution. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 309 (1982). The Plaintiff was an individual who was classified as being "severely retarded" and was described as having the mental capacity of an eighteen month old child with an IQ between 8 and 10. <u>Youngberg</u>, 457 U.S. at 309.

The Court considered whether the Plaintiff had substantive rights under the Fourteenth Amendment to safe conditions of confinement, freedom from bodily restraints, and training. <u>Youngberg</u>, 457 U.S. at 309. The Court held that a

33

severely mentally handicapped individual had a right to safe conditions of confinement, freedom from restraints except when deemed necessary by a professional, and training considered reasonable by an appropriate professional to ensure the individual's safety and to facilitate his ability to function free from restraints. Youngberg, 457 U.S. at 324.

A plain reading of the Youngberg case shows that it is in no way analogous to the instant matter. Although the Court in Youngberg does hold that professional judgment must be exercised in determining appropriate training, that holding specifically relates to the training a mentally handicapped individual involuntarily confined to a state run hospital needs to ensure the individual's safety. There is no reason to believe that the holding in Youngberg has any applicability outside of that limited factual scenario and certainly no basis for Dr. Boggi's argument that it applies to the retraining he attempted to pursue through MRAC.

Further, even if the holding in Youngberg did apply to Dr. Boggi's situation, he is unable to show that professional judgment was not exercised. In Youngberg, the Court defined the term professional decision maker. A professional decision maker is described as a person competent, whether by education, training or experience, to make the particular decision at issue. Youngberg, 457 U.S. at 323. The Court went on to state that long-term decisions should be made by individuals with medical or nursing degrees. Youngberg, 457 U.S. at 323. Although Dr.

Boggi failed to name the individual that allegedly exercised unprofessional judgment, Dr. Boggi does state that that decision was made by one person. Based on various other factual allegations it is reasonable to conclude that the individual described by Dr. Boggi is Dr. Scott Manaker, the doctor that interviewed Dr. Boggi during the testing. Although Dr. Boggi may not have agreed with Dr. Manaker's methods or his conclusions, Dr. Boggi cannot dispute that Dr. Manaker is a doctor and therefore a professional decision maker pursuant to the definition provided by the United States Supreme Court. For these reasons, any reliance by Dr. Boggi on the holding in <u>Youngberg</u> is misplaced and therefore the Court should not take notice of it.

### E.    Dr. Boggi's Argument Regarding <u>NLRB v. Universal Camera</u> has no Bearing on the Instant Action

Dr. Boggi argues in his Brief that the holding in <u>Universal Camera v. NLRB</u>, 340 U.S. 474 (1951) "was incorrectly applied in this case, or needs to be updated." <u>See</u> Dr. Boggi's Brief at p. 9. This argument is confusing in so much that the Court does not mention that case in its opinion and it is not relied on by any party in their Rule 12(b)(6) Motions to Dismiss. It does not appear that <u>Universal Camera</u> was applied in this matter at all and therefore it is unclear how it could have been misapplied.

Further, the holding in <u>Universal Camera</u> does not in any way involve the issues presented by Dr. Boggi. The Supreme Court stated that the essential issue in

Universal Camera "is the effect of the Administrative Procedure Act and the legislation colloquially known as the Taft-Hartley Act on the duty of Courts of Appeals when called upon to review orders of the National Labor Relations Board." Universal Camera, 340 U.S. at 476. The instant matter in no way implicates the Administrative Procedure Act or the Taft-Hartley Act. Therefore, the holding of Universal Camera is not relevant to the instant action.

## CONCLUSION

Dr. Boggi failed to state a claim upon which relief can be granted in either the Complaint or Amended Complaint filed in this action. Therefore, the District Court properly dismissed his Complaint and Amended Complaint. Dr. Boggi is upset that he was deprived of his medical license and is attempting to take whatever steps necessary to try and have it restored. However, pursuing the Appellees in this matter will not provide him with the relief that he truly seeks.

Dr. Boggi's license was suspended by the Maryland Board of Physicians. None of the parties to this action have any relationship to the Maryland Board of Physicians and none of the parties to this action have the ability to restore Dr. Boggi's license to practice medicine. Further, this Court does not have the ability to provide Dr. Boggi with the relief he is truly seeking. Even if the Court did have the necessary authority, Dr. Boggi failed to plead facts sufficient to make out a claim and his Complaint was properly dismissed.

