NO. 10-1619

_____

IN THE UNITED STATES COURT
OF APPEALS FOR THE THIRD CIRCUIT

_____

JOSEPH O. BOGGI

*Appellant*

v.

MEDICAL REVIEW AND ACCREDITING COUNCIL, ET AL

*Appellees*

_____

**BRIEF FOR APPELLEES NATIONAL BOARD OF MEDICAL EXAMINERS, INSTITUTE FOR PHYSICIAN EDUCATION, ANDREA CICCONE, SCOTT MANAKER, M.D., RICHARD HAWKINS, M.D. AND DONALD MELNICK, M.D.**

_____

Appeal from the Orders of Schiller, J., entered January 26, 2010, and September 15, 2009, in the United States District Court for Eastern District of Pennsylvania, No. 08-CV-4941.

_____

NEIL J. HAMBURG
MICHAEL E. SACKS
HAMBURG & GOLDEN, P.C.
1601 Market St., Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590

Counsel for Appellees
National Board of Medical
Examiners, Institute for Physician
Education, Andrea Ciccone, Scott
Manaker, M.D., Richard Hawkins,
M.D. and Donald Melnick, M.D.

## TABLE OF CONTENTS

**PAGE**

Table of Contents ...................................... i

Table of Citations ..................................... iii

I.   STATEMENT OF JURISDICTION ........................ 1

II.  STATEMENT OF THE ISSUES .......................... 1

III. STATEMENT OF THE CASE ............................ 2

IV.  NBME-IPE DEFENDANTS' STATEMENT OF THE FACTS ...... 4

     Introduction ..................................... 4

     A.   In 1999, the Maryland Board of Physician
          Quality Assurance Suspended Dr. Boggi from
          Practicing Medicine Because It Found that He
          Was Mentally Incompetent to Practice Safely.     6

     B.   In 2001, The Maryland Court of Special
          Appeals Affirmed the Maryland Board of
          Physician Quality Assurance's Suspension of
          Dr. Boggi's License to Practice Medicine ....     9

     C.   In an Effort to Regain His Medical License,
          Dr. Boggi Sought Evaluation and Retraining
          Through MRAC, But in 2006, After Evaluation,
          MRAC Determined that It Could Not Develop a
          Remediation Program for Dr. Boggi's
          Circumstance .................................    10

     D.   The Facts Alleged by Dr. Boggi in His
          Complaint(s) Do Not Support a Claim for
          Relief Against the NBME-IPE Defendants ......    13

          1.   Dr. Boggi's Assertions that the NBME-IPE
               Defendants are State Actors is
               Unsupported ...........................    15

          2.   Dr. Boggi's Allegations Concerning the
               NBME-IPE Defendants' Testing Procedures
               Do Not Suggest Discriminatory Practices
               or the Deprivation of Protected Rights.    16

3.    Dr. Boggi Wanted the District Court, and Now This Court, to Sit As a Federal Medical Review and Accrediting Council . . . . . . . . . . 20

V.   SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.   Standard of Review of the District Court's Grant of a Motion to Dismiss the Complaint Under Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.   Dr. Boggi Has Not Alleged a Single Fact or Claim Against Individual Defendants Dr. Donald Melnick or Dr. Richard Hawkins . . . . . . . 25

C.   Dr. Boggi Has Not Stated a Claim Under 42 U.S.C. §1983 Against the NBME-IPE Defendants Upon Which Relief May be Granted . . . . . . . . . . . 26

1.    Elements of 1983 Action . . . . . . . . . . . . . . . . 26

2.    The NBME-IPE Defendants Are Not State Actors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D.   Dr. Boggi's Complaint Does Not State a Cause of Action for Violation of His Due Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

1.    The NBME-IPE Defendants Cannot be Charged with Depriving Dr. Boggi of Constitutionally Protected Rights Because They Are Not State Actors . . . . . . 35

2.    Even If the NBME-IPE Defendants Were Deemed to Be State Actors, Dr. Boggi Has Not Asserted Any Constitutionally Protected Rights . . . . . . . . . . . . . . . . . . . . . . . 36

E.   Dr. Boggi Has Not Stated a Claim under the ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

F.   Dr. Boggi's Section 1983 and ADA Claims Are, In Any Event, Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

ii

## TABLE OF CITATIONS

**CASES**                                                                     **PAGE**

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) ........        24

Annunziato v. The Gan, Inc., 744 F.2d 244 (2d Cir.
1984) .............................................        26, 29

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) .............        23, 25

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct.
1955 (2007) .......................................        22, 23

Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777 (1982) .        32

Board of Regents of State Colleges v. Roth, 408 U.S.
564, 577, 92 S.Ct. 2701, 2709 (1972) .................     27, 37, 39

Brown v. Federation of State Medical Boards of U.S., et
al., 1985 WL 1659 (N.D.Ill. 1985), aff'd in part, Brown
v. Federation of State Medical Boards of the United
States, et al., 830 F.2d 1429 (7th Cir. 1987) .........        28, 34

Catagnus v. Aramark Corp., 235 F.Supp.2d 413 (E.D. Pa.
2002) .............................................        25

Chapman v. Houston Welfare Rights Org., 441 U.S. 600,
99 S.Ct, 1905 (1979) ..............................        26

Cleveland Board of Education v. Loudermill, 470 U.S.
532, 105 S.Ct. 1487 (1985) ..........................        27

County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct.
1708 (1998) .......................................        36

Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986)        36

Desi's Pizza, Inc v. City of Wilkes Barre, 321 F.3d 411
(3d Cir. 2003) ....................................        36

Goussis v. Kimball, 813 F.Supp 352 (E.D.Pa. 1993) .....        31

Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir.
2002) .............................................        24

iii

In re Burlington Coat Factory Securities, Lit., 114
F.3d 1410 (3d Cir. 1997) .............................     24

Lexington National Insurance Corporation v. Ranger
Insurance Co., 326 F.3d 416 (3d Cir. 2003) ...........     22

Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct.
2744 (1982) .........................................     27, 32

McKeesport Hospital v. Accreditation Council for         29, 30,
Graduate Medical Education, 24 F.3d 519 (3d Cir. 1994)    32, 34

Metzger v. National Commission on Certification of
Physician Assistants, 2001 WL 76331 (E.D.Pa. 2001) ....     34

Mileikowski v. Medical Board of California ...........     39

Morse v. Lower Merion School Dist., 132 F. 3d 902 (3d
Cir. 1997) ..........................................     24

Munsif v. Cassel, 331 Fed. Appx. 954 (3d Cir. 2009) ...     31

Nicholas v. Pennsylvania State Univ., 227 F.3d 133 (3d
Cir. 2000) ..........................................     37, 38

Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192 (3d Cir. 1993) ..................     5

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir.
2008) ...............................................     13, 22

Regents of University of Michigan v. Ewing, 474 U.S.
214, 106 S.Ct. 507 (1985) ...........................     37, 38

Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764
(1982) ..............................................     28, 32

Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.
1985) ...............................................     43

Soignier v. Amer. Bd. Plas. Surgery, 92 F.3d 547 (7th
Cir. 1996) ..........................................     42, 43

West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988) ....     26

Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 2250 (1988) .     42

## STATUTES

28 U.S.C. § 1291 ........................................    1

28 U.S.C. § 1331 ........................................    1

28 U.S.C. § 1343 ........................................    1

42 U.S.C. § 1983 ........................................    3, 19, 20,
                                                           26, 27,
                                                           29, 35

42 U.S.C. § 12131 .......................................    2

42 U.S.C. § 12189 .......................................    40

42 Pa.C.S.A. § 5524 .....................................    43

Md. Code Ann., Health-Occ. § 14-404(a)(4)(1994 & Supp.
1998) ...................................................    8

## I.   STATEMENT OF JURISDICTION

Based upon the allegations of the complaint, the District Court had jurisdiction of this case pursuant to 28 U.S.C. § 1343, pertaining to actions to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution and laws of the United States, and under 28 U.S.C. § 1331, because the case involved questions of federal law.

The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291, because the decision of the District Court dated January 26, 2010, dismissing the claims of plaintiff Dr. Joseph Boggi against the last remaining defendants, the University of Medicine and Dentistry of New Jersey ("UMDNJ") and the "unnamed consultant," was a final decision.   The District Court had, on September 15, 2009, dismissed Dr. Boggi's claims against all other defendants.   Dr. Boggi filed the notice of appeal on February 25, 2010, within 30 days of the District Court's final order of January 26, 2010

## II.  STATEMENT OF THE ISSUES

A.   Should this Court affirm the decision of the District Court dated September 15, 2009, dismissing Dr. Boggi's claims against the National Board of Medical Examiners ("NBME"), the Institute for Physician Education ("IPE"), Andrea Ciccone, Scott Manaker, M.D., Richard Hawkins, M.D., and Donald Melnick, M.D.

(collectively, the "NBME-IPE defendants") under 42 U.S.C. § 1983 because the NBME-IPE defendants are not state actors?

Suggested answer:   Yes.

B.   Should this Court affirm the decision of the District Court dated September 15, 2009, dismissing Dr. Boggi's claims against the NBME-IPE defendants under the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., because Dr. Boggi never sought an accommodation and does not allege any facts supporting a claim of discrimination?

Suggested answer:   Yes.

## III. STATEMENT OF THE CASE

On October 16, 2008, plaintiff Dr. Joseph Boggi filed a motion to proceed in forma pauperis, and on October 22, 2008, he filed a complaint against the Medical Review and Accrediting Council ("MRAC"), Larry Downs, Joseph Sokolowski, M.D. (collectively, the "MRAC defendants"), the NBME-IPE defendants,[1] the UMDNJ, and an unnamed consultant of UMDNJ.   Dr. Boggi's complaint consisted of 21 pages of mostly unnumbered paragraphs,

---

[1]  The IPE is a discontinued program of the National Board of Medical Examiners.   The NBME agreed to accept service and to be substituted as the proper corporate defendant, and the District Court subsequently substituted the NBME for the IPE.   (SA-46, September 15, 2009, Opinion, footnote 2.

2

seeking relief under 42 U.S.C. § 1983 and the Americans with Disabilities Act.[2] (SA-13 et seq., complaint.) (All references to "SA" refer to the supplemental appendix submitted jointly by the appellees.)

On July 1, 2009, MRAC and Larry Downs moved to dismiss the complaint. On July 13, 2009, the NBME-IPE Defendants moved to dismiss the complaint. Dr. Joseph Sokolowski, affiliated with MRAC, moved to dismiss the complaint against him on August 7, 2009. The UMDNJ and its alleged "unnamed consultant" had not yet been served with the complaint.

On August 24, 2009, Dr. Boggi filed a series of documents with the Court, including a "Motion to Amend the original complaint," with proposed amended complaint. (SA-35 et seq., amended complaint.)[3] On August 27, 2009, Dr. Boggi filed a "Memorandum in response to defendants [sic] Motion to Dismiss for failure to state a claim." (SA-9, docket.)

---

[2] The numbered paragraphs begin on page 3 of the complaint and end on page 9. They are primarily citations to cases that Dr. Boggi believes support his claims. Because of the confusing format of the complaint, this brief will reference the complaint by page and line number in the Supplemental Appendix.

[3] Dr. Boggi also filed the following documents on August 24, 2009: "Memorandum of Record — Date of Next Filing"; "Memorandum of Record — Voice Recordings in support of my case"; "Memorandum regarding agencies, non profits and other organizations who act under color of state law"; "Memorandum concerning issues for my 1983 case against the defendants"; "Motion to Add the National Board of Medical Examiners as defendant" and Motion under Rule 706 of the Rules of Evidence. Court Appointed Expert." (SA-8-9, docket.)

On September 4, 2009, the NBME-IPE defendants filed answers to Dr. Boggi's motions for a court-appointed expert, to amend the original complaint, and to add NBME as a defendant, and filed a praecipe to file a reply memorandum in support of their motion to dismiss the complaint. (SA-9, docket.)

On September 15, 2009, the District Court issued its Order and Opinion dismissing Dr. Boggi's complaint against the NBME-IPE defendants and the MRAC defendants. In its Order, the Court granted Dr. Boggi's motion to amend the complaint and considered the allegations pled in the amended as well as the original complaint. (SA-44, September 15, 2009, Order.)

Dr. Boggi moved for reconsideration on October 20, 2009. The District Court denied the motion for reconsideration on October 26, 2009. (SA-10, docket.)

After service of the complaint on UMDNJ on October 30, 2009, UMDNJ moved to dismiss the complaint on January 4, 2010. The Court granted the motion to dismiss, creating a final appealable order on January 26, 2010. (SA-12, District Court Docket; SA-66, January 26, 2010, Order.)

## IV. NBME-IPE DEFENDANTS' STATEMENT OF THE FACTS

### Introduction

This appeal arises from the District Court's dismissal of Dr. Boggi's Section 1983 claims against the NBME-IPE defendants (and the MRAC defendants) because they are not state actors, and

its dismissal of Dr. Boggi's claim under the Americans with Disabilities Act because Dr. Boggi provided no factual allegations of discrimination, and he never sought an accommodation for any disability.

Dr. Boggi's claims relate to his attempt in 2006 to obtain retraining in medicine so he could regain his medical license following his suspension from the practice of medicine in Maryland in 1999. At that time, the state's Board of Physician Quality Assurance ("Maryland Board" or "BPQA"), the oversight board for physicians, found Dr. Boggi mentally incompetent to practice medicine safely.

As described below, when he sought testing and retraining in 2006, Dr. Boggi experienced many of the same types of problems and conflicts as he had encountered in practice years before, and ultimately MRAC determined that it could not formulate a remediation plan for his circumstance.

Because much of the underlying factual background pertaining to Dr. Boggi's case has already been litigated and is a matter of public record in the State of Maryland, the District Court properly considered such facts in deciding the motions under Fed. R. Civ. P. 12(b)(6), and this Court may likewise consider such information from the public record. <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d

1192, 1196-97 (3d Cir. 1993).  The pertinent facts from the public record follow.

**A.  In 1999, the Maryland Board of Physician Quality Assurance Suspended Dr. Boggi from Practicing Medicine Because It Found that He Was Mentally Incompetent to Practice Safely.**

The Maryland Board of Physician Quality Assurance issued an emergency summary suspension of Dr. Boggi's medical license on June 24, 1998, after a show cause hearing.  The Board made numerous factual findings concerning Dr. Boggi's inappropriate and "bizarre" behavior to support its conclusion that Dr. Boggi was "mentally incompetent to practice medicine, and that his continued practice of medicine would jeopardize the health, safety and welfare of the citizens of Maryland." (SA-78, 85, BPQA Amended Order, p. 8.)  The Board also included "Addendum A" to its summary suspension which noted that

> During the course of the predeprivation hearing, the Board had extensive opportunity to evaluate the responses of, demeanor, organizational and communicative abilities of the Respondent [Dr. Boggi]…the Board finds, by clear and convincing evidence, that the Respondent lacks the capacity and insight to process information necessary in the practice of competent medical care.
>
> These cognitive, behavioral, and communicative deficits clearly impact on the Respondent's ability to safely practice medicine and imperatively require the summary suspension of Respondent's license to practice medicine…

(SA-88, BPQA Amended Order, Add. A.)

The 35 page Final Opinion and Order of the Maryland Board suspending Dr. Boggi's medical license, dated September 22, 1999, contains 75 numbered findings, along with conclusions of law, discussion and disposition.  (SA-89 et seq., BPQA Final Opinion and Order.)  The opinion details the violent incidents and bizarre behaviors of Dr. Boggi, as well as his comments revealing disordered thinking.  Finding No. 28, also discussed in the BPQA's summary suspension, is illustrative:

> 28.  The Respondent [Dr. Boggi] also visited the offices of the [Maryland Board] on several occasions. During these telephone calls and visits, the Respondent's communication appeared unfocused and at times he spoke in a low whisper and other times he became quite loud.  The Respondent exhibited a wide range of emotions during many of his contacts with the [Maryland Board], **often appearing alternately excited, calm, confused and at times in tears.  Dr. Boggi faxed a letter to the Executive Director which stated:**
>
> > **The last time I was seen in your office I had to trick one of your staff.  How do you do that?  One causes confusion by going four or five steps down an argument.**
> >
> > **Your [sic.] are smarter and so I am going to just come up there.**
> >
> > **I am the one with the red in his eyes and a dark grey suit.  You can send the others to check me out.  I will be sitting there a bit hunched over, looking as if I am, in the distance.  Occasionally I will sigh a bit and shrug my shoulders to give a more relaxed impression.  Other than that you will see that I am in good shape with a fine heart and strong eyes.**
> >
> > **That is how I looked last time.  Quite a few people came by before they considered approaching me.**

**Dr. Boggi's communications to the Board's staff could at times reasonably be interpreted, and in fact were interpreted, as threatening.**

(SA-95-96, BPQA Final Opinion and Order, pp. 7-8, emphasis in original.)

As to the question whether Dr. Boggi was 'professionally, physically or mentally incompetent,' within the meaning of Md. Code Ann., Health-Occ. § 14-404(a)(4)(1994 & Supp. 1998), the Maryland Board concluded that

> It is … basically undisputed that Dr. Boggi has suffered a series of professional setbacks which his medical employers have attributed to his communication difficulties, his failure to acknowledge professional boundaries and his impulsive behavior sometimes bordering on violence.  He has also been refused privileges at a hospital because of the perception that his thinking is disorganized…
>
> During the course of the investigation of this case, Dr. Boggi displayed to Board staff behavior that was perceived as incoherent and uncooperative, and he failed to follow clear instructions, and communicated in a way that was reasonably perceived as bizarre and threatening.

(SA-110, BPQA Final Opinion and Order, at p. 22).

In its September 22, 1999, Final Order, the Maryland Board suspended Dr. Boggi's medical license for one year, required Dr. Boggi to obtain psychiatric treatment that could possibly allow him to practice medicine safely and competently in the future, and imposed the following <u>six</u> <u>conditions</u> on him as a

prerequisite to returning to the medical profession. The Maryland Board required that Dr. Boggi:

> 1.  obtains current neuropsychological testing and completes a personality inventory as recommended in the report of Dr. McDaniel;
>
> 2.  begins treatment no later than 30 days from the date of this Order with a psychiatrist approved by the Board who shall be provided with a copy of this Order and all supporting documentation including psychiatric reports;
>
> 3.  undergoes this treatment for at least one year with a Board-approved psychiatrist;
>
> 4.  is re-evaluated by Dr. McDaniel after that period of time;
>
> 5.  subsequently appears before the Board's Case Resolution Conference to provide satisfactory evidence that he is competent to practice medicine safely; and
>
> 6.  provides evidence satisfactory to the Board that he has become competent to practice medicine safely; and it further
>
> ORDERS that if the Board finds that the Respondent is mentally competent to safely practice medicine, it may in its discretion, place reasonable limitations on the Respondent's practice based on any recommendations of the evaluating psychiatrists…

(SA-122, BPQA Final Opinion and Order at p. 34.)

**B.    In 2001, The Maryland Court of Special Appeals Affirmed the Maryland Board of Physician Quality Assurance's Suspension of Dr. Boggi's License to Practice Medicine.**

Dr. Boggi filed a petition for review of the Maryland Board's decision to suspend his medical license in the Circuit Court for Baltimore City, which affirmed the Board's decision by

Order dated June 15, 2000. Dr. Boggi then appealed the suspension to the Maryland Court of Special Appeals, and on December 13, 2001, that court affirmed the suspension of Dr. Boggi's medical license in a thorough 50 page opinion. (SA-124 et seq., December 13, 2001, Opinion of Court of Special Appeals of Maryland.)

The appeals court affirmed the findings and conclusions of the BPQA in every respect and rejected all of Dr. Boggi's contentions, including claims that he made under the Americans with Disabilities Act. Thus, the Maryland appellate court decision conclusively determined that Dr. Boggi was not competent to practice medicine.

> **C.  In an Effort to Regain His Medical License, Dr. Boggi Sought Evaluation and Retraining Through MRAC, But in 2006, After Evaluation, MRAC Determined that It Could Not Develop a Remediation Program for Dr. Boggi's Circumstance.**

Under Condition No. 5 of the BPQA's opinion and order, Dr. Boggi was permitted, a minimum of one year after the Maryland Board's opinion and order, to attempt to show the Board's Case Resolution Conference that he was competent to practice medicine safely. (SA-122, BPQA Final Opinion and Order at p. 34.) To that end, in November 2005, Dr. Boggi sought evaluation and retraining through MRAC, which in turn requested that IPE perform a portion of the evaluation, which IPE did in May, 2006. That evaluation, and MRAC's subsequent determination that it

10

could not formulate a remediation plan for Dr. Boggi, is the subject of this litigation.

The IPE retained Dr. Scott Manaker as an independent contractor, and on May 25, 2006, Dr. Manaker administered an assessment designed to evaluate Dr Boggi's medical knowledge, clinical reasoning and flexibility of thinking in managing patient care. Although Dr. Boggi achieved acceptable scores on the multiple choice portion of the medical knowledge test administered on May 22, 2006, Dr. Manaker's observations and assessment during the "Transaction Stimulated Recall" (TSR) portion of the testing on May 25, 2006, revealed problems in Dr. Boggi's thinking process and personal insight that gave Dr. Manaker serious cause for concern:

- "The discussion was collegial, but fractured by [Dr. Boggi's] inability to maintain a logical and orderly train of thought, his frequent digressions from a specific question or topic, and his frequent assertions regarding his knowledge, experience, and clinical competence. A thorough analysis of his knowledge base was limited by his difficulty in focusing direct responses to specific queries…" (SA-176, MRAC Test Results at p. 2.)

- "He was unable to discuss additional differential diagnoses, mostly related to his tangential thought processes…" (Id.)

- "…[Dr. Boggi's] inability to discuss certain types of therapy might increase the potential risk to patients who were not assessed within the limited scope of this examination." (SA-177-178, MRAC Test Results at p. 3-4.)

- "Dr. Boggi demonstrated little capacity for flexibility in his thinking. In no cases was he able

11

to elaborate during the interview about how new data might alter his thinking or management plan." (SA-178, MRAC Test Results at p. 4.)

- "Dr. Boggi demonstrated little capacity for personal insight. …[H]e exuded anxiety during the discussion over his perceived score, while simultaneously expressing overconfidence… His overconfidence poses a potential threat in approaching an unusual disorder or presentation, particularly when coupled with a relative reluctance for early (or any) consultation." (Id.)

- "His responses in the discussion were indicative of relatively inflexible reasoning processes, which pose a potential risk for patients who may challenge the scope of his knowledge base." (Id.)

Dr. Boggi's disordered thinking and communication difficulties formed a major portion of the basis for the Maryland Board's original license suspension decisions. Dr. Manaker noted such thinking problems in his reassessment of Dr. Boggi's mental competency almost seven years later.[4]

MRAC forwarded to Dr. Boggi the results of his testing on July 17, 2006. (SA-174, July 17, 2006, MRAC letter to Dr. Boggi.) Based upon the results of the testing and other materials, MRAC concluded it did not have the capacity to engage in a remediation program for Dr. Boggi's circumstance. (SA-183, October 16, 2006, MRAC letter to Dr. Boggi.) MRAC told Dr. Boggi that "The results of the TSR indicate disordered thinking

---

[4] Dr. Boggi's complaints do not allege that he received any intervening treatment for his mental problems as required by the Maryland Board suspension order as a prerequisite to seeking reinstatement of his license. (SA-13 et seq., complaint; SA-35, et seq., amended complaint.)

12

which is consistent with some of the findings reported in the
Maryland Board summary. The underlying dual problems of adult
variant ADD and narcissistic personality disorder present real
problems for any remediation plan MRAC could provide." (Id.)

> **D. The Facts Alleged by Dr. Boggi in His Complaint(s) Do
> Not Support a Claim for Relief Against the NBME-IPE
> Defendants.**

A review of Dr. Boggi's original and amended complaints[5]
reveals no facts that support any possible legal claim against
the NBME-IPE defendants. Mostly, Dr. Boggi complains of
perceived slights and inconveniences during his testing and
evaluation.

The original complaint is a hodgepodge of allegations that
demonstrates the very condition from which Dr. Boggi suffers —
disordered thinking. For example, the complaint states:

- "During my first state ordered psychiatric evaluation,
  I told the evaluator how I came to be diagnosed with
  ADHD. I told her that at one time, I had performance
  anxiety. She smiled luridly…" (SA-16, complaint, p.
  4, lines 22-24.)

- "I've been listed as Mentally incompetent for ten
  years. Are you shocked? 'For an action to be
  arbitrary, it must shock the conscience.' I am still
  shocked." (SA-18, complaint, p. 6, lines 3-5.)

- "I had just enough time to recreate the memory, but
  not always put it in perfect order." (SA-27,
  complaint, p. 15, lines 18-19.)

---

[5] For the purposes of the motion to dismiss the complaint and
this appeal, the NBME-IPE defendants assume that the facts that
Dr. Boggi sets forth in the complaints are true. <u>Phillips v.
County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).

The amended complaint omits much of the verbiage of the original complaint, and is seemingly more organized, but like the original complaint, it lacks any facts that give rise to a claim for relief. To the contrary, it is a series of unsupported assertions and legal conclusions that provide no grounds for relief. (SA-35 et seq., amended complaint.)

In his recitation of the facts in his appeal brief, Dr. Boggi reaches even farther into the past than he did in the district court, to events and supposed facts that he believes are somehow relevant to his claims. Discussing events that supposedly led up to his competency examination and suspension from practice in the late 1990s, Dr. Boggi alludes to alleged medical malpractice, whistleblowing and even manslaughter. (See Dr. Boggi's Informal Brief, p. 2-3.) While none of these "events" has anything to do with the issues on appeal, they do give the Court a window into Dr. Boggi's thinking:

> At Fort Meade I encountered routine malpractice, that included 6 deaths. As a young major, I was NOT qualified, in ANY way to handle the controversy that ensued. More than anything, this case is about the Peter Principle.
>
> During that time, I witnessed at least TWO miracles. I maintained my professional demeanor, in the face of severe, career and mental health threatening stress for a year. After a year, I had an incident with the MPs. My career progress halted at that point, MORE because of my efforts to do the right thing, than the MP incident. (I've provided a lot of evidence about that, there is quite a bit more.)

14

\*    \*    \*    \*

> I attempted to get out the facts. When I
> presented myself to the investigators, one
> literally stood within half an inch of me,
> another yelled at me at the top of his lungs,
> gesturing, in an attempt to get a rise out of me.
> As it was, I presented myself to their offices on
> several occasions. I was trying to tell people
> that I am a whistleblower and they not only
> physically refused my documents, they
> deliberately tried to provoke you into emotion at
> every turn. They were somewhat successful in
> getting me upset. I see no defect in me on that
> score. I still tear up when I hear Kate Smith,
> sing God Bless America. After-all I still root
> for the home team Flyers, and what not.

(Dr. Boggi's Informal Brief, p. 2-3.)

### 1. Dr. Boggi's Assertions that the NBME-IPE Defendants are State Actors is Unsupported.

In his original complaint, Dr. Boggi referred to the suspension of his medical license by the Maryland Board and his appeal of that suspension. In his assertion that all defendants were state actors, Dr. Boggi claimed that MRAC, and by extension the other defendants, were linked to the State of Maryland because they "affirmed the findings of the state" with respect to Dr. Boggi's diagnosis, and that "MRAC, et al. will ask the court to affirm the discrimination of the state of Maryland against [him]." (SA-15-16, complaint, p. 3, lines 18-36; p. 4, lines 1-3.) Dr. Boggi throws in catch-phrases from the case law such as "symbiotic relationship" and "control" by the state, but his allegations lack any substance or factual basis.

15

The Maryland Board of Physician Quality Assurance is not a party to this action. Yet Dr. Boggi claims unspecified discrimination by the Maryland Board and, in both his original and amended complaints, he seeks to re-litigate the Maryland Board's suspension of his medical license, a matter that long ago the courts of Maryland conclusively and finally upheld.

In his amended complaint, Dr. Boggi asserts repeatedly, without any support, that "MRAC et al are public institutions," and that defendants "acted under color of state law." (SA-36-40, amended complaint, paragraphs 2, 9, 18, 25, 30.)

It is based upon those unsupported claims that the defendants are state actors that Dr. Boggi asserts that the defendants deprived him of his "rights" involving testing and retraining.

## 2. Dr. Boggi's Allegations Concerning the NBME-IPE Defendants' Testing Procedures Do Not Suggest Discriminatory Practices or the Deprivation of Protected Rights.

The factual allegations concerning the testing provided by the NBME-IPE defendants begin on page 10 of the original complaint, and are contained in Counts II, III and IV of the amended complaint. (SA-22, complaint, p. 10; SA-36-41, amended complaint, Counts II-IV.) Dr. Boggi sought testing and retraining from MRAC "in mid November 2005," to satisfy one of the conditions to reinstating his suspended medical license. (SA-14, complaint at p. 2, line 1; SA-23, p. 11, line 10.) MRAC

16

referred Dr. Boggi to the IPE for portions of the testing and evaluation required by the Maryland Board. (SA-14, complaint at p. 2, lines 16-28.)

Referring to MRAC's letter dated October 16, 2006, which followed the testing and evaluation and references the results, including the TSR portion of the evaluation, Dr. Boggi complains that MRAC declined to retrain him or develop a remediation plan for him because "[MRAC] says I have disordered thinking, ADHD, and Narcissistic personality disorder." (SA-22, complaint at p. 10, lines 9-11; SA-36-37, amended complaint, paragraphs 7 — 13.)

Although Dr. Boggi goes into great detail in his account of the testing administered by MRAC and IPE in May 2006, he alleges no facts that suggest any discriminatory practice or violation of the ADA by the NBME-IPE defendants.

Instead, Dr. Boggi alleges that the following were "improper testing procedures, and interviewing procedures" (SA-23, complaint at p. 11, line 3):

- The testing was not as advertised. (SA-23, complaint at p. 11, line 12.)

- The testing organization did not properly reveal the nature of the testing. (SA-23, Complaint at p. 11, lines 13-14; SA-38, amended complaint, paragraphs 15 — 16, 18.)

- The testing was too fast paced at 60 questions per minute.[6] However, Dr. Boggi stated that he "did not worry about it too much, since, despite my ADHD, I can

---

[6] Although Dr. Boggi said "60 questions per minute" in his complaint (SA-23), presumably he meant 60 questions per hour.

go that fast." (SA-23, complaint at p. 11, line 17-21.)

- The scores were not broken down according to medical specialties. (SA-24, complaint at p. 12, lines 1-6.)

- The computer used for testing was slow. (SA-24, Complaint at p. 12, lines 15-22; SA-25, complaint, p. 13, lines 1-21.) Although Dr. Boggi devotes a page and a half of the complaint to the problems associated with the slowness of the computer, he asserts that these problems "did not effect [sic] the subsequent conclusion of the testing agency and so they are only noted here for the moment." (SA-25, complaint at p. 13, lines 21-22; p. 14, line 1.)

- During the interview with examiner Dr. Manaker, Dr. Boggi claims he was "yelled at, scolded, derided for not knowing any medicine, and generally abused."[7] (SA-26, complaint at p. 14, lines 7-8.) Dr. Boggi asserts that "the examiner noted that eventually I was able to tell him all of what I did."[8] (SA-26, complaint at p. 14, line 20.)[9]

According to Dr. Boggi, MRAC stated that its testing and evaluation "showed [that Dr. Boggi] had disordered thinking" and that this in addition to "ADHD and a supposed diagnosis of Narcissistic Personality Disorder disqualify [him] from retraining in Medicine." (SA-23, complaint at p. 11, lines 4-8.) However, Dr. Boggi acknowledges, in reference to the TSR

---

[7] This description of Dr. Boggi's alleged treatment by Dr. Manaker sounds strikingly like his description in his brief, quoted above, of his treatment by one of the "investigators" in the mid-1990s, who "yelled at me at the top of his lungs, gesturing, in an attempt to get a rise out of me..." (Dr. Boggi's Informal Brief, p. 3.)

[8] Dr. Boggi references the CCS and TSR Report of Dr. Manaker, which is part of Exhibit 5. Again, the court may consider this document in deciding the motion to dismiss. See, n. 3.

[9] The same allegations, stated somewhat differently, are included in Dr. Boggi's amended complaint, SA-38-39, amended complaint, paragraphs 16 — 22.

18

administered by the IPE, that "[t]he examiner report did not say that I had disordered thinking on his report." (SA-27, complaint, page 15.)    Dr. Boggi then stated that these allegations "as bizarre as [they are, are] the crux of this case." (SA-27, complaint at p. 15, line 6.)

In his amended complaint, Dr. Boggi similarly states:

> 8.  …  There are no criteria for disordered thinking met in this case.  There are no criteria met for Narcissistic Personality Disorder in this case.  …
>
> *    *    *    *
>
> 13.  The Defendants rely on medical information that is not determined according to the standard of care.  To wit, I am mentally competent.  I have normal thinking.  I have ADHD, and that is all.

(SA-36-37, amended complaint at paragraphs 8, 13.)

None of the foregoing allegations concerning the testing procedures or evaluation results support Section 1983 claims against the NBME-IPE Defendants.

Dr. Boggi alleged in the original complaint that he was deprived of his property — his medical license — by the actions of the defendants.    (SA-14, complaint at p. 2, line 10.) However, it was the Maryland Board that suspended Dr. Boggi's medical license on June 24, 1998 — twelve years ago — a

suspension that was conclusively found to be appropriate after extensive litigation.[10]

### 3. Dr. Boggi Wanted the District Court, and Now This Court, to Sit as a Federal Medical Review and Accrediting Council.

Dr. Boggi seeks an order directing MRAC to retrain him in medicine, despite MRAC's considered professional conclusion that it lacks the capacity to do so. Alternatively, Dr. Boggi requests that the court mandate retesting for Dr. Boggi followed by retraining. (SA-43, Amended Complaint, request for relief.) The requested relief would have the court venture into the realm of professional judgments that are not a proper function of the federal judicial system.

Dr. Boggi also appears to request damages and attorneys' fees, although he is not a lawyer and he is not represented by a lawyer. (SA-32, complaint.)

## V.    SUMMARY OF THE ARGUMENT

Dr. Boggi has not stated a claim under 42 U.S.C. §1983 because the NBME-IPE defendants are not state actors. Dr. Boggi asserts, without any support, that the NBME-IPE defendants are "public institutions" and that they acted under color of state

---

[10] In his amended complaint, Dr. Boggi alleges that the defendants deprived him of the right to continue in the MRAC program without affording him due process, and that they violated his civil rights by failing to retrain him. (SA-40-41, amended complaint, paragraph 31.) However, merely calling such things "rights" does not make them so, just as calling the defendants state actors does not make them so.

law.    To the contrary, the NBME is a private nonprofit organization that provides testing services; its employees are not state actors and are not subject to 42 U.S.C. §1983.    The District Court correctly determined that the NBME's participation in the testing of Dr. Boggi satisfied none of the tests developed by the Supreme Court to determine whether an ostensibly private party in fact acted under color of law under the circumstances of the case.

Dr. Boggi has not stated a claim for violation of his substantive due process rights under the United States Constitution.    Under the relevant case law, Dr. Boggi has no fundamental right to re-testing or re-training in medicine so he can attempt to convince the Maryland Board of Physician Quality Assurance that he is competent once again to safely practice medicine.    Nor can Dr. Boggi show that he is the victim of governmental action at all, much less governmental action that is so egregious as to shock the contemporary conscience.

Dr. Boggi has not stated a claim under the ADA.    Title II of the ADA, which pertains to state and local government agencies and other public entities, does not apply to the NBME-IPE defendants because they are not state actors.    As to Title III of the ADA, under which the NBME is required to engage in an interactive process to offer accommodations to people who identify themselves as disabled and request an accommodation,

21

Dr. Boggi specifically stated in his amended complaint that he neither needed nor requested an accommodation.    Nor has Dr. Boggi alleged any facts showing that the NBME-IPE defendants discriminated against him in any way under the ADA.

Even if Dr. Boggi's allegations had stated a claim for relief, his claims would be barred by the applicable two year statute of limitations because all of his claims relate to the testing administered in May 2006, and he did not file his complaint until October 2008.

## VI. ARGUMENT

### A. Standard of Review of the District Court's Grant of a Motion to Dismiss the Complaint Under Rule 12(b)(6).

In reviewing a District Court's grant of a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), the standard of review of the Court of Appeals is de novo.  Phillips v. County of Allegheny, 515 F.3d 224, 230.  The Court must treat the plaintiff's allegations as true for purposes of the appeal and draw all reasonable inferences in plaintiff's favor. Lexington National Insurance Corporation v. Ranger Insurance Co., 326 F.3d 416, 419 (3d Cir. 2003).

Nevertheless, it is a plaintiff's obligation under Rule 8(a)(2) to set forth "a short and plain statement of the claim" to ensure that a defendant has "fair notice" of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55, 127 S.Ct. 1955, 1964 (2007); see

also <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

The grounds upon which a claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint must be sufficient "to raise a right to relief above the speculative level." <u>Id</u>. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S.Ct. at 1949. After observing that notice pleading under Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," the United States Supreme Court in May of this year held in <u>Iqbal</u>:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of the truth. While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S.Ct. at 1950.

<u>Iqbal</u> also applies to civil rights complaints that *pro se* litigants bring. Under Third Circuit law, prior to the Supreme Court decision in <u>Iqbal</u>, Dr. Boggi's *pro se* complaint was still subject to the "short and plain statement" requirement of Rule

23

8(a).    Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004).
Nevertheless, the Third Circuit has appropriately given *pro se*
litigants some leeway to plead their cases.

Alston also further requires that in civil rights actions
the court must offer the plaintiff leave to amend a complaint
where it lacks clarity and detail, even where a plaintiff does
not seek leave to amend, if a complaint is vulnerable to a
12(b)(6) dismissal, **unless an amendment would be inequitable,**
**futile or untimely.**  Alston, 363 F.3d at 235, citing, Grayson v.
Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

While Dr. Boggi's complaint and amended complaint lack
clarity, they certainly do not lack detail.  Because his
complaints makes claims that are legally meritless, there is no
reason for this Court to waste either its or defendants' time
dealing with a further amendment to the complaint, since any
characterization of his claims would be both futile and
untimely.

A court is not bound by a plaintiff's legal conclusions or
unwarranted factual inferences.  Morse v. Lower Merion School
Dist., 132 F. 3d 902, 906 (3d Cir. 1997).  "A court may also
consider any document referenced in or integral to the complaint
on which plaintiff's claim is based."  In re Burlington Coat
Factory Securities, Lit., 114 F.3d 1410, 1426 (3d Cir. 1997).
This includes "matters of public record, items appearing in the

24

record of the case and exhibits attached to the complaint…" Catagnus v. Aramark Corp., 235 F.Supp.2d 413, 416 (E.D. Pa. 2002).

The foregoing discussion regarding the standard of review applies to each of plaintiff's claims on appeal since each was dismissed under Rule 12(b)(6) for failure to state a claim.

**B. Dr. Boggi Has Not Alleged a Single Fact or Claim Against Individual Defendants Dr. Donald Melnick or Dr. Richard Hawkins.**

Other than in the caption, the names of NBME-IPE defendants Dr. Donald Melnick and Dr. Richard Hawkins do not appear in plaintiff's original or amended complaints. Dr. Boggi makes no allegation that either of them has done anything to him, much less anything actionable.

With regard to defendant Andrea Ciccone, Dr. Boggi did not say anything about her in his original complaint, and in his amended complaint he alleges, in summary fashion only, that Ms. Ciccone denied him the opportunity for re-testing. (SA-40, amended complaint, paragraph 29.)

Dr. Boggi's complaint is sufficiently detailed to allow the court to determine at least generally about the subject of his grievances. There is nothing whatsoever that can be construed as plausibly (or even implausibly) rising to an entitlement to relief from any of these NBME-IPE individual defendants. See Iqbal, 129 S.Ct. at 1950.

25

**C.   Dr. Boggi Has Not Stated a Claim Under 42 U.S.C. §1983 Against the NBME-IPE Defendants Upon Which Relief May be Granted.**

**1.   Elements of 1983 Action**

42 U.S.C. § 1983 provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Section 1983's requirement that the defendant have acted under the color of state law requires power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2256 (1988). The tests for state action and acts under color of law are the same. Annunziato v. The Gan, Inc., 744 F.2d 244, 249 (2d Cir. 1984).

Section 1983 is not itself a source of substantive rights. It provides a method for the vindication of rights elsewhere conferred in the United States Constitution and laws. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618, 99 S.Ct, 1905, 1916 (1979). Therefore, a plaintiff will prevail only if he can demonstrate that he was deprived by the state or one

26

acting under color of state law of rights secured by the Constitution or federal statutes.

In order to state a claim for a deprivation of due process, a plaintiff must show that he possessed a constitutionally protected property interest and that he was deprived of that interest without due process of law. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491 (1985). To have a property interest protected by the due process clause, "a person must have more than an abstract need or desire for it, more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).

### 2.    The NBME-IPE Defendants Are Not State Actors.

42 U.S.C. §1983 provides an action for violation of constitutional rights "under color of state law." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747 (1982). A Section 1983 claim cannot exist without state action. Id. Because the NBME-IPE Defendants are not state actors, plaintiff's Section 1983 claims against them fail.

As noted above, Dr. Boggi asserts in his original complaint that the all of the defendants sued are state actors since they "affirmed the findings of the state" with respect to Dr. Boggi's diagnosis, and that "MRAC, et al. will ask the court to affirm

27

the discrimination of the state of Maryland against [him]."[11] (SA-15-16, complaint at p. 3, line 18 — p. 4, line 3.)    In his amended complaint, Dr. Boggi merely asserts, without support, that the defendants are "public institutions" and that they acted under color of law.

IPE is not a legal entity; it is a discontinued program of the NBME and therefore not an appropriate party to this suit.[12] The NBME is a private nonprofit organization that provides testing services; its employees are not state actors and are not subject to 42 U.S.C. §1983. Brown v. Federation of State Medical Boards of U.S., et al., 1985 WL 1659, *4-5 (N.D.Ill. 1985); Brown v. Federation of State Medical Boards of the United States, et al., 830 F.2d 1429, 1437 (7th Cir. 1987), abrogated on other grounds, 880 F.2d 928 (7th Cir. 1989).

In finding that the NBME is a private service provider to which §1983 does not apply, the court in Brown ruled as follows:

> Brown's §1983 action (along with his other constitutional claims) fail for lack of subject matter jurisdiction because no state action or acts under color of state law occurred.    In order to claim an infringement of constitutional rights under the Fourteenth Amendment or § 1983, a plaintiff must allege that his injury was caused by state actors or persons acting under color of state law.    Rendell-Baker v. Kohn, 457 U.S. 830,

---

[11] Although he has litigated extensively and unsuccessfully against the Maryland Board in the past, Dr. Boggi did not sue the Maryland Board in this case.

[12] The NBME, not IPE, is the proper party defendant, and on that basis NBME voluntarily accepted service and instigated its substitution for IPE as a defendant.    See footnote 1 above.

835 (1982). The tests for state action and acts under color of law are the same, see Annunziato v. The Gan, Inc., 744 F.2d 244, 249 (2d Cir. 1984): the question is whether the defendant misused power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. See Monroe v. Pape, 365 U.S. 167, 184 (1961). This does not mean that the defendant must be a state officer; however, a private party can incur liability only when he is a 'willful participant in joint activity with the State or its agents.' See Annunziato, 744 F.2d at 250, citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

Federation, Commission and National [the NBME] are not state agencies. They do not license physicians. The actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests. **Thus, the defendants are supplying a service used by candidates and state boards. This supplying of a testing service does not make defendants state actors any more than the company which provides the state with office supplies acts under color of state law. The state boards are at most defendants' consumers; defendants do not participate in a state activity.**

Brown, 1985 WL 1659 at *4-5 (emphasis added).

The NBME does not carry out a governmental function. To the contrary, it is private non-profit entity that provided limited testing and evaluation services to MRAC for post-licensure assessment of Dr. Boggi. Since IPE/NBME is a private service provider, none of the NBME-IPE defendants can be sued under 42 U.S.C. §1983.

In McKeesport Hospital v. Accreditation Council for Graduate Medical Education, 24 F.3d 519 (3d Cir. 1994), the

Third Circuit similarly rejected a Section 1983 claim against the Accreditation Council for Graduate Medical Education on the basis that the Accreditation Council is a private entity, not a state actor. In McKeesport, the Accreditation Council was a private organization authorized in regulations created by the State Board of Medicine to make accreditation decisions regarding graduate medical programs. McKeesport, 24 F.3d at 521-22. The Accreditation Council's recommendation caused the Commonwealth to withdraw the accreditation for McKeesport Hospital's general surgery residency program. Id. At 522.

In McKeesport, this Court held that the Accreditation Council was not a state actor because: (1) the Accreditation Council did not act in concert with the state; (2) there was not a "close nexus" between the Accreditation Council and the state; and, (3) accreditation of graduate medical programs was not exclusively a state responsibility. Id. At 524-526. Even though a state regulation had delegated to the Accreditation Council the ability to make hospital accreditation decisions, that fact did not make the Accreditation Council a private party that performed a governmental function and subject to a lawsuit as a state actor under Section 1983. Id. At 521-22. Here, there is an even greater distance between the NBME's activities and the Maryland Board than between the Accreditation Council and the Commonwealth of Pennsylvania in McKeesport.

30

In a recent unpublished opinion of this Court, <u>Munsif v.
Cassel</u>, 331 Fed. Appx. 954 (3d Cir. 2009), a *pro se* plaintiff
complained about his failing a medical subspecialty
certification examination given by the American Board of
Internal Medicine. Munsif's claims were very similar to Dr.
Boggi's claims here. In <u>Munsif</u>, this Court upheld the district
court's dismissal of the *pro se* complaint because the
plaintiff's conclusory allegations and baseless legal
conclusions were insufficient to state a claim for relief. The
Third Circuit concluded that the judgment was properly entered
in favor of the defendants because there was "no allegation from
which we can infer that the defendants, individually or as
agents of ABIM [American Board of Internal Medicine] acted under
color of state law." <u>Id</u>. At *4. The <u>Munsif</u> court cited <u>Goussis
v. Kimball</u>, 813 F.Supp 352, 357-58 (E.D.Pa. 1993), in which the
district court held that the American Board of Internal
Medicine, like the NBME a private, nonprofit corporation which
prepares and administers tests for the medical profession, was
not a "state actor" for purposes of Section 1983.[13]

---

[13] In <u>Goussis v. Kimball</u>, a foreign born and trained physician
sued under 42 U.S.C. §1983 after repeatedly failing the American
Board of Internal Medicine's qualifying examination for medical
subspecialty certification in endocrinology and metabolism. He
claimed discrimination due to his national origin and foreign
medical training. <u>Id</u>. at 353. The Court rejected state action
arguments similar to Dr. Boggi's, finding ABIM is a private
entity, acting on its own, with no ties to any government. <u>Id</u>.
at 357-58.

In the present case, Dr. Manaker conducted his evaluation, as a consultant to the IPE, at the request of MRAC, in accordance with the process for reinstatement outlined by the Maryland BPQA. There is less nexus of action "in concert with the state" than the connection found insufficient in McKeesport. Accordingly, none of the NBME-IPE Defendants can be deemed state actors.

The District Court reviewed and correctly determined that the NBME's participation in the testing of Dr. Boggi satisfied none of the tests developed by the Supreme Court to determine whether an ostensibly private party in fact acted under color of law under the circumstances of the case.[14]

Under the "close nexus" test, a private party may be deemed to have acted under color of law if the state exercised coercive power, or provided such significant encouragement that the private party's decision can be deemed that of the state. Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786 (1982). The District Court correctly stated:

> MRAC's decision was made by private parties and in no way involved the State of Maryland. The decision was made according to standards established by MRAC, not by Maryland. MRAC is a

---

[14] The current approach to state action issues was largely set in three United States Supreme Court cases: Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744 (1982), Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764 (1982), and Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777 (1982). These cases represent the Supreme Court's "state action trilogy." McKeesport, 24 F.3d 519, 523.

> private organization that merely offers testing
> and retraining services to assist doctors in
> getting their medical licenses back. The BPQA,
> on the other hand, was the state actor that
> suspended Dr. Boggi's license and placed
> conditions on his ability to have his license
> reinstated. But there is no connection between
> the BPQA and MRAC. Under such circumstances, a
> "close nexus" cannot be said to exist between
> MRAC and the State of Maryland. See Imperiale v.
> Hahnemann Univ., 776 F.Supp. 189, 199 (E.D.Pa.
> 1991)(holding that ultimate decision by hospital
> to revoke medical degree was not state action
> under close nexus test). **The same can be said of
> NBME, which facilitates testing for medical
> professionals. There is no indication that the
> State of Maryland, or any other state, holds sway
> over the policies or procedures of NBME nor is
> there any evidence that Maryland plays any role
> in devising questions or medical tests for those
> seeking to become doctors.**

(SA-57, September 15, 2009, Opinion, p. 12, emphasis added.)

The District Court likewise concluded that the NBME-IPE defendants' actions did not meet the "symbiotic relationship" test for state action because:

> Maryland is under no duty to use MRAC or NBME.
> There is no evidence of any financial
> relationship or any legislative powers that
> Maryland maintains over these entities. At most,
> NBME and MRAC are companies with which certain
> states deal in the realm of medical licensing.
> But that interaction does not render them state
> actors.

(SA-58, September 15, 2009, Opinion, p. 13.)

With respect to the "public function" test, the District Court noted that few cases have found state action on such basis because it only applies where the private actor engages in those activities that have been "traditionally the exclusive

33

prerogative of the state." Since "testing and score reporting are not tasks left solely to the state," neither NBME nor MRAC could be considered a state actor on that basis. Id., citing McKeesport, supra, 24 F.3d at 5 ("[t]he evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function."

The District Court found further support for its conclusion that neither MRAC nor the NBME/IPE defendants are state actors in Metzger v. National Commission on Certification of Physician Assistants, 2001 WL 76331 (E.D.Pa. 2001). In Metzger, the court held that the National Commission, which is relied on by states in certifying physician assistants, but which receives no state financial support and operates on an independent basis, is not a state actor. The Court also cited Brown v. Fed'n of State Med. Bds. Of the U.S., supra, in which the Court determined that the NBME and the other defendants in that case were not state actors. In sum, the District Court stated:

> Dr. Boggi has presented nothing that would lead this Court to stray from the decisions of these cases. The State of Maryland, through the Board, is responsible for licensing doctors. Dr. Boggi cannot file a civil rights lawsuit seeking to reinstate his license against those not involved in the decision-making process regarding his ability to practice medicine. None of his allegations gives rise to an inference that Maryland acted with Defendants, controlled Defendants, instructed Defendants, or were even aware of Defendants [sic] interactions with Dr. Boggi. The actions of NBME and MRAC are not attributable to Maryland and thus neither

34

> Defendant, nor any of the persons working for
> either Defendant, can be deemed a state actor.

(SA-62, September 15, 2009, Opinion, p. 17.)

This finding of the District Court, that the NBME-IPE defendants are not state actors and cannot be sued under 42 U.S.C. §1983, is amply supported by the facts and the law, and therefore the NBME-IPE defendants respectfully request that this Court reach the same conclusion.

### D.    Dr. Boggi's Complaint Does Not State a Cause of Action for Violation of His Due Process Rights.

#### 1.    The NBME-IPE Defendants Cannot be Charged with Depriving Dr. Boggi of Constitutionally Protected Rights Because They Are Not State Actors.

Loosely interpreted, Dr. Boggi's complaint could be read to assert a substantive due process violation under the Fourteenth Amendment.  In his original complaint, Dr. Boggi arguably claims that he was deprived of his property right to his medical license.  (SA-14, complaint, p. 2, line 10.)  In his amended complaint, Dr. Boggi asserts that the defendants deprived him of the right to be re-tested and retrained.  (SA-40, amended complaint, paragraphs 29 et seq.)

The Fourteenth Amendment of the United States Constitution provides, "[N]or shall any State deprive any person of life, liberty or property without due process of law."  Thus, the Constitution protects individuals against the arbitrary exercise

of **governmental** power.   Daniels v. Williams, 474 U.S. 327, 331,
106 S.Ct. 662, 665 (1986).

Therefore, assuming for the sake of argument that there
might be protected rights at issue, for all the reasons stated
in the previous section, the NBME-IPE defendants are not state
actors, and cannot be found to have deprived Boggi of
constitutionally protected rights.

### 2.   Even If the NBME-IPE Defendants Were Deemed to Be State Actors, Dr. Boggi Has Not Asserted Any Constitutionally Protected Rights.

Substantive due process encompasses the rights expressly
set forth in the Bill of Rights and other "fundamental rights."
To obtain relief under the substantive component of the Due
Process Clause for a deprivation of property, a plaintiff must
make two showings.   First, the plaintiff must establish as a
threshold matter that he has a protected property interest to
which the Fourteenth Amendment's due process protection applies.
Second, the plaintiff must show that he is the victim of
governmental action that is so egregious as to shock the
contemporary conscience.   Desi's Pizza, Inc v. City of Wilkes
Barre, 321 F.3d 411, 426-427 (3d Cir. 2003), citing County of
Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708 (1998).

As this Court stated in Desi's Pizza, the case law
concerning which property interests are protected "provides very
little guidance."   321 F.3d 411, 427.   However, the Desi's Pizza

Court noted that one thing is clear: whether a certain property interest is constitutionally protected "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." Id., citing <u>Nicholas v. Pennsylvania State Univ.</u>, 227 F.3d 133, 140 (3d Cir. 2000).

The Third Circuit has been reluctant to expand substantive due process protection beyond the "venerable common-law rights of real property ownership." <u>Id.</u>, p. 141. In <u>Nicholas</u>, for example, the Court held that the right to continued public employment as a tenured professor at a state university did not implicate substantive due process because it derived from state-created contract right, not from the constitution. <u>Id</u>. At 143.

In his oft-cited concurring opinion in <u>Regents of University of Michigan v. Ewing</u>, 474 U.S. 214, 229-230, 106 S.Ct. 507, 515-516 (1985), Justice Powell stated:

> [N]ot every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), substantive due process rights are created only by the Constitution.
>
> The history of substantive due process "counsels caution and restraint." <u>Moore v. East Cleveland</u>, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (opinion of POWELL, J., for a plurality). The determination that a substantive due process right exists is a

judgment that "'certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.'" Ibid., quoting Poe v. Ullman, 367 U.S. 497, 543, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (HARLAN, J., dissenting). In the context of liberty interests, this Court has been careful to examine each asserted interest to determine whether it "merits" the protection of substantive due process. See, e.g., East Cleveland, supra; Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). "Each new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." Poe, supra, 367 U.S., at 544, 81 S.Ct., at 1777 (HARLAN, J., dissenting).

The interest asserted by respondent–an interest in continued enrollment from which he derives a right to retake the NBME-is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms," Griswold, supra, 381 U.S., at 501, 85 S.Ct., at 1690 (HARLAN, J., concurring in judgment).

Clearly, if there is no fundamental constitutional right to continued employment as a tenured professor at a state university, as in Nicholas, and no fundamental right to testing to become a physician, as in Ewing, Dr. Boggi has no fundamental right to re-testing or re-training so he can attempt to convince

the Maryland Board that he is competent once again to safely practice medicine.[15]

### E.   Dr. Boggi Has Not Stated a Claim under the ADA.

In his original complaint, Dr. Boggi identified Title II of the ADA as one of the jurisdictional bases of his complaint, (SA-14, complaint, p. 2, line 6), but he does not mention the ADA again in the complaint, nor does he allege any violation of the ADA.

In his amended complaint, Dr. Boggi acknowledges that his complaint predates the effective date ADA Amendments Act of 2008.  (SA-42, amended complaint, paragraph 40.)   However, he requests that the Court apply the Amendments, which he suggests would make a difference.   They do not.

---

[15] Dr. Boggi cited <u>Board of Regents v. Ewing</u> in his original complaint (SA-21, complaint, p. 9), and in his Informal Brief, p. 8, as support for his claimed right to re-take the tests administered by MRAC and the NBME-IPE defendants. Dr. Boggi is apparently relying on the Sixth Circuit's opinion in the case which held that the medical student plaintiff had a constitutionally protected property interest in not being arbitrarily dismissed from the University of Michigan. However, the Supreme Court overturned that decision and held that the University could dismiss the student from the program without the opportunity to re-take the NBME Part I exam.

Dr. Boggi likewise cites <u>Mileikowski v. Medical Board of California</u> in both his complaint (SA-16-17) and in his Informal Brief with regard to his allegation that he has been wrongfully accused of having a psychiatric disorder. (See Informal Brief, p. 7.)  That case, however, is simply a California Superior Court order in mandamus vacating  an order of the State Medical Board requiring the doctor in question to get a psychiatric exam because of procedural irregularities in the process.

As to Title II of the ADA, which pertains to state and local government agencies and other public entities, the law does not apply to the NBME-IPE Defendants because they are not state actors.

However, as a private entity, the NBME is required to engage in an interactive process to offer accommodations to people who identify themselves as disabled under Section 309 of Title III of the ADA and request an accommodation:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189.[16]

In neither the original nor the amended complaint did Dr. Boggi allege that he requested that MRAC or the NBME-IPE defendants provide any accommodation under the ADA, nor did he ever in fact make such a request. To the contrary, Dr. Boggi states affirmatively in the amended complaint that he neither needed nor requested an accommodation:

> 43. Plaintiff is a person with a disability as defined by the ADA and its implementing regulations.

---

[16] 42 U.S.C. § 12189 was not amended as part of the ADA Amendments Act of 2008.

44. Defendant, through its policies and conduct has violated the ADA by discriminating against persons on the basis of their disabilities.

45. The violation here under the ADA is frank discrimination. **I do not need an accommodation, never asked for an accommodation** and under the new law, I believe that I remain covered. Frankly, the diagnosis of ADHD was the worst thing that ever happened to me. I got to age 32 without it thank you very much. While treatment helps me, the discrimination is MUCH worse. Hence my comment regarding this regrettable set of circumstances.

(SA-42, amended complaint, paragraphs 43-45, emphasis added.)

The District Court reviewed Dr. Boggi's claims under the ADA and rejected them, stating:

> [Dr. Boggi's] original Complaint objects to the number of questions he was required to complete in a given amount of time. However, the Complaint explicitly states that despite his ADHD, he "can go that fast." (Compl. At 11.) His other problems with the testing involved the slow speed of the computer provided, the subjects on the test, and the method of scoring the test. (Id. At 11-13.) Of course, none of these complaints in any way relate to his disability. His Amended Complaint does not expound upon his ADA claim, although he does assert that he is disabled under the ADA and that he had been discriminated against on the basis of his disability. But this is a legal conclusion for which he provides no factual support. Furthermore, Dr. Boggi's Amended Complaint makes explicit that Dr. Boggi "do[es] not need an accommodation, [and] never asked for an accommodation." (Am. Compl. ¶ 46.) Dr. Boggi cannot state a claim simply by asserting that he has ADHD coupled with his inability to receive the retraining he seeks. The record contains no factual allegations from which one can conclude that NBME had any interactions with Dr. Boggi let alone did anything that violated the ADA … The

41

ADA claims against NBME and MRAC must therefore be dismissed.

(SA-54-55, September 15, 2009, opinion, p. 19-20.)

Because Dr. Boggi has not stated any claim under the ADA upon which relief can be granted, the NBME-IPE defendants respectfully request that this Court affirm the District Court's dismissal of the claim.

### F.    Dr. Boggi's Section 1983 and ADA Claims Are, In Any Event, Barred by the Statute of Limitations.[17]

The ADA and the federal civil rights statutes do not contain a specific statute of limitations.  Consequently, the most appropriate state limitations period applies.  42 U.S.C. §1988(a); Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1941-42 (1985).

In Soignier v. Amer. Bd. Plas. Surgery, 92 F.3d 547, 551 (7th Cir. 1996), the Court of Appeals for the Seventh **Circuit** reviewed the application of Wilson v. Garcia in the context of an ADA lawsuit brought by a plastic surgeon against the American Board of Plastic Surgery alleging inadequate accommodation of his ADHD on a Board Certification exam.  The Court summarized the statute of limitations borrowing analysis as follows:

> Wilson dictates a three-step analysis for such "borrowing" from state law: if no federal law provides a limitations period (step 1), the common law as modified by state statute is to be applied (step 2), but only if it is not

---

[17]  The District Court did not reach the NBME-IPE defendants' argument on the statute of limitations.

inconsistent with the Constitution and laws of the United States (step 3). Under step 2, the court must select the statute of limitations of the state cause of action "most appropriate" or "most analogous" to the plaintiff's claim. See, e.g., Owens v. Okure, 488 U.S. 235, 239, 109 S.Ct. 573, 576 (1989); Burnett v. Grattan, 468 U.S. 42, 47-48, 104 S.Ct. 2924, 2928-29 (1984).

The statute Soignier invokes in Title III of the ADA prohibits discrimination by a private entity offering a professional certification examination. We agree with the parties that this claim is best characterized as one for personal injury. See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) (action for discrimination is one for "fundamental injury to the individual rights of a person"); Wilson, 471 U.S. at 280, 105 S.Ct. at 1949 (claims which allege discrimination are best characterized as personal injury actions). The district court thus correctly applied Illinois' two-year statute of limitations for personal injuries as the most analogous limitations period for Soignier's ADA claim.

92 F.3d 547, 550-51.

In Soignier, the Court determined that the two-year statute of limitations began to run on the day of the examination at issue since Soignier "was aware that the Board had conducted the test without the accommodations he allegedly deserved." Id. At 552.

In this case, Dr. Boggi's claims are subject to Pennsylvania's two-year statute of limitations for personal injury, 42 Pa.C.S.A. § 5524. See, e.g, Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985) (Section 1983 claims are subject to Pennsylvania's two-year statute of

limitations for personal injury claims).

The test about which Dr. Boggi complains was administered on May 25, 2006.  The two year statute of limitations expired on May 25, 2008.  Dr. Boggi filed his IFP petition, the first filing in this matter, on October 16, 2008.  (SA-5, docket.) Because the statute of limitations for all of Dr. Boggi's claims expired on May 25, 2008, his claims are untimely and, therefore, any amendment of his complaint to attempt to restate claims would be futile and would further waste this Court's and defendants' resources.

## VII. CONCLUSION

For all the foregoing reasons, the NBME-IPE defendants respectfully request that the Court affirm the decision of the district court dated September 15, 2009, dismissing all claims against them.


Dated:  July 16, 2010          /s/ Michael E. Sacks
                               NEIL J. HAMBURG
                               MICHAEL E. SACKS
                               I.D. Nos. 32175 and 39774
                               HAMBURG & GOLDEN, P.C.
                               1601 Market Street, Suite 3310
                               Philadelphia, PA  19103-1443
                               (215) 255-8590

                               Counsel for Appellees
                               National Board of Medical
                               Examiners, Institute for Physician
                               Education, Andrea Ciccone, Scott
                               Manaker, M.D., Richard Hawkins,
                               M.D. and Donald Melnick, M.D.

**CERTIFICATION OF COUNSEL**
<u>**UNDER THIRD CIRCUIT RULE 46**</u>

I certify that Neil J. Hamburg and Michael E. Sacks are members in good standing of the bar of the United States Court of Appeals for the Third Circuit.

/s/ Michael E. Sacks
NEIL J. HAMBURG
MICHAEL E. SACKS
I.D. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Counsel for Appellees
National Board of Medical
Examiners, Institute for Physician
Education, Andrea Ciccone, Scott
Manaker, M.D., Richard Hawkins,
M.D. and Donald Melnick, M.D.

**CERTIFICATION IN ACCORDANCE WITH**
**FED. R. APP. P. 32(a)(7)(B)**

I certify that the foregoing brief contains 10,830 words (according to Microsoft Word for Macintosh software, the word-processing system used to prepare the brief).

/s/ Michael E. Sacks
NEIL J. HAMBURG
MICHAEL E. SACKS
I.D. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590

Counsel for Appellees
National Board of Medical
Examiners, Institute for Physician
Education, Andrea Ciccone, Scott
Manaker, M.D., Richard Hawkins,
M.D. and Donald Melnick, M.D.

## <u>CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS</u>

I certify that the text of the brief filed with the Court of Appeals electronically and in hard copy are identical.


/s/ Michael E. Sacks
NEIL J. HAMBURG
MICHAEL E. SACKS
I.D. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Counsel for Appellees
National Board of Medical
Examiners, Institute for Physician
Education, Andrea Ciccone, Scott
Manaker, M.D., Richard Hawkins,
M.D. and Donald Melnick, M.D.

## CERTIFICATION OF VIRUS CHECK

I certify that the Brief for Appellees has been scanned for viruses using Norton Anti-Virus, Version 10.0 for Macintosh, and that the Brief contains no viruses.

/s/ Michael E. Sacks
NEIL J. HAMBURG
MICHAEL E. SACKS
I.D. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Counsel for Appellees
National Board of Medical
Examiners, Institute for Physician
Education, Andrea Ciccone, Scott
Manaker, M.D., Richard Hawkins,
M.D. and Donald Melnick, M.D.

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief for Appellees and the Supplemental Index have been filed electronically, and that on July 16, 2010, one copy of the Brief for Appellees is being served by regular mail the individuals identified below. Service of the Supplemental Appendix is being made on Dr. Boggi only, on behalf of all appellees, each of whom already has a copy:

>Joseph O. Boggi, *Pro Se*
>1207 Ballard Street
>Silver Spring, MD 20910
>
>Michael Pullano, Esquire
>Caleb Wheeler, Esquire
>Weber Gallagher Simpson Stapleton Fires &
>Newby LLP
>2000 Market Street, Suite 1300
>Philadelphia PA 19103
>
>Kerri E. Chewning, Esq.
>Archer & Greiner, P.C.
>One Centennial Square
>Haddonfield, NJ 08033

>/s/ Michael E. Sacks
>MICHAEL E. SACKS