Accordingly, the District Court acted correctly in granting Summary Judgment in this matter and the District Court's opinion should be affirmed.

Respectfully submitted,

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY, LLP


BY:   /s/Michael B. Pullano
      Joseph Goldberg, Esquire
      PA ID No.:  21376
      Michael B. Pullano, Esquire
      PA ID No.: 79389
      2000 Market Street, 13th Floor
      Philadelphia, PA 19103
      (215) 972-7900
      (215) 564-7699 – fax
      jgoldberg@wglaw.com
      mpullano@wglaw.com
      Attorneys for Appellees,
      Medical Review Accrediting Council,
      Larry Downs, and Joseph Sokolowski

Date: July 16, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

JOSEPH O. BOGGI            :      NO:  10-1619

      v.                      :

MEDICAL REVIEW AND       :
ACCREDITING COUNCIL, et al.   :

                               :

## **CERTIFICATE OF IDENTICAL COMPLIANCE**

I, Michael B. Pullano, Esquire, as counsel for Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski, do hereby certify that Appellees' Brief filed with the Court's ECF System is identical in text to the paper copies filed with the Court on the date indicated below.


/s/ Michael B. Pullano
Michael B. Pullano, Esquire


Date:  July 9, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| JOSEPH O. BOGGI | : | NO:  10-1619 |
| v. | : | |
| MEDICAL REVIEW AND ACCREDITING COUNCIL, et al. | : | |

## CERTIFICATE OF VIRUS CHECK

I, Michael B. Pullano, Esquire, as counsel for Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski, do hereby certify that Appellees' Brief, filed electronically with the Court's ECF system has been checked for any electronic viruses by our IT Department and no viruses were detected.

/s/  Michael B. Pullano
Michael B. Pullano, Esquire

Date: July 9, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

JOSEPH O. BOGGI                        :            NO:   10-1619

       v.                              :

                                       :

MEDICAL REVIEW AND                     :
ACCREDITING COUNCIL, et al.            :

                                       :

---

## CERTIFICATE OF WORD COUNT

I, Michael B. Pullano, Esquire, as counsel for Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski, do hereby certify that the word count for Appellees' Brief, is 8,702 according to the Word Count feature of Microsoft Word.  Pursuant to FRAP 32(a)(7)(B) the Appellees' Brief is limited to 14,000 words.

/s/  Michael B. Pullano
Michael B. Pullano, Esquire

Date: July 9, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| JOSEPH O. BOGGI | : | NO:  10-1619 |
| v. | : | |
| MEDICAL REVIEW AND ACCREDITING COUNCIL, et al. | : | |

## CERTIFICATE OF BAR MEMBERSHIP

I, Michael B. Pullano, Esquire, as counsel for Appellees, Medical Review and Accrediting Council, Larry Downs, and Joseph Sokolowski, do hereby certify that I have been admitted to practice before the bar of the United States Court of Appeals for the Third Circuit.

/s/  Michael B. Pullano_____
Michael B. Pullano, Esquire

Date: July 9, 2010

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

JOSEPH O. BOGGI
:
NO:  10-1619
:
v.
:
:
MEDICAL REVIEW AND
:
ACCREDITING COUNCIL, et al.
:
:
:

## CERTIFICATE OF SERVICE

I, Michael B. Pullano, Esquire, as counsel for Appellees, Medical Review

and Accrediting Council, Larry Downs, and Joseph Sokolowski, do hereby certify

that a true and correct copy of Appellees' Brief was served via the Court's

Electronic Filing System, on the date indicated below, on the following counsel of

record:

Joseph O. Boggi, D.O
1207 Ballard Street
Silver Springs, MD 20910
*Pro Se Plaintiff*

Michael E. Sacks, Esquire
Hamburg & Golden, P.C.
1601 Market Street
Suite 3310
Philadelphia, PA 19103

Kerri E. Chewning, Esq.
Archer & Greiner
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033


/s/  Michael B. Pullano
Michael B. Pullano, Esquire


Date: July 9, 2